AARON D. FORD
  Attorney General
KIEL B. IRELAND (Bar No. 15368)
  Deputy Solicitor General
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
T: (775) 684-1100
E:  kireland@ag.nv.gov

*Attorneys for Governor Lombardo*

AARON D. FORD
  Attorney General
LAENA ST-JULES (Bar No. 15156)
  Deputy Attorney General
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
T: (775) 684-1100
E:  lstjules@ag.nv.gov

*Attorneys for Secretary Aguilar*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SUSAN VANNESS, an individual, ALEXANDREA SLACK, an individual, MARTIN WALDMAN, an individual, ROBERT BEADLES, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>FRANCISCO V. AGUILAR, in his official capacity as Nevada Secretary of State, JOSEPH M. LOMBARDO, in his official capacity as Governor of the State of Nevada, DOES I-X, inclusive; ROE CORPORATIONS 11-20, inclusive,<br><br>Defendants. | Case No. 2:23-cv-01009-CDS-VCF<br><br>**DEFENDANTS GOVERNOR LOMBARDO AND SECRETARY AGUILAR'S MOTION TO DISMISS** |

  Defendants Joseph M. Lombardo, in his official capacity as Governor of the State of Nevada ('Governor Lombardo"), and Francisco V. Aguilar, in his official capacity as Nevada Secretary of State ("Secretary Aguilar" and together with Governor Lombardo, "Defendants"), move to dismiss Plaintiffs Susan Vanness, Alexandrea Slack, Martin Waldman, and Robert Beadles' ("Plaintiffs") [First] Amended Complaint for Temporary

Page **1** of **14**

Restraining Order, Declaratory Judgment, and Preliminary and Permanent Injunctive Relief ("FAC") (ECF No. 9) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to state a claim.

## I.   INTRODUCTION

The political climate surrounding elections since 2020 has been highly charged and divisive. In the wake of extreme turnover in elections officials across the state, due in part to harassment and death threats, the 82nd Legislative Session recently adopted Senate Bill 406 ("SB 406"). *Minutes of the Senate Committee on Legislative Operations and Elections*, 82d Sess., 2–3, 12 (Nev. Apr. 11, 2023) (statements of Gabriel Di Chiara and Burgans), https://tinyurl.com/SB406Mins [hereinafter *Senate Committee Minutes*]. SB 406 aims to deter attacks on elections officials by criminalizing the use, threat, or attempted use of force, intimidation, coercion, violence, restraint, or undue influence with an intent to interfere with or retaliate against elections officials who are performing their elections duties.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 to try to invalidate SB 406's criminal provisions. *See* FAC ¶ 43. They assert three claims, none of which can survive dismissal. First, Plaintiffs fail to establish standing; they have named the wrong defendants for their claims, and they have not alleged any intended course of conduct that could give rise to a cognizable injury in fact. Second, the Eleventh Amendment bars all claims; the federal claims are not brought against proper defendants, and the state-law claim is absolutely barred. Finally, Plaintiffs have not stated any claim.

Plaintiffs' first claim for overbreadth must be dismissed because Plaintiffs have shown they are unable to articulate any protected speech that SB 406 prohibits. Plaintiffs' second claim for vagueness fails because Plaintiffs have not—and cannot—point to anything vague in SB 406. Plaintiffs' third claim for vagueness based on the Nevada Constitution fails for the same reason. Plaintiffs' FAC is devoid of any factual substance that would entitle it to proceed, and it should be dismissed.

///

## II.   BACKGROUND

The Nevada Legislature enacted SB 406 to "provide additional protection for election workers" and reverse the "unbelievable turnover of election officials in elected and administrative positions over the last four years." *Senate Committee Minutes*, *supra*, at 2–3. Section 1 provides:

> 1. It is unlawful for any person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence with the intent to:
>    (a) Interfere with the performance of the duties of any elections official relating to an election; or
>    (b) Retaliate against any elections official for performing duties relating to an election.

