1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd #203
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SUSAN VANNESS, an individual,<br>ALEXANDREA SLACK, an individual<br>MARTIN WALDMAN, an individual,<br>ROBERT BEADLES, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>FRANCISCO V. AGUILAR, in his official<br>capacity as Nevada Secretary of State, JOSEPH M.<br>LOMBARDO, in his official capacity as Governor<br>of the State of Nevada, DOES<br>I-X, inclusive: ROE<br>CORPORATIONS 11-20, inclusive.<br><br><br>Defendants. | ) Case No: 2:23-cv-01009-JCM-VCF<br>)<br>)<br>)<br>)<br>)<br>)<br>) **PLAINTIFFS' MOTION FOR**<br>) **PRELIMINARY INJUNCTION**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION FOR PRELIMINARY INJUNCTION

COME NOW, Plaintiffs, SUSAN VANNESS *Et Al*, by and through the undersigned

attorney of record, SIGAL CHATTAH, ESQ., of the CHATTAH LAW GROUP, and

pursuant to Fed. R. Civ. Pro. 65, hereby move this Court for a preliminary injunction against

Defendants, to enjoin them from wanton and arbitrary enforcement of sections 1 and 2 of SB

406, known as the Election Worker Protection Act, and declaration rendering said sections

unconstitutional as delineated *infra*.

1
2

Plaintiffs' Motion is based upon the pleadings and papers on file herein and the following points and authorities.

3

## INTRODUCTION

4
5
6
7

Plaintiffs bring this action facially challenging the Constitutionality of SB 406 which provides in pertinent part:

"[C]hapter 293 of NRS is hereby amended by adding thereto a new section to read as follows:

8
9
10
11
12
13

    1.   It is unlawful for any person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence ***with the intent*** to:
(a) ***Interfere with the performance of the duties*** of any ***elections official*** relating to an election; or
(b) Retaliate against any ***elections official*** for performing duties relating to an election.
    2.   The provisions of subsection 1 apply ***regardless of whether*** a person uses or threatens or ***attempts to use*** such force, intimidation, coercion, violence, restraint or undue influence ***at a polling place or a location*** other than a polling place.
[Emphasis added]

14
15
16
17
18
19

Plaintiffs' facial constitutional challenge of sections 1 and 2 of the Statute is on the basis that it is vague, overbroad, calls for criminal punishment despite of failing to specify a victim and violates the First Amendment to Free Speech and the Fourteenth Amendment's Due Process Clause.

20
21

Plaintiffs seek injunctive relief hereby requesting this Court declare sections 1 and 2 of SB 406 [and/or subsequent codification of same] facially unconstitutional.

22

## JURISDICTION

23
24
25
26
27
28

This court has subject matter jurisdiction over Plaintiffs' claims arising under federal law pursuant to 42 U.S.C. §1983.  Plaintiffs further allege that the exercise of this court's jurisdiction over such claims is proper under the rule of *Ex Parte Young*, *209 U.S. 123 (1908)* (plaintiffs alleging violation of federal law may seek prospective injunctive relief against responsible state official).

**STATEMENT OF FACTS**

On or about May 30, 2023, after passing both chambers of the Nevada Legislature, Nevada's Secretary of State Francisco V. Aguilar and Nevada's Governor Joseph M. Lombardo signed SB 406 into law. SB 406 is described as "AN ACT relating to elections; making it unlawful for a person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence with the intent to interfere with the performance of duties of an elections' official or retaliate against an elections official for the performance of such duties;"

Sections 1 and 2 of SB 406 impose impossible—and unpredictable—burdens on individuals that come into contact with "election officials" during elections at voting centers and ballot processing centers.

The consequence of said sections in SB 406 is a sweeping and unwieldy regulation that leaves the identification of what an offense is so opaque, uncertain, and all-encompassing that Plaintiffs and others similarly situated cannot determine whether and when the most basic activities undertaken will subject them to drastic criminal penalties.

The failure to precisely define the identification of a protected class or victim to be covered by said sections in SB 406 so opaque and uncertain, that Plaintiffs and others similarly situation cannot determine who an election official is and who is protected under SB 406.

Furthermore, SB 406 provides no classification for immunity or exemption for "election officials' or election observers as defined under NRS 293.274 [*and/or supervisors*] whom are paid to ensure election oversight, management and transparency among themselves.

Since sections 1 and 2 SB 406 are facially unconstitutional, Plaintiffs respectfully demand this Court render it void and unenforceable.

**LEGAL AUTHORITY**

**A.    STANDARD FOR INJUNCTION**

A motion for a preliminary injunction is governed by the multi-factor test outlined by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).* Under the *Winter* test, the plaintiff has the burden to establish: (1) likelihood of success on the merits; (2) that the plaintiff is likely to suffer irreparable harm if the preliminary injunction is not granted; (3) that the balance of equities favors the plaintiff; and (4) that the injunction is in the public interest. *Id.* Likelihood of success on the merits is a threshold inquiry and the most important factor. *See, e.g., Edge v. City of Everett, 929 F.3d 657, 663 (9th Cir. 2019).*

Alternatively, a court may grant the injunction if the plaintiffs demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in their favor. In our circuit, there is no presumption that the issuance of a preliminary injunction requires an evidentiary hearing. *See Int'l Molders' & Allied Workers' Local Union v. Nelson, 799 F.2d 547, 555 (9th Cir. 1986).*

**1.    Likelihood of Success on the Merits**

Plaintiffs are likely to prevail on the merits, or at least have raised a serious question to the merits of their substantive due process claims against Defendants. To prevail on a claim under 42 U.S.C. § 1983, Plaintiffs must show the deprivation of a federal right by a person acting under color of state law.

The Ninth Circuit has repeatedly stated that "[t]o obtain relief on a procedural due process claim, the plaintiff must establish the existence of (1) a liberty or property interest

protected by the constitution; (2) a deprivation of the interest by the government; 3) lack of process." *See Shanks v Dessel, 540 F.3d 1082, 1090 (9th Cir. 2008).*

In *American Trucking Associations v. City of Los Angeles*, the Ninth Circuit referenced *Winter* in its application of the traditional test and held that "as the Court explained, an injunction cannot issue merely because it is possible that there will be an irreparable injury to the plaintiff; it must be likely that there will be." *See Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).*

The Supreme Court made clear in *Winter* that the balancing of harms, and review of the public interest, must occur in the context of the specific relief requested. *Winter v. Natural Res. Def. Council (Winter), 129 S. Ct. 365, 376 (2008).* This approach was applied by the Ninth Circuit in *Sierra Forest Legacy v. Rey*, when it overturned a district court's denial of preliminary injunctive relief for failure to analyze the balancing of harms and public interest in the context of the narrow injunction requested by environmental plaintiffs. *Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1022–23 (9th Cir. 2009); ("When deciding whether to issue a narrowly tailored injunction, district courts must assess the harms pertaining to injunctive relief in the context of that narrow injunction.").*

Here, the potential of criminal prosecution under an extraordinarily vague and overbroad law is imminent. The subjective application of what "intimidation" refers to coupled, with "intent to interfere" and the lack of exemption of supervisory or even lateral "election officials" and election observers from prosecution, renders the legislation unconstitutional.

**2.     The Matter is Ripe For Adjudication as it Involves Criminal Penalties and Does Not Require Factual Development for Determination of the Constitutionality of the Legislation.**

"A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care, 968 F.3d 738, 752 (9th Cir. 2020)*. On the hardship prong, the Ninth Circuit considers whether the action "requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Stormans, Inc. v. Selecky, 586 F.3d 1109, 1126 (9th Cir. 2009)*.

Prudential considerations of ripeness are amplified where constitutional issues are concerned." *Scott v. Pasadena Unified Sch. Dist., 306 F.3d 646, 662 (9th Cir. 2002) (citing United Pub. Workers v. Mitchell, 330 U.S. 75, 90–91 (1947))*.

The First Amendment usually prohibits the government from enacting laws that regulate protected speech, and it "prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech. *Houston Cmty. Coll. Sys. v. Wilson, 142 S. Ct. 1253, 1259 (2022) (quoting Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019))*.

If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Id.*

In evaluating standing in a pre-enforcement challenge to a speech regulation, the Ninth Circuit's inquiry focuses on (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute. *Alaska Right to Life Pol. Action Comm. v. Feldman,*

*504 F.3d 840, 849 (9th Cir. 2007) (quoting Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003).*

"The potential plaintiff must have an 'actual or well-founded fear that the law will be enforced against'" it. *Id. at 851 (quoting Getman, 328 F.3d at 1095).* Given that pre-enforcement claims necessarily occur before enforcement actions have begun, the standing factors for pre-enforcement claims are substantively similar to the ripeness factors and identical concerns motivate both analyses. *See Getman, 328 F.3d at 1093–94.*

Here, due to the fact that that Plaintiffs, have previously been elections officials and elections observers, without specific definitions of prohibited conduct or a protected class, violation of sections 1 and 2 may be inevitable. Secondly, the criminal penalties as delineated in indictment of a Class E felony is very possible and likely. Finally, elections violations have historically been prosecuted as most recently noted below[1].

Due to the nature of the legislation and the high probability of prosecution of offenses concerning election activities, the portions that are unconstitutional must be voided as same to prevent any violation of civil liberties by Plaintiffs or individuals similarly situated as them.

**B.     SB 406 VIOLATES THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT AS UNCONSTITUTIONALLY OVERBROAD AND VAGUE**

The Free Speech Clause of the First Amendment provides that the government "shall make no law . . . abridging the freedom of speech.". *U.S. CONST. amend. I.* This prohibition applies to state and local governments by way of incorporation. *Nordyke v. Santa Clara Cty., 110 F.3d 707, 710 (9th Cir. 1997).*

---

[1] State of Nevada v, Hartle, Donald, EJDC No. 21-CR-046327

1

1.  **SB 406 Violates the First Amendment as it is Unconstitutionally Overbroad**

The facial overbreadth doctrine "purports to grant federal courts the power to invalidate a law" that is constitutional as applied to the party before it "'if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Americans for Prosperity Foundation v. Bonta, 141 S. Ct. 2373 (2021)* In such a circumstance, society's interest in free expression outweighs its interest in the statute's lawful applications *U.S. v Hansen, 599 U. S. ____ (2023).*

A regulation of speech is unconstitutionally overbroad if it regulates a substantial amount of constitutionally protected expression.  Defendants may restrict speech "in a few limited areas," including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct. *United States v. Stevens, 559 U.S. 460 (2010).* Furthermore, the First Amendment protects against the government; it does not leave us at the mercy of *noblesse oblige.*

The overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied. The overbreadth doctrine allows a litigant (even an undeserving one) to vindicate the rights of the silenced, as well as society's broader interest in hearing them speak. *U.S. v Williams, 553 U. S. 285, 292 (2008).*

The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere. *Ashcroft v. Free Speech Coal., 535 U.S. 234, 244 (2002).*  Facial overbreadth challenges are permitted because an overly broad statute may chill the speech of individuals, including individuals not named herein. *Massachusetts v. Oakes, 491 U.S. 576, 581 (1989).*  SB 406 violates the First Amendment's

8

prohibition against government abridgment of speech because it overbroadly criminalizes

speech that civil remedies can sufficiently address.

**2.      SB 406 Violates the Due Process Clause of the 5TH and 14TH Amendments Because it is Unconstitutionally Vague**

Plaintiffs are entitled to constitutional protection for certain rights or "liberty interests"

related to speech under the Due Process clause of the Fourteenth Amendment. Plaintiffs' right

to due process includes protection against the ills of laws whose 'prohibitions are not clearly

defined.' *" Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 62 (1st Cir. 2011) (quoting*

*Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L.Ed.2d 222* (1972) ).

Plaintiffs are entitled to a 'fair warning' of what a law prohibits to prevent 'arbitrary

and discriminatory enforcement' of laws by requiring that Defendants provide explicit

standards for those who apply them. Plaintiffs are entitled to engage in conduct without criminal

prosecution of basic First Amendment freedoms under a statute that should avoid chilling the

exercise of First Amendment rights.

The criminal liability the attaches to an individual that violates SB 406, lies in the

following statement "It is unlawful for any person to use or threaten or attempt to use any force,

intimidation, coercion, violence, restraint or undue influence **with the intent to interfere** with the

performance of the duties of any elections official" [*Emphasis added*].

Litigants mounting a facial challenge to a statute normally "must establish that no set

of circumstances exists under which the [statute] would be valid." *United States v. Salerno,*

*481 U. S. 739, 745 (1987).*

If the challenger demonstrates that the statute "prohibits a substantial amount of

protected speech" relative to its "plainly legitimate sweep," then society's interest in free

expression outweighs its interest in the statute's lawful applications, and a court will hold the

law facially invalid. *Ibid.; see  Virginia v Hicks, 539 U. S. 113, 118-119  (2003)* Because it

destroys some good along with the bad, "[i]nvalidation for overbreadth is '"strong medicine"' that is not to be 'casually employed.'" *Williams, 553 U. S., at 293*.

To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep. *New York State Club Assn., Inc. v. City of New York, 487 U. S. 1, 14 (1988); Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U. S. 789, 800–801 (1984).*

### (a) The Legislation is Vague and Fails to Identify What Intimidation Is In A Subjective Context of the Law

It is significant to note that in 2013, the Nevada Legislature repealed the definition of intimidation in NRS 388.129, rendering no criminal definition of intimidation as to what to define it in the context of SB 406. Accordingly, SB 406 is susceptible to policy determinations of what "intimidation" is and what intent to interfere with an election official is.[2] It creates a subjective victim by resorting to a policy analysis grounded in social, economic, and political concerns. Because of the subjectivity surrounding the requirements of intimidation with intent to interfere, and no bright line of who a victim or protected class is, the discretionary nature of application of SB406 renders it vague.

The prohibition of vagueness in criminal statutes, is an "essential" of due process, required by both "ordinary notions of fair play and the settled rules of law." *See Dimaya v Lynch*, 803 F. 3d 1110 (9th Cir. 2015) citing to *Johnson v. United States, 576 U. S., at ___ (slip op., at 4)* (quoting *Connally v. General Constr. Co., 269 U. S. 385, 391 (1926)).* The void-for-vagueness doctrine guarantees that ordinary people have "fair notice" of the conduct

_____

[2] It should be noted that NRS 199.300 entitled Intimidating public officer, public employee, juror, referee, arbitrator, appraiser, assessor or similar person, is devoid of any definition in how it describes intimidation in the context of SB 406.

10

1
2
3
4

a statute proscribes. *Papachristou v. Jacksonville, 405 U. S. 156, 162 (1972)*. And the doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges. *Kolender v. Lawson, 461 U. S. 352, 357– 358 (1983).*

5
6
7

   **(b) SB406 Fails to Designate a Victim of Crime or Provide Immunity or an Affirmative Defense to Paid Election Officials or Election Workers with Supervisory Authority**

8
9
10

   NRS  217.070, Nevada's criminal statute defines "*Victim"* as a person who suffers direct or threatened physical, financial or psychological harm as a result of the commission of a crime." *Id.*

11
12
13
14
15
16
17

   "The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of [federal crimes], which are solely creatures of statute." *Liparota v. United States, 471 U. S. 419, 424 (1985). See also Dixon v. United States, 548 U. S. 1, 7 (2006).* Here, likewise, in SB 406, the Nevada Legislature passed a statute that created a crime for a specific type of conduct, involving specific people, and fails to exclude any affirmative defense for a susceptible protected class such as supervisors or election officials themselves.

18
19
20
21
22
23
24

   An affirmative defense—that is, a "justification or excuse which is a bar to the imposition of criminal liability" on conduct that satisfies the elements of an offense. *1 W. LaFave, Substantive Criminal Law §1.8(c) (3d ed. 2018).* The Supreme Court established that governments are "foreclosed from shifting the burden of proof to the defendant only 'when an affirmative defense . . . negate[s] an element of the crime.'" *Martin v. Ohio, 480 U. S. 228, 237 (1987).*

25
26
27
28

   In criminal law, the distinction between the elements of an offense and an affirmative defense is well-known and important. *Kahn v U.S. 597 U. S. ____ (2022).* The common law rule that the burden of proving "affirmative defenses— indeed, 'all . . . circumstances of

justification, excuse or alleviation'—rest[s] on the defendant." *Patterson v. New York, 432 U. S. 197, 202 (1977).*

Immunity from prosecution is a legal protection granted to a person that shields them from criminal prosecution for a particular offense or set of offenses. SB 406 also fails to provide that there are no defenses to the violation of said statute.[3] There are certain prohibitions on public observers are codified in Nev. Admin. Code § 293.245 and include the following:

"…[An]ny person may observe the conduct of voting at a polling place, including, without limitation, a polling place for early voting and a vote center. Before observing the conduct of voting at a polling place pursuant to subsection 1, a person must sign an acknowledgment in the form prescribed by the Secretary of State stating that the person, during the time the person observes the conduct of voting:
**(a)** Acknowledges that he or she is prohibited from:
**(1)** Talking to voters within the polling place;
**(2)** Using a mobile telephone or computer within the polling place;
**(3)** Advocating for or against a candidate, political party or ballot question;
**(4)** Arguing for or against or challenging any decisions of county or city election personnel; and
**(5)** Interfering with the conduct of voting; and
**(b)** May be removed from the polling place by the county or city clerk for violating any provision of title 24 of NRS or any of the provisions of paragraph (a).

However, because the statute does not proscribe any defenses to conduct in the ordinary course of an election official or observer's course of conduct, an observer under 293.245, can potentially engage in "intimidation" and be subjected to prosecution of a class E felony.

There is a presumption that where the express or implied government policy "allows a government agent to exercise discretion, it must be presumed that the agent's acts are

---

[3] This includes public observers entitled to observes the postelection certification audit [VVPAT- voter verified paper audit trail] who shall not interfere with the conduct of the audit. NAC 293.255.

grounded in policy when exercising that discretion.*" United States v Gaubert, 499 U.S. 315, 324 (1991)*

That exception provides that the Government is not liable for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, *<u>in the execution of a statute or regulation</u>*, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." [*Emphasis added*] The exception covers only acts that are discretionary in nature, acts that "involv[e] an element of judgment or choice," *Berkovitz v. United States, 486 U.S. 531, 536 (1988)***;** *see also Dalehite v. United States,* 346 U. S. 15, 346 U. S. 34 (1953); and "it is the nature of the conduct, rather than the status of the actor," that governs whether the exception applies. *Varig Airlines, supra,* at 467 U. S. 813.

Here SB 406 can potentially subject government employees, to wit; elections officials, to criminal liability for performing their supervisory duties as elections officials. Yet, there is no exception, ergo, any affirmative defense delineated, that precludes prosecution of any supervisors who may "intimidate" election officials.

### (c) SB406(5) Fails to Identify Prohibited Conduct That May Result in Prosecution of a Category E Felony

The section that should be the most concise in SB 406 is subsection 5, which should allow Plaintiffs adequate notice of what is lawful and what is unlawful behavior in an attempt to comply with the regulation. Subsection 5 lists a variety of acts which *<u>are not limited</u>* by the criminalization noted in subsections, 1 and 3. This list includes:

*(a) The applicability of the provisions of law relating to:*

*(1) **Observing** the conduct of voting at a polling place pursuant to NRS 293.274 or 293C.269;[4]*
*(2) **Observing** the conduct of tests pursuant to NRS 293B.145 or 293C.615;*
*(3) Observing the handling of ballots upon the closing of the polls pursuant to NRS 293B.330 or 293C.630;*
*(4) **Observing** the counting of ballots at the central counting place pursuant to NRS 293B.353;*
*(5) **Observing** the delivery, counting, handling and processing of the ballots at a polling place, receiving center and the central counting place pursuant to NRS 293B.354; and*
*(6) **Observing** ballot processing pursuant to NRS 293B.380.*
*(b) The ability of a person to give or offer to give prepackaged food items, nonalcoholic beverages, coats, handwarmers or other similar items to other persons who are at a polling place or any other location described in paragraph (a), if done in accordance with any other law and to the extent such items are not distributed inside of a building which does not permit the distribution of such items in the building as indicated by a sign posted in a prominent place at the entrance of the building.*
*(c) The ability of a person to engage in written recordation of notes at a polling place or a location other than a polling place; or*
*(d) The ability of a person to communicate with voters, election board officers or other persons in any way that is not otherwise limited or prohibited pursuant to subsection 1 or 3 or any other provision of law, including, without limitation NRS 293.740[5].*

Notably, the section does not address confrontation of an observer of an "election official" regarding discrepancies that are noticed, and vocalized. It also does not address one election official confronting another one regarding either discrepancies or deviation from election protocol, which could be construed as intimidation or intention to interfere with the election process.

### (d) SB 406 has no Scienter Provision and is therefore Vague and Overbroad

Criminal law generally seeks to punish conscious wrongdoing. Thus, when interpreting criminal statutes, the Court "start[s] from a longstanding presumption . . . that

---

[4] Lawful poll watching and poll watching in city elections.
[5] Nevada's electioneering statute.

1   Congress intends to require a defendant to possess a culpable mental state." *Rehaif v. United*

2   *States, 588 U. S. ___ (2019).* This culpable mental state, known as scienter, refers to the

3   degree of knowledge necessary to make a person criminally responsible for his or her acts. *See*

4   *Xiulu Ruan v. United States, 142 S. Ct. 2370, 2380 (2022), (slip op., at 5).*

5       Criminal law seeks to punish the "'vicious will." *Morissette v. United States, 342 U. S.*

6   *246, 251 (1952); see also id., at 250, n. 4 (quoting F. Sayre, Cases on Criminal Law, p. xxxvi*

7   *(R. Pound ed. 1927)).* With few exceptions, "'wrongdoing must be conscious to be criminal.'"

8   *Elonis v. United States, 575 U. S. 723, 734 (2015) (quoting Morissette, 342 U. S., at 252).*

9

10      Intent is generally a required element of a criminal offense, and consequently there is a

11  presumption in favor of a scienter or *mens rea* requirement in a criminal statute. The

12  presumption applies "to each of the statutory elements which criminalize otherwise innocent

13  conduct." [6] The Court may read an express scienter requirement more broadly than syntax

14  would require or normally permit,[7] and may read into a criminal prohibition a scienter

15  requirement that is not expressed.[8]

16

17      The Court recognizes some "strict liability" exceptions, especially for "public welfare"

18  statutes regulating conduct that is inherently harmful or injurious and therefore unlikely to be

19  perceived as lawful and innocent.[9] Determining whether such an exception applies can be

20  difficult.[10] However, if the statute does not preclude a holding that scienter is required, and if

21  the public welfare exception is deemed inapplicable, "far more than the simple omission of the

22

23

24  _____

25

26  [6] *United States v. X-Citement Video, Inc., 513 U.S. 64, 72 (1994).* See also *Flores-Figueroa v. United States, 556 U.S. 646 (2009).*
    [7] *Liparota v. United States, 471 U.S. 419 (1985)*

27  [8] *Posters 'N' Things, Ltd. v. United States, 511 U.S. 513 (1994)*
    [9] See, e.g., *United States v. Dotterweich, 320 U.S. 277 (1943)*

28  [10] *United States v. Freed, 401 U.S. 601 (1971)*

appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement."[11] On the other hand, while "it is fair to begin with a general presumption that the specified *mens rea* applies to all elements of an offense, ... it must be recognized that there are instances in which context may well rebut that presumption."[12]

The presumption of scienter applies even when a statute does not include a scienter provision, and when a statute does "includ[e] a general scienter provision," "the presumption applies with equal or greater force" to the scope of that provision. *See ibid.*

Here, SB 406's provides that anyone charged under the statutory provisions must ***intend to intimidate for the purposes of interfering with the election process***. Whether Plaintiffs or potential defendant acts in the usual course of his practice must be evaluated based on an objective standard, not a subjective standard.'" *Id., at 1166 (quoting United States v. Joseph, 709 F. 3d 1082, 1097 (CA11 2013); emphasis added; alteration in original).*

A severe penalty is a further factor tending to suggest that . . . the usual presumption that a defendant must know the facts that make his conduct illegal should apply"); *United States Gypsum, 438 U. S., at 442, n. 18.*

### (e) SB 406 shifts the burden of proving scienter on a Defendant

The Due Process Clause of the United States Constitution requires the government to prove every element of a charged offense beyond a reasonable doubt.   *See In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072-73, 25 L.Ed.2d 368 (1970).* The defendant is presumed to be innocent until the contrary is proved.   This presumption places upon the State the burden

---

[11] *United States v. United States Gypsum Co., 438 U.S. 422, 438 (1978)*
[12] *Flores-Figueroa v. United States, No. 08-108, 546 U.S. 646, 660 (2009)*

of proving beyond a reasonable doubt[13] ***every material element of the crime charged*** and that the defendant is the person who committed the offense. [*Emphasis added*] *Ramirez v Hatcher, 136 F.3d 1209 (9th Cir. 1998).*

Intent can rarely be proven by direct evidence of a defendant's state of mind, but instead is inferred [by the jury] from the individualized, external circumstances of the crime, which are capable of proof at trial. *See Sharma v. State*, *118 Nev. 648, 659, 56 P.3d 868, 874 (2002).*

Here, SB 406, not only affords a subjective interpretation of "intimidation", but also couples the subjectivity with "intent to interfere", which is wholly subjective on a perception of a purported victim. Notwithstanding same, because SB 406 provides for no affirmative defenses to supervisors or elections observers, the notion of "intent to interfere" precludes any oversight by supervisory election officials or observer sat all. There are simply to many subjective variables to determine was a potential defendants state of mind is regarding the external circumstance of election oversight.

## C. DEFENDANTS MUST DEMONSTRATE THAT SB406 WAS PASSED TO FURTHER A COMPELLING GOVERNMENT INTEREST AND MUST BE NARROWLY TAILORED TO ACHIEVE THAT INTEREST

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." *U.S. CONST. amend. XIV, § 1.* The Supreme Court has interpreted this guarantee "to include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at

---

[13] A reasonable doubt is one based on reason. It is not mere possible doubt but is such a doubt as would govern or control a person in the more weighty affairs of life. *See Ramirez 136 F.3d at 1211.*

all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores, 507 U.S. 292, 301–02 (1993).*

To survive strict scrutiny, the government must show that "the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 340, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010).*

To satisfy strict scrutiny, Defendants must show that their infringement of the Plaintiffs' rights is "narrowly tailored" to advance a "compelling" state interest. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993).*

When plaintiffs challenge a content-based speech restriction, the Government has the burden to prove that the proposed alternatives will not be as effective as the challenged statute. *Reno* v. *American Civil Liberties Union*, *521 U. S. 844, (1997).* The purpose of the test is to ensure that speech is restricted no further than is necessary to accomplish Congress' goal. *Id.*

Here Defendants fail to provide any standard for what would qualify as legitimate oral dissent to an election official's action which may or may not be viewed as intimidating to said election worker or with the intent to interfere with elections operations. Notwithstanding same, the identical analysis can be provided for an election observers and poll workers alike.

**D.     THIS COURT CAN ENJOIN ENFORECEMENT OF SECTIONS 1 AND 2 OF SB406 IMMEDIATELY**

Importantly and most recently, *Whole Woman's Health Et Al v. Austin Reeve Jackson, Judge Et Al* 594 U. S. \_\_\_\_ (2021) demonstrates that this Court has the authority to enjoin the SB406 under the jurisprudence cited above.

Normally, where a legal right is "'invaded,'" the law provides "'a legal remedy by suit or action at law.'" *Marbury v. Madison, 1 Cranch 137, 163 (1803) (quoting 3 W. Blackstone*

*Commentaries *23).* Here, these Plaintiffs bring action to this Court as a facial challenge to the legislation before violation of any SB406 by Plaintiffs or anyone similarly situated.

## E.    PLAINTIFFS ARE LIKELY TO SUFFER IRREPERABLE HARM

To obtain a TRO, Plaintiffs must show they will suffer irreparable harm in the absence of the order. *Winter, 555 U.S. at 20.* Notwithstanding same, Plaintiffs' Procedural and Substantive Due Process rights have been violated without any justification for same. Plaintiffs First Amendment right to free speech is not only violated, that violation is compounded by criminal prosecution of a vague and overbroad legislation.

## F.    BALANCE OF EQUITIES FAVORS PLAINTIFFS

### 1.    Defendants Have Not Demonstrated That the Law Provides a Clear Understanding of what Conduct Would be Considered a Violation of Same   Subjecting Plaintiffs to a Class E Felony.

Evaluating whether a government measure is narrowly tailored is not simply a matter of ordinary fact-finding, however. Narrow tailoring is viewed as a mixed question of fact and law that requires a delicate balancing of legal principles as applied to specific circumstances. *See Gilbrook v. City of Westminster, 177 F.3d 839, 861 (9th Cir. 1999); Gerritsen v. City of Los Angeles, 994 F.2d 570, 575 (9th Cir. 1993).*

Plaintiffs must also show that the balance of equities tips in their favor. *Winter, 555 U.S. at 20.* The overbreadth of SB 406 and vagueness of the Legislation, demonstrates that not only does it fail to provide what conduct it criminalized, but also who the purported victims or protected class it aims to serve.

## G.    AN INJUNCTION IS IN THE PUBLIC INTEREST

Lastly, to obtain a TRO, Plaintiffs must show that the granting of a TRO is in the public interest., *555 U.S. at 20.* The public interest is furthered by preventing the violation of a party's constitutional rights. *Free the Nipple v, City of Ft. Collins, Colo, 916 F.3d 792 (2019).*

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius,* 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd'* sub nom. *Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682 (2014) (quotations omitted).    Because the requested injunction will accomplish this, the public interest also favors an order protecting Plaintiffs making the grant of an injunction in this case a matter of overwhelming public interest.

## **CONCLUSION**

Accordingly, Plaintiffs respectfully demand an injunction be issued as follows:

1.      Permanently enjoin Defendants and all persons and entities in active concert or participation with Defendants from prosecution of any offense under SB 406.

2.      Declare that sections 1 and 2 of SB 406 are unconstitutional as they are vague, overbroad and criminal lawful behavior, whereby there is no compelling government interest in its passage nor is it narrowly tailored to meet those interests.

DATED this  27th  day of July 2023.

**CHATTAH LAW GROUP**

*/s/ Sigal Chattah*
SIGAL CHATTAH, ESQ.
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Tel.:(702) 360-6200
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

     I hereby certify that the foregoing MOTION FOR PRELIMINARY INJUNCTION was served this 27th day of July, 2023 via the Court's CMECF E-service system to all registered Parties.


          */s/ Sigal Chattah*
          _____
          An Employee of Chattah Law  Group