AARON D. FORD
  Attorney General
JESSICA E. WHELAN (Bar No. 14781)
  Senior Deputy Attorney General
KIEL B. IRELAND (Bar No. 15368)
  Deputy Solicitor General
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
T: (775) 684-1100
E:  kireland@ag.nv.gov

*Attorneys for Governor Lombardo*

AARON D. FORD
  Attorney General
LAENA ST-JULES (Bar No. 15156)
  Deputy Attorney General
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
T: (775) 684-1100
E:  lstjules@ag.nv.gov

*Attorneys for Secretary Aguilar*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SUSAN VANNESS, an individual, ALEXANDREA SLACK, an individual, MARTIN WALDMAN, an individual, ROBERT BEADLES, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>FRANCISCO V. AGUILAR, in his official capacity as Nevada Secretary of State, JOSEPH M. LOMBARDO, in his official capacity as Governor of the State of Nevada, DOES I-X, inclusive; ROE CORPORATIONS 11-20, inclusive,<br><br>Defendants. | Case No. 2:23-cv-01009-CDS-VCF<br><br>**DEFENDANTS GOVERNOR LOMBARDO AND SECRETARY AGUILAR'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Defendants Joseph M. Lombardo, in his official capacity as Governor of the State of Nevada ("Governor Lombardo"), and Francisco V. Aguilar, in his official capacity as Nevada Secretary of State ("Secretary Aguilar" and together with Governor Lombardo,

///

Page **1** of **16**

"Defendants"), oppose Plaintiffs Susan Vanness, Alexandrea Slack, Martin Waldman, and Robert Beadles' ("Plaintiffs") Motion for Preliminary Injunction ("Motion") (ECF No. 14).

## I. INTRODUCTION

At a time when elections officials are under attack more than ever, Plaintiffs seek a preliminary injunction to enjoin section 1[1] of Senate Bill 406 of the 82nd Legislative Session ("SB 406"), which the Legislature recently enacted to protect elections officials. Since 2020, there has been a mass exodus of elections officials across Nevada due in part to harassment and death threats. *Minutes of the Senate Committee on Legislative Operations and Elections*, 82d Sess., 2–3, 12 (Nev. Apr. 11, 2023) (statements of Gabriel Di Chiara and Amy Burgans), https://tinyurl.com/SB406Mins [hereinafter *Senate Committee Minutes*]. SB 406 seeks to turn the tide by holding criminally liable those who would use, threaten to use, or attempt to use force, intimidation, coercion, violence, restraint, or undue influence with an intent to interfere with or retaliate against elections officials in connection with their performance of elections duties. Public servants directly in the crosshairs of efforts to prevent their performance of election duties deserve protection, and Nevadans deserve to have those with institutional knowledge stay in their positions and ensure that elections run smoothly.

Plaintiffs' request for a preliminary injunction should be denied. Before even reaching the question of a preliminary injunction, the Court should dismiss this action for lack of subject-matter jurisdiction. Plaintiffs have not alleged or provided evidence that they have standing. Even if they had standing, however, Plaintiffs have failed to meet their burden of establishing entitlement to a preliminary injunction. Plaintiffs cannot succeed on their claims because they named the wrong defendants, and the Eleventh Amendment bars all claims. Moreover, they have not clearly shown a likelihood of success on the merits of their claims, a likelihood of irreparable harm, or that the balance of equities and public interest favor an injunction.

---

[1] Plaintiffs also seek to enjoin section 2 of Senate Bill 406, Motion at 2, 3, but there is nothing to enjoin. Section 2 was deleted by amendment.

## II. BACKGROUND

The Nevada Legislature enacted SB 406 to "provide additional protection for election workers" and reverse the "unbelievable turnover of election officials in elected and administrative positions over the last four years." *Senate Committee Minutes*, *supra*, at 2–3. Section 1 provides:

> 1. It is unlawful for any person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence with the intent to:
>    (a) Interfere with the performance of the duties of any elections official relating to an election; or
>    (b) Retaliate against any elections official for performing duties relating to an election.

SB 406 § 1(1). The statute defines "elections official" as:

> (1) The Secretary of State or any deputy or employee in the Elections Division of the Office of the Secretary of State who is charged with duties relating to an election;
> (2) A registrar of voters, county clerk, city clerk or any deputy or employee in the elections division of a county or city who is charged with elections duties; or
> (3) An election board officer or counting board officer.

*Id.* § 1(6)(b). A person who violates section 1 is guilty of a category E felony. *Id.* § 1(4).

Plaintiffs filed their complaint in this Court challenging SB 406 on three grounds: overbreadth under the federal Constitution, vagueness under the federal Constitution, and vagueness under the Nevada Constitution. [First] Amended Complaint for Temporary Restraining Order, Declaratory Judgment, and Preliminary and Permanent Injunctive Relief ("FAC") (ECF No. 9) ¶¶ 41–45, 58, 75–77, 90–91. The only non-Doe Defendants are Defendants Governor Lombardo and Secretary Aguilar, named in their official capacity. *Id.* ¶¶ 52–56.

While Plaintiffs allege that they "previously" served as ballot observers, ballot runners, election intake specialists, or ballot counting room observers, they do not allege that they intend to do so again in the future. *Id.* ¶¶ 46–51 & n.2–3. Indeed, they do not allege that they will take any future action at all. *See id.*

In their Motion, Plaintiffs repeatedly refer to election observers, which are members of the public who are afforded certain rights under other Nevada statutes. Specifically,

1  observers can "observe the conduct of voting at a polling place," NRS 293.274(1),
2  293C.269(1), "the handling of ballots," NRS 293B.330(4), 293C.630(4), "the counting of
3  ballots at a central counting place," NRS 293B.353(1), "the delivery, counting, handling and
4  processing of ballots at a polling place, receiving center or central counting place,"
5  NRS 293B.354(1), and "the counting area where computers are located during the period
6  when ballots are being processed," NRS 293B.380(2)(a). Further, specified representatives
7  can observe the conduct of election equipment and program tests.   NRS 293B.145,
8  293C.615.

9      While section 1(5) of SB 406 states that section 1 of SB 406 does not limit the rights
10 of observers under these statutes, nothing in *any* statute authorizes an observer to do more
11 than observe. Plaintiffs contend that volunteer observers are entitled to insist to elections
12 officials that corrective measures be taken and to confront elections officials. *See* FAC ¶¶
13 32–34; Motion at 14. Elections officials certainly do engage with volunteer observers in
14 good faith to ensure processes are understood and any improper activities are corrected,
15 but Plaintiffs fail to cite any right to engage with elections officials or demand corrective
16 action of elections officials.

17 **III.   LEGAL STANDARDS**

18     **A.   Subject-Matter Jurisdiction**

19     Before considering a preliminary injunction motion, a court must first assure itself
20 that it has jurisdiction to consider a case. *See LA All. for Hum. Rts. v. County of Los*
21 *Angeles*, 14 F.4th 947, 956 (9th Cir. 2021). Standing is one necessary component of subject-
22 matter jurisdiction; if a plaintiff does not have standing for the relief sought, the court
23 cannot issue an injunction. *See id.* at 956–57.

24     **B.   Preliminary Injunction**

25     "A preliminary injunction is an extraordinary remedy never awarded as of right."
26 *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs bear the burden of
27 establishing "that [they are] likely to succeed on the merits, that [they are] likely to suffer
28 irreparable harm in the absence of preliminary relief, that the balance of equities tips in

[their] favor, and that an injunction is in the public interest." *Id.* at 20. Where, as here, the government is a party, the balance of equities and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). A preliminary injunction should not be granted unless Plaintiffs *"by a clear showing"* carry their burden of persuasion. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citation omitted).

Plaintiffs assert that a preliminary injunction can also be granted if they can demonstrate "that serious questions are raised and the balance of hardships tips sharply in their favor." Motion at 4. However, the "serious questions" analysis only applies where there are "questions that cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation." *All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 497 (9th Cir. 2023) (internal quotation marks and citation omitted). Where a plaintiff challenges a pure legal question, such as the interpretation of an unambiguous statute, discovery would not make the issues any clearer and there is no need for a further hearing on the merits. *See id.* A court therefore errs in applying the "serious questions" analysis to cases involving pure issues of law. *See id.* As this lawsuit can be resolved without further discovery or hearing, Plaintiffs must establish by a clear showing that they are likely to prevail on the merits of their claims. Indeed, Plaintiffs' Motion indicates that no factual development is necessary, as they have declined to submit any evidence at all supporting their arguments.

IV. **ARGUMENT**

    A. **This Action Must Be Dismissed Because the Court Lacks Subject-Matter Jurisdiction**

The Court must dismiss this action, before considering Plaintiffs' Motion, because Plaintiffs do not have standing and the Court therefore lacks subject-matter jurisdiction. *See generally* Motion to Dismiss at 5–6 (ECF No. 13). To establish the irreducible constitutional minimum of standing, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

1 (2016). "At the preliminary injunction stage, the plaintiffs must make a clear showing of each element of standing . . . , relying on the allegations in their complaint and whatever other evidence they submitted in support of their [preliminary-injunction] motion to meet their burden." *LA All. for Hum. Rts.*, 14 F.4th at 956–57 (internal quotation marks and citations omitted).

Plaintiffs did not submit any evidence in support of their Motion, and their FAC contains no allegation that establishes any of the three elements of standing. First, to establish an injury-in-fact for a pre-enforcement challenge, the plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation omitted); *see also San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (plaintiff seeking only declaratory and injunctive relief must show "a very significant possibility of future harm"). Plaintiffs' FAC only contains allegations of past conduct, FAC ¶¶ 47 & n.2, 49 & n.3, 50, not of intended future conduct. And the Motion does nothing to add to the FAC's insufficient allegations. Motion at 7 ("Here, due to the fact that that [sic] Plaintiffs, have previously been elections officials and elections observers, without specific definitions of prohibited conduct or a protected class, violation of sections 1 and 2 *may be* inevitable." (emphasis added)). Plaintiffs have consequently not sustained their burden of showing an injury-in-fact.[2]

Second, Plaintiffs must establish "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (alterations, internal quotation

---

[2] The Court should "refuse to consider new evidence submitted for the first time" in any reply brief because evidence of standing "should have been presented with the opening brief." *See Semper/Exeter Paper Co. v. Henderson Specialty Paper LLC*, Case No. SAC 09-0672 AG (MLGx), 2009 WL 10670619, at *2–3 (C.D. Cal. Sept. 21, 2009) (collecting cases) (not considering new evidence submitted with reply in support of motion for a preliminary injunction). Notably, Plaintiffs were on notice that standing was at issue; Plaintiffs filed their Motion after Defendants filed their Motion to Dismiss (ECF No. 13) raising lack of standing as grounds for dismissal.

marks, and citation omitted). Because this case is premised on a potential for future prosecution, Plaintiffs would have to show that this potential injury could be fairly traceable to Defendants' actions. But Plaintiffs have not alleged or provided evidence that Defendants have any enforcement power.

Third, Plaintiffs would have to establish that a favorable decision is likely to redress their potential injury. *Spokeo, Inc.*, 578 U.S. at 338. Plaintiffs have requested injunctions against Defendants to prevent them from enforcing SB 406. FAC at 17. Plaintiffs have not, however, established that Defendants enforce criminal laws, and as a result, Plaintiffs have not carried their burden of showing that an injunction against Defendants would redress any supposed injury.

**B. Plaintiffs Are Unlikely to Succeed on the Merits**

    **1.    Plaintiffs Cannot Succeed on Their Claims Because the Eleventh Amendment Bars All Claims**

The Eleventh Amendment bars lawsuits in federal court against states, unless they consent to suit or Congress has abrogated the immunity. *Green v. Mansour*, 474 U.S. 64, 68 (1985). The immunity extends to state officials acting in their official capacity because a suit against them is considered a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Nevada has not waived its Eleventh Amendment immunity. NRS 41.031(3).

Under *Ex parte Young*, 209 U.S. 123 (1908), an exception to Eleventh Amendment immunity exists that "allows citizens to sue state officers in their official capacities 'for prospective declaratory or injunctive relief . . . for their alleged violations of federal law.'" *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (citation omitted). To fall under this exception, the state officer defendant "must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157. "That connection 'must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing

1 the challenged provision will not subject an official to suit.'" *Eleveurs*, 729 F.3d at 943
2 (citation omitted). Notably, a Governor who only has a general duty to enforce a state's
3 laws is entitled to Eleventh Amendment immunity. *Id.*

4 Neither the FAC nor the Motion addresses Defendants' enforcement powers.
5 Consequently, all of Plaintiffs' claims are unlikely to succeed. *See Nat'l Audubon Soc'y v.*
6 *Davis*, 307 F.3d 835, 847 (9th Cir. 2002).

7 Plaintiffs' third claim is unlikely to succeed for the additional reason that it asserts
8 a violation of the Nevada Constitution, not any federal law. FAC ¶¶ 86–93. The Eleventh
9 Amendment bars state-law claims against state officers in federal court. *Spoklie v.*
10 *Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005); *see also Pennhurst State Sch. & Hosp. v.*
11 *Halderman*, 465 U.S. 89, 106 (1984) (holding that *Ex parte Young* does not apply to state-
12 law claims).

### 2. Even if They Survive Standing Scrutiny and Overcome Eleventh Amendment Immunity, Plaintiffs Are Not Likely to Succeed on the Merits of Their Claims

#### a. Plaintiffs Cannot Establish a Likelihood of Success on Their Overbreadth Claim Because They Do Not Identify Prohibited Protected Speech

17 Plaintiffs' first claim is a facial overbreadth challenge to SB 406 based on the First
18 Amendment. FAC ¶¶ 57–73. To succeed on their facial overbreadth challenge, Plaintiffs
19 must "demonstrate[] that the statute 'prohibits a substantial amount of protected speech'
20 relative to its 'plainly legitimate sweep.'" *United States v. Hansen*, 143 S. Ct. 1932, 1939
21 (2023) (citation omitted). "[A] law's unconstitutional applications must be realistic, not
22 fanciful, and their number must be substantially disproportionate to the statute's lawful
23 sweep." *Id.* As Plaintiffs concede, "invalidation for overbreadth is strong medicine that is
24 not to be casually employed." Motion at 10 (cleaned up) (quoting *United States v. Williams*,
25 553 U.S. 285, 293 (2008)).

26 As best Defendants can tell, Plaintiffs contend that SB 406 is overbroad based on (1)
27 the lack of specified affirmative defenses; (2) the supposed lack of a scienter provision; and
28 (3) the supposed shifting of the burden of proving scienter to a criminal defendant. None

of these arguments stands up to scrutiny nor establishes a clear likelihood of success on the merits.

First, Plaintiffs appear to argue that SB 406 is overbroad because it does not contain affirmative defenses. Motion at 11–13. They cite, however, no case that suggests a statute is overbroad for failing to include affirmative defenses, nor do they explain how this causes SB 406 to purportedly prohibit a substantial amount of protected speech. *See Hansen*, 143 S. Ct. at 1939. Plaintiffs' concerns are already addressed through the plain language of SB 406. Plaintiffs argue that because there is no affirmative defense defined in SB 406, SB 406 could subject elections officials "to criminal liability for performing their supervisory duties as elections officials." Motion at 13. They further claim observers could engage in intimidation "in the ordinary course . . . of conduct." *Id.* at 12. But SB 406 requires as an element of the crime that a person intend to interfere or retaliate against an elections official in connection with the elections official's performance of elections duties. Further, a person would have to use or threaten or attempt to use force, intimidation, coercion, violence, restraint, or undue influence. Plaintiffs do not explain how an elections official's "supervisory duties" could include using, threatening to use, or attempting to use, for example, coercion, intimidation, or force, with an intent to interfere with or retaliate against another elections official in connection with the performance of elections duties. Similarly, Plaintiffs do not explain what ordinary course of conduct could lead to an observer violating SB 406. Any person may attempt to correct elections officials' wrongs, but under SB 406, they may not do so through, e.g., threats or violence with an intent to interfere or retaliate.

Second, Plaintiffs argue confusingly that "SB 406 has no Scienter Provision and is therefore . . . Overbroad," but that "[i]ntent is generally a required element of a criminal offense, and consequently there is a presumption in favor of a scienter or *mens rea* requirement in a criminal statute," and also that "SB 406's [sic] provides that anyone charged under the statutory provisions must intend to intimidate for the purposes of interfering with the election process." Motion at 14–16 (emphasis omitted). Generally,

there is a presumption that scienter, i.e., a "culpable mental state," is a requirement of criminal statutes. *Ruan v. United States*, 142 S. Ct. 2370, 2377 (2022). A statute's scienter requirement is satisfied when a defendant acts with the *mens rea*, i.e., "state of mind," required by a criminal statute. *See Holloway v. United States*, 526 U.S. 1, 8 (1999). And an intent element in a criminal statute, such as an intent to interfere or retaliate, constitutes a *mens rea* requirement. *See id.* at 3, 8 (statue requiring an "intent to cause death or serious bodily harm" contained *mens rea* requirement). Whatever Plaintiffs' argument is, it is clear that SB 406 does not run afoul of any scienter requirement.

Third, Plaintiffs argue that SB 406 somehow shifts the burden of proving scienter onto a criminal defendant. Motion at 16–17. It does not. Because scienter is an element of a crime under SB 406, the prosecution would bear the burden of establishing it beyond a reasonable doubt. *See Martin v. Ohio*, 480 U.S. 228, 231–32 (1987). Plaintiffs also contend, without citation, that "intent to interfere" "is wholly subjective on a perception of a purported victim." Motion at 17. Wrong. Intent is based on the criminal defendant's state of mind, not the subjective view of the victim. *See United States v. Cassel*, 408 F.3d 622, 636 (9th Cir. 2005) ("The proper focus is on the defendant's conduct . . . not the subjective emotions which the victim experiences."). And the intent requirement does not create a constitutional problem; on the contrary, it "cures whatever risk there might be of overbreadth." *Id.* at 630.

### b. Plaintiffs Cannot Establish a Likelihood of Success on Their Vagueness Claim Because They Do Not Identify Anything Vague in SB 406

Plaintiffs' second claim asserts a facial challenge of SB 406 based on vagueness under the Due Process Clause of the Fourteenth Amendment.[3] FAC ¶¶ 74–85. The void-for-vagueness doctrine applies when a criminal law "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304. "When a

---

[3] Plaintiffs' Motion also mentions the Fifth Amendment's Due Process Clause, Motion at 9, but that Clause applies only to the federal government, *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).

1  statute clearly implicates free speech rights, it will survive a facial challenge so long as it
2  is clear what the statute proscribes in the vast majority of its intended applications."
3  *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1146 (9th Cir. 2009)
4  (internal quotation marks and citation omitted).  In assessing whether a law is vague in
5  the First Amendment context, "perfect clarity and precise guidance have never been
6  required."  *Williams*, 553 U.S. at 304 (citation omitted).  Nor does the ability to envision
7  close cases render a statute vague.  *Id.* at 305.  As with a facial overbreadth challenge,
8  facial invalidation based on vagueness "is, manifestly, strong medicine" and should be
9  employed "sparingly and only as a last resort."  *See Nat'l Endowment for the Arts v. Finley*,
10 524 U.S. 569, 580 (1998) (citations omitted).

11 It appears Plaintiffs may be basing their second claim on supposed vagueness in (1)
12 the definition of an elections official; (2) the lack of immunity or exemption from SB 406's
13 application; (3) the definition of intimidation; (4) the definition of interfere; and (5) the lack
14 of a scienter requirement.  None of Plaintiffs' arguments establishes any likelihood of
15 success on the merits.

16 <u>First</u>, Plaintiffs claim that they "cannot determine who an election [sic] official is."
17 Motion at 3; *see also id.* at 10.  This claim is unfounded.  "Elections official" is defined in
18 section 1(6)(b) of SB 406.  The list of covered individuals is exclusive.  *See State v. Javier*
19 *C.*, 128 Nev. 536, 541, 289 P.3d 1194, 1197 (2012) ("Nevada follows the maxim 'expressio
20 unius est exclusion alterius,' the expression of one thing is the exclusion of another.");
21 *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) ("The doctrine of
22 *expressio unius est exclusion alterius* 'as applied to statutory interpretation creates a
23 presumption that when a statute designates certain persons, things, or manners of
24 operation, all omissions should be understood as exclusions.'").  No others qualify as
25 elections officials under SB 406.

26 <u>Second</u>, Plaintiffs argue that they cannot tell "who is protected under SB 406,"
27 apparently on the basis that there is "no classification for immunity or exemption for
28 'election [sic] officials' or election observers."  Motion at 3; *see also id.* at 10.  There is

1 nothing vague about the lack of immunity or exemption; no one is immune or exempt from
2 the provisions of SB 406.

3    **Third**, Plaintiffs claim that SB 406 does not give "adequate notice of what is lawful
4 and what is unlawful behavior" based on section 1(5) of SB 406, which provides that section
5 1 of SB 406 does not limit the rights of observers under specified observer statutes. *Id.* at
6 13.  They claim that section 1(5) "does not address confrontation of an observer of an
7 'election [sic] official' regarding discrepancies that are noticed, and vocalized." *Id.* at 14.
8 The root of their argument appears to be that it is unclear whether an observer's
9 confrontation of an elections official could qualify as intimidation under SB 406. *Id.* at 10–
10 11, 13–14.

11    Setting aside that Plaintiffs have cited nothing to support their conclusory assertion
12 that observers are entitled to confront elections officials,[4] Plaintiffs do not explain how
13 SB 406 supposedly fails to provide fair notice of what is prohibited.  The use of the term
14 "intimidation" is not vague.[5] *See Al Maqablh v. Heinz*, Civil Action No. 3:16-cv-00289-JHM,
15 2017 WL 1788666, at *3 (W.D. Ky. May 4, 2017) (finding term "intimidating" is a term
16 "commonly understood by ordinary people").  A person raising a perceived wrong to an
17 elections official does not, without more, intimidate.  Moreover, the additional limitations
18 on the scope of SB 406—that a person must intend to interfere with or retaliate against an
19 elections official in connection with the performance of elections duties—gives "fair notice
20 to those who might violate the statute." *Cassel*, 408 F.3d at 635; *see also United States v.*
21 *Jae Gab Kim*, 449 F.3d 933, 943 (9th Cir. 2006) ("[A] scienter requirement may mitigate a
22 law's vagueness . . . .").

23    **Fourth**, Plaintiffs assert that "one election [sic] official confronting another one
24 regarding either discrepancies or deviation from election protocol . . . could be construed as
25 intimidation or intention to interfere with the election process." Motion at 14; *see also id.*

---

[4] Observe means "[t] watch carefully" and "[t]o see and notice." *Observe*, Black's Law Dictionary (11th ed. 2019).  None of the observation statutes authorizes an observer to confront elections officials.  Observers can, of course, challenge wrongdoing through petitions or lawsuits.

[5] To intimidate is "to make timid or fearful," especially "to compel or deter by or as if by threats." *Intimidate*, Merriam-Webster.com Dictionary.

at 10. As noted above, there is nothing vague about the use of the term intimidation. Similarly, there is nothing vague about the use of the term interfere. It has "such a clear, specific and well-known meaning as not to require more than use of the word[ itself] in a criminal statute." *United States v. Gwyther*, 431 F.2d 1142, 1144 n.2 (9th Cir. 1970). Again, a person can raise concerns with an elections official without violating SB 406.

Finally, while Plaintiffs include an assertion in a heading that "SB 406 has no Scienter Provision and is therefore Vague," there is no substantive vagueness analysis to support that assertion. Motion at 14–16. In any event, as discussed above, the inclusion of a specific intent requirement in SB 406 satisfies any scienter requirement.

### c. Plaintiffs Cannot Establish a Likelihood of Success on Their Claim Based on the Nevada Constitution Because They Do Not Identify Anything Vague in SB 406

Plaintiffs' third claim appears to be a vagueness challenge based on the Nevada Constitution. FAC ¶¶ 86–93. Nevada's vagueness analysis is similar to the federal vagueness analysis. *See Ford v. State*, 127 Nev. 608, 612, 262 P.3d 1123, 1125–26 (2011). Plaintiffs have failed to establish a likelihood of success on the merits of their third claim for the same reasons they fail to establish a likelihood of success on the merits of their second claim.

### d. Plaintiffs Cannot Rely on a Claim Not Pled in their FAC to Support their Request for a Preliminary Injunction, and in Any Event, Plaintiffs' New Claim Cannot Succeed

Plaintiffs include in their Motion an argument based apparently on substantive due process. Motion at 17–18. A court only has "equitable power to grant relief on the merits of the case or controversy before it, and does not have the authority to issue an injunction based on claims not pled in the complaint." *LA All. for Hum. Rts.*, 14 F.4th at 957 (internal quotation marks and citation omitted). Federal Rule of Civil Procedure 8(a)(2), governing pleadings, requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Apart from one passing reference to substantive due process in the heading of the second claim, the FAC contains no allegations relating to substantive due process. There is no discussion, for example, of elements of the claim like fundamental

1 liberty interests, *see Franceschi v. Yee*, 887 F.3d 927, 937 (9th Cir. 2018), narrow tailoring, or state interests, *see Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 781 (9th Cir. 2014). In fact, the heading of the second claim also references vagueness, and the allegations of the second claim are asserted within the framework of a vagueness challenge. *E.g.*, FAC ¶ 76 (discussing laws whose "prohibitions are not clearly defined"); ¶ 77 (stating "Plaintiffs are entitled to a 'fair warning' of what a law prohibits to prevent 'arbitrary and discriminatory enforcement'").

Further compounding the failure to plead a substantive due process claim is the fact that a substantive due process analysis would not apply here. "[I]f a constitutional claim is covered by a specific constitutional provision . . . , the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Plaintiffs' claims are based on a supposed violation of free speech, covered by the First Amendment. Plaintiffs appear to recognize that a First Amendment analysis is the appropriate standard—all but the first case Plaintiffs cite apply a First Amendment analysis. Motion at 17–18. Because Plaintiffs' substantive due process argument is based on an inapplicable claim not pled, no preliminary injunction should be granted in connection with it.

Even if the Court were to entertain Plaintiffs' newly raised argument, Plaintiffs' request for a preliminary injunction should be denied. Strict scrutiny does not apply. "Laws that do not infringe a fundamental right survive substantive-due-process scrutiny so long as they are 'rationally related to legitimate government interests.'" *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015). Plaintiffs have failed to establish that SB 406 prohibits protected speech and thereby infringes on a fundamental right.

SB 406 targets threats and other forms of coercion and intimidation, which are not protected under the First Amendment. *White v. Lee*, 227 F.3d 1214, 1230 (9th Cir. 2000); *see also Hansen*, 143 S. Ct. at 1947 ("Speech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected."); *United States v. Osinger*, 753 F.3d 939, 947 (9th Cir. 2014) (holding that expressive aspects of speech are not protected under

the First Amendment where they are "integral to criminal conduct"). It also contains an intent requirement that further "insulate[s] the statute from unconstitutional application to protected speech." *United States v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir. 1987).

SB 406 was enacted to "provide additional protection for election workers" and reverse the "unbelievable turnover of election officials in elected and administrative positions over the last four years." *Senate Committee Minutes*, *supra*, at 2–3. Maintaining elections officials with knowledge and experience, and providing them with protection in a politically charged environment, are legitimate governmental interests that are rationally related to SB 406.

### C. Plaintiffs Have Not Established Any Likelihood of Irreparable Harm

Plaintiffs claim they are likely to suffer irreparable harm absent a preliminary injunction because SB 406 is unconstitutional. Motion at 19. "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Plaintiffs have failed to do so. First, as described above, Plaintiffs have failed to establish any likelihood that SB 406 will be found unconstitutional and they therefore cannot demonstrate any threat to or impairment of their First Amendment rights. Second, Plaintiffs have not demonstrated that they intend to do anything that could expose them to prosecution under SB 406. Thus, they allege no harm whatsoever, let alone irreparable harm.

### D. The Balance of Equities and Public Interest Weigh in Favor of Denying a Preliminary Injunction

"To determine which way the balance of hardships tips, a court must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it." *Univ. of Haw. Pro. Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999). As discussed above, Plaintiffs have failed to establish any possibility of harm absent an injunction; they have not shown that there is any likelihood that SB 406

is unconstitutional. On the other hand, a preliminary injunction would limit the ability to protect public servants from being targeted and prevented from performing their elections duties. Now more than ever, elections officials need protection. Nevada has already seen extraordinary turnover in elections officials recently, and enjoining enforcement of a statute designed to protect them could put elections officials in harm's way and spur the loss of additional individuals with key institutional knowledge as the start of the 2024 election season nears. An injunction could result in a great loss to the whole state, as well as to the individual elections officials who could be subject to abuse and intimidation without the protection of SB 406.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

DATED this 10th day of August 2023.

AARON D. FORD
Attorney General

By: */s/ Kiel B. Ireland*
JESSICA E. WHELAN (Bar No. 14781)
  Senior Deputy Attorney General
KIEL B. IRELAND (Bar No. 15368)
  Deputy Solicitor General
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
T: (775) 684-1100
E: kireland@ag.nv.gov

*Attorneys for Governor Lombardo*

AARON D. FORD
Attorney General

By: */s/ Laena St-Jules*
LAENA ST-JULES (Bar No. 15156)
  Deputy Attorney General
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
T: (775) 684-1100
E: lstjules@ag.nv.gov

*Attorneys for Secretary Aguilar*