SB 406 § 1(1). The statute defines "elections official" as:

> (1) The Secretary of State or any deputy or employee in the Elections Division of the Office of the Secretary of State who is charged with duties relating to an election;
> (2) A registrar of voters, county clerk, city clerk or any deputy or employee in the elections division of a county or city who is charged with elections duties; or
> (3) An election board officer or counting board officer.

*Id.* § 1(6)(b). A person who violates section 1 is guilty of a category E felony. *Id.* § 1(4).

Plaintiffs filed their complaint in this Court challenging SB 406 on three grounds: overbreadth under the federal Constitution, vagueness under the federal Constitution, and vagueness under the Nevada Constitution. FAC ¶¶ 41–45, 58, 75–77, 90–91. The only non-Doe Defendants are Defendants Governor Lombardo and Secretary Aguilar, named in their official capacity. *Id.* at ¶¶ 52–56. While Plaintiffs allege that they "previously" served as ballot observers, ballot runners, election intake specialists, or ballot counting room observers, they do not allege that they intend to do so again in the future. *Id.* ¶¶ 46–51 & n.2–3. Indeed, they do not allege that they will take any future action at all. *See id.*

The FAC attempts to inject ambiguity into SB 406's definition of elections official by claiming that, for example, volunteer poll observers could qualify. *See, e.g.*, *id.* ¶ 14. As explained below, however, the definition of elections official in section 1(6)(b) is exclusive. Although SB 406 does not protect observers, they are afforded certain rights under other Nevada statutes. Members of the public can "observe the conduct of voting at a polling

place," NRS 293.274(1), 293C.269(1), "the handling of ballots," NRS 293B.330(4), 293C.630(4), "the counting of ballots at a central counting place," NRS 293B.353(1), "the delivery, counting, handling and processing of ballots at a polling place, receiving center or central counting place," NRS 293B.354(1), and "the counting area where computers are located during the period when ballots are being processed," NRS 293B.380(2)(a). Further, specified representatives can observe the conduct of election equipment and program tests. NRS 293B.145, 293C.615.

While section 1(5) of SB 406 explicitly states that section 1 of SB 406 does not limit the rights of observers under these statutes, nothing in any statute authorizes an observer to do more than observe. The FAC insinuates that volunteer observers are entitled to insist to elections officials that corrective measures be taken. *See* FAC ¶¶ 32–34. Elections officials certainly do engage with volunteer observers in good faith to ensure processes are understood and any improper activities are corrected, but Plaintiffs fail to cite any right to engage with elections officials or demand corrective action of elections officials. Plaintiffs' repeated invocation of observers in their FAC does nothing to advance their claims.

## III. LEGAL STANDARDS

### A. Lack of Subject-Matter Jurisdiction

Subject matter jurisdiction is "the court's statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis omitted). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Rule 12(h)(3). "[T]he subject matter jurisdiction of the district court is not a waivable matter and may be raised at anytime by one of the parties, by motion or in the responsive pleadings, or *sua sponte* by the trial or reviewing court." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194 n.2 (9th Cir. 1988).

### B. Failure to State a Claim

Rule 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "nudge[] [plaintiffs'] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. Courts will "discount[] conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

## IV.   ARGUMENT

### A.   The FAC Must Be Dismissed Because Plaintiffs Do Not Have Standing to Bring Their Claims against Defendants

Federal courts lack jurisdiction to consider claims where a plaintiff lacks standing. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) (citation omitted). To establish the irreducible constitutional minimum of standing, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs have failed to establish any of the three standing prongs.

1. <u>Injury-in-Fact</u>. In bringing a pre-enforcement challenge such as this one, the plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation omitted); *see also San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (plaintiff seeking only declaratory and injunctive relief must show "a very significant possibility of future harm"). Plaintiffs have not alleged any intention to engage in *any* course of conduct whatsoever. While Plaintiffs refer to past conduct, *see* FAC ¶¶ 47 & n.2, 49 & n.3, 50, there is no allegation that Plaintiffs intend to do anything in the future.

///

  2. <u>Traceability</u>.  Plaintiffs bear the burden of establishing "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (alterations, internal quotation marks, and citation omitted).  The potential injury for a pre-enforcement challenge is directly tied to the threat of prosecution. *See Susan B. Anthony List.*, 573 U.S. at 159.  However, Plaintiffs have not alleged that Defendants have any enforcement power and have therefore failed to show that any potential injury could be fairly traceable to Defendants' actions.

  3. <u>Redressability</u>.  Plaintiffs must establish that their injury "is likely to be redressed by a favorable decision." *Spokeo, Inc.*, 578 U.S. at 338.  Plaintiffs have requested that Defendants be enjoined from enforcing the challenged criminal provisions, *see* FAC at 17, but have not alleged that Defendants enforce criminal laws.  Issuing an injunction against Defendants would not redress any supposed injury Plaintiffs may suffer.

 Consequently, Plaintiffs have failed to carry their burden of establishing any of the elements of standing, and this action must be dismissed.

  **B.** **The Eleventh Amendment Bars This Lawsuit against Defendants**

    **1.** **Plaintiffs' Federal Claims Must Be Dismissed Because Defendants Are Not Proper Parties**

 The Eleventh Amendment bars lawsuits in federal court against states, unless they consent to suit or Congress has abrogated the immunity. *Green v. Mansour*, 474 U.S. 64, 68 (1985).  The immunity extends to state officials acting in their official capacity because a suit against them is considered a suit against the state itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  Nevada has not waived its Eleventh Amendment immunity.  NRS 41.031(3).

 Under *Ex parte Young*, 209 U.S. 123 (1908), an exception to Eleventh Amendment immunity exists that "allows citizens to sue state officers in their official capacities 'for prospective declaratory or injunctive relief . . . for their alleged violations of federal law.'"

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (citation omitted).[1] To fall under this exception, the state officer defendant "must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157. "That connection 'must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.'" *Eleveurs*, 729 F.3d at 943 (citation omitted). Notably, a Governor who only has a general duty to enforce a state's laws is entitled to Eleventh Amendment immunity. *Id.*

Plaintiffs have included no allegation of Defendants' enforcement powers in their FAC. They have therefore failed to establish an exception to the Eleventh Amendment's bar, and their first two claims brought pursuant to federal law must be dismissed. *See Nat'l Audubon Soc'y v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002) (barring suit against Governor and state Secretary of Resources under the Eleventh Amendment because there had been no showing they had requisite enforcement connection).

### 2. Plaintiffs' State-Law Claim Is Entirely Barred by the Eleventh Amendment

Plaintiffs' third claim asserts a violation of the Nevada Constitution. FAC ¶¶ 86–93. That claim must be dismissed as barred by the Eleventh Amendment. *Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005) (holding that Eleventh Amendment barred claim of violation of right under Montana Constitution). *Ex parte Young* does not save the state claim; it "allows prospective relief against state officers only to vindicate rights under federal law." *Id.*

///

---

[1] This exception does not apply to claims for damages; "State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27, 30 (1991) (explaining that "the Eleventh Amendment bars suits in federal court 'by private parties seeking to impose a liability which must be paid from public funds in the state treasury'"). While the FAC's "Requested Relief" section does not include a request for damages, FAC at 17, the FAC does otherwise refer to seeking damages, *id.* at 2, ¶ 41. To the extent Plaintiffs seek damages, their claims are barred by the Eleventh Amendment.

**C.     Even if Plaintiffs Had Standing, and Even if the Eleventh Amendment Did Not Bar Plaintiffs' Claims, Their Claims Fail on the Merits**

**1.     Plaintiffs' First Claim Must Be Dismissed Because Plaintiffs Do Not Identify Any Protected Speech that SB 406 Prohibits**

Plaintiffs' first claim is a facial overbreadth challenge to SB 406 based on the First Amendment. FAC ¶¶ 57–73. To succeed on their facial overbreadth challenge, Plaintiffs must "demonstrate[] that the statute 'prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep.'" *United States v. Hansen*, 143 S.Ct. 1932, 1939 (2023) (citation omitted). "[A] law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." *Id.* Notably, "[s]peech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected." *Id.* at 1947; *see also United States v. Osinger*, 753 F.3d 939, 947 (9th Cir. 2014) (holding that expressive aspects of speech are not protected under the First Amendment where they are "integral to criminal conduct"). "Invalidation for overbreadth is strong medicine that is not to be casually employed." *United States v. Williams*, 553 U.S. 285, 293 (2008) (internal quotation marks and citation omitted).

"The first step in overbreadth analysis is to construe the challenged statute . . . ." *Id.* The challenged provisions of SB 406 prohibit individuals from taking specified actions with an intent to either interfere with an elections official's performance of duties or to retaliate against an elections official for performing his or her elections duties. The plainly legitimate sweep of SB 406 is therefore to prevent interruption of and interference with important elections-related work.

SB 406's application is sharply limited. First, SB 406 only applies when a person takes action in connection with an "elections official." As noted above, the term "elections official" is defined in section 1(6)(b) of SB 406. While Plaintiffs contend that the definition is vague and overbroad, *see* FAC ¶¶ 5, 10, the list in section 1(6)(b) is exclusive. *See State v. Javier C.*, 128 Nev. 536, 541, 289 P.3d 1194, 1197 (2012) ("Nevada follows the maxim 'expressio unius est exclusion alterius,' the expression of one thing is the exclusion of

another."); *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) ("The doctrine of *expressio unius est exclusion alterius* 'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'").

Beyond statutory canons of interpretation, it would not make sense to include, for example, volunteer observers in the definition of an elections official, as Plaintiffs urge. *See, e.g.*, FAC ¶ 14. An official is "[s]omeone who holds or is invested with a public office; a person elected or appointed to carry out some portion of a government's sovereign powers." *Official, Black's Law Dictionary* (11th ed. 2019). Volunteer observers are not in a public office, and they are not elected or appointed; they choose whether to attend elections-related activities as observers.

Second, SB 406 requires a defendant to have the specific intent to either interfere with an elections official's performance of duties or retaliate against an elections official for his or her performance of duties. A person who tries to unduly influence an elections official with an intent to cause the elections official to change the contents of his will or sell her business, for instance, would not be subject to criminal liability under SB 406.

Third, the Supreme Court recently addressed the *mens rea* requirement for true threats of violence, which do not enjoy First Amendment protection. In *Counterman v. Colorado*, 143 S.Ct. 2106 (2023), the Court held that Colorado was required to show that a defendant was reckless in making true threats, i.e., that the defendant was "aware 'that others could regard his statements as' threatening violence and 'deliver[ed] them anyway,'" to criminally prosecute the defendant. *Id.* at 2117, 2119 (citation omitted). This holding provides an additional limitation on SB 406's application.

Finally, nothing in SB 406 shifts the burden of proving scienter to a defendant, as Plaintiffs contend in solely conclusory (and confusing) fashion. FAC ¶¶ 17, 35, 68. The burden of proving all elements of a charged offense beyond a reasonable doubt rests squarely on the prosecution. *See Jorgensen v. State*, 100 Nev. 541, 544, 688 P.2d 308, 310

///

(1984) (noting "the prosecution's burden to prove all elements of the charged offense beyond a reasonable doubt").

Plaintiffs' inability to establish overbreadth is evident in the examples they cite in their FAC purporting to show that protected speech is criminalized. In paragraph 18, Plaintiffs posit that a "Rover" who confronts a ballot inspector over perceived wrongful action, "with the intent to have that wrongful conduct corrected" would be subject to criminal liability. In paragraph 19, Plaintiffs again posit a scenario inviting supposed liability where an individual confronts another "with an intent to correct." And in paragraph 20, Plaintiffs yet again reference taking corrective actions opening the door to liability. SB 406 requires an intent to interfere or retaliate, not to correct, and to support their overbreadth challenge, Plaintiffs must allege specific examples of protected speech filtered through these intents. *See Hansen*, 143 S.Ct. at 1947. None of Plaintiffs' examples would meet the requirements for liability under SB 406. A calm and rational discussion with an elections official to explain a perceived wrong is perfectly permissible. What Plaintiffs may not do under SB 406 is, for example, threaten to injure an elections official in order to cause the elections official to perform his or her duties differently.

### 2.  Plaintiffs' Second Claim Must Be Dismissed Because Plaintiffs Do Not Identify Anything Vague in SB 406

Plaintiffs' second claim asserts a facial challenge of SB 406 based on vagueness under the Due Process Clause of the Fourteenth Amendment.[2] FAC ¶¶ 74–85. The void-for-vagueness doctrine applies when a criminal law "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304. "When a statute clearly implicates free speech rights, it will survive a facial challenge so long as it

---

[2] The heading of the second claim refers to "substantive due process." Defendants do not understand Plaintiffs to be asserting a substantive due process claim as those claims generally are "confined to protecting fundamental liberty interests, such as marriage, procreation, contraception, family relationships, child rearing, education and a person's bodily integrity, which are 'deeply rooted in this Nation's history and tradition.'" *Franchesi v. Yee*, 887 F.3d 927, 937 (9th Cir. 2018) (citations omitted). If Plaintiffs are, in fact, asserting a substantive due process claim, the claim should be dismissed pursuant to Rule 12(b)(6) as there are no allegations concerning substantive due process considerations.

1 is clear what the statute proscribes in the vast majority of its intended applications." *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1146 (9th Cir. 2009) (internal quotation marks and citation omitted). In assessing whether a law is vague in the First Amendment context, "perfect clarity and precise guidance have never been required." *Williams*, 553 U.S. at 304 (citation omitted). Nor does the ability to envision close cases render a statute vague. *Id.* at 305. As with a facial overbreadth challenge, facial invalidation based on vagueness "is, manifestly, strong medicine" and should be employed "sparingly and only as a last resort." *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (citations omitted).

It is unclear on what basis Plaintiffs assert their vagueness challenge. From the text of the second claim, it appears that Plaintiffs only take issue with the supposed burden-shifting of the proof of scienter. FAC ¶ 80. But that has nothing to do with vagueness and, as discussed above, the burden of proving all elements of a charged offense rests with the prosecution. To the extent Plaintiffs are challenging whether the language of SB 406 provides fair notice of what is prohibited, it appears Plaintiffs take issue with four terms and one broad (and inapposite) contention.

First, Plaintiffs profess confusion relating to the term "elections official." *E.g.*, FAC ¶¶ 5, 10. They allege that they do not know who qualifies as an "elections official." *Id.* As previously discussed, "elections officials" are only those individuals specifically identified in section 1(6)(b) of SB 406. Elections observers are not "elections officials," regardless of Plaintiffs' attempts to equate them. *E.g.*, FAC ¶¶ 1, 12, 14. Relatedly, Plaintiffs also appear to claim that the lack of identification of individuals exempt from SB 406 somehow renders the bill vague. FAC ¶ 10. It does not. No one is exempt. If a person takes any of the actions specified in SB 406 to interfere with or retaliate against an elections official, that person is in violation of SB 406, regardless of whether they themselves are an elections official. There is nothing vague about it; if anything, the lack of exemption makes the statute *less* vague.

///

Second, Plaintiffs appear to take issue with the terms "intimidation," "undue influence," and "interfere," although they do not allege that those terms are vague. FAC ¶ 15; *see also id.* ¶¶ 14, 16, 91. Nor could they. The ordinary meaning of "intimidation" is readily understood by people of ordinary intelligence. To intimidate is "to make timid or fearful," especially "to compel or deter by or as if by threats." *Intimidate*, Merriam-Webster.com Dictionary. The term intimidation is therefore not vague. *See Al Maqablh v. Heinz*, Civil Action No. 3:16-cv-00289-JHM, 2017 WL 1788666, at *3 (W.D. Ky. May 4, 2017) (finding term "intimidating" is a term "commonly understood by ordinary people").

With respect to "undue influence," courts may look to "settled legal meanings" in determining whether a term is vague. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010). Undue influence has a settled legal meaning. It is "[t]he improper use of power or trust in a way that deprives a person of free will and substitutes another's objective; the exercise of enough control over another person that a questioned act by this person would not have otherwise been performed, the person's free agency having been overmastered." *Undue Influence*, Black's Law Dictionary (11th ed. 2019); *see also In re Estate of Bethurem*, 129 Nev. 869, 874, 313 P.3d 237, 241 (2013) (undue influence established when "the influence . . . destroy[ed] the free agency" of another); *Peardon v. Peardon*, 65 Nev. 717, 767, 201 P.2d 309, 333 (1948) (explaining that undue influence applies "where influence is acquired and abused, or where confidence is reposed and betrayed"). "Undue influence" is consequently not unconstitutionally vague.

With respect to the term "interfere," the Ninth Circuit has "long recognized that 'interfere' has such a clear, specific and well-known meaning as not to require more than the use of the word in a criminal statute." *Brennan v. U.S. Dep't of Homeland Sec.*, 691 Fed.Appx 332, 333 (9th Cir. 2017) (unpublished) (internal quotation marks and alterations omitted) (quoting *United States v. Gwyther*, 431 F.2d 1142, 1144 n.2 (9th Cir. 1970)) (holding "interfere" has a "settled legal meaning" and rejecting vagueness challenge). There is no vagueness in SB 406's use of the term "interfere."

///

SB 406's intent requirements further mitigate any remote possibility of vagueness. *See United States v. Jae Gab Kim*, 449 F.3d 933, 943 (9th Cir. 2006). This is because Plaintiffs can base their behavior on their own factual knowledge of the situation and avoid violating the law. *Id.* Taken together, SB 406 is clear in what it "proscribes in the vast majority of its intended applications." *Humanitarian Law Project*, 578 F.3d at 1146 (internal quotation marks and citation omitted). Plaintiffs have not pointed to a single example that suggests otherwise.[3]

Finally, Plaintiffs claim that "SB 406's potential to criminalize innocent conduct makes it vague in defining the conduct it criminalizes." FAC ¶ 23. This is not a proper basis for challenging a statute for vagueness. Rather, Plaintiffs appear to be confusing overbreadth and vagueness; a "vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression." *Holder*, 561 U.S. at 20.

Because Plaintiffs fail to support their request for the strong medicine of facial invalidation, their second claim should be dismissed.

### 3. Plaintiffs' Third Claim Must Be Dismissed for the Same Reasons that the Second Claim Must Be Dismissed

Plaintiffs' third claim appears to be a vagueness challenge based on the Nevada Constitution. FAC ¶¶ 86–93. As discussed above, this claim is barred by the Eleventh Amendment. Even if were not, however, Nevada's vagueness analysis is similar to the federal vagueness analysis, and the third claims would fail for the same reasons Plaintiffs' second claim fails. *See Ford v. State*, 127 Nev. 608, 612, 262 P.3d 1123, 1125–26 (2011).

///
///
///
///
///

---

[3] As discussed above, the only examples Plaintiffs give would not establish liability under SB 406.

V. CONCLUSION

For the foregoing reasons, the Court should dismiss the FAC.

DATED this 27th day of July 2023.

                    AARON D. FORD
                    Attorney General

By: */s/Kiel B. Ireland*
    KIEL B. IRELAND (Bar No. 15368)
    Deputy Solicitor General
    Office of the Attorney General
    100 North Carson Street
    Carson City, Nevada 89701-4717
    T: (775) 684-1100
    E: kireland@ag.nv.gov

*Attorneys for Governor Lombardo*

AARON D. FORD
Attorney General

By: */s/Laena St-Jules*
    LAENA ST-JULES (Bar No. 15156)
    Deputy Attorney General
    Office of the Attorney General
    100 North Carson Street
    Carson City, Nevada 89701-4717
    T: (775) 684-1100
    E: lstjules@ag.nv.gov

*Attorneys for Secretary Aguilar*