**RESP**
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd #203
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com
*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SUSAN VANNESS, an individual, <br> ALEXANDREA SLACK, an individual <br> MARTIN WALDMAN, an individual, <br> ROBERT BEADLES, an individual <br><br> Plaintiffs, <br> vs. <br><br> FRANCISCO V. AGUILAR, in his official capacity as Nevada Secretary of State, JOSEPH M. LOMBARDO, in his official capacity as Governor of the State of Nevada, DOES I-X, inclusive: ROE CORPORATIONS 11-20, inclusive. <br><br> Defendants. | Case No: 2:23-cv-01009-JCM-VCF <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS** |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS

COMES NOW, Plaintiffs SUSAN VANNESS ET AL, by and through the undersigned attorneys of record, SIGAL CHATTAH, ESQ., of CHATTAH LAW GROUP, who hereby submit the following RESPONSE TO ALL DEFENDANTS' MOTIONS TO DISMISS.

# **INTRODUCTION**

Plaintiffs bring this action facially challenging the Constitutionality of SB 406 which provides in pertinent part:

"[C]hapter 293 of NRS is hereby amended by adding thereto a new section to read as follows:

> 1.   It is unlawful for any person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence ***with the intent*** to:
> (a)  ***Interfere with the performance of the duties*** of any ***elections official*** relating to an election; or
> (b)  Retaliate against any ***elections official*** for performing duties relating to an election.
> 2.   The provisions of subsection 1 apply ***<u>regardless of whether</u>*** a person uses or threatens or ***<u>attempts to use</u>*** such force, intimidation, coercion, violence, restraint or undue influence ***<u>at a polling place or a location</u>*** other than a polling place.

[*Emphasis added*]

Plaintiffs' facial constitutional challenge of sections 1 and 2 of the Statute is on the basis that it is vague, overbroad, calls for criminal punishment despite of failing to specify a victim and violates the First Amendment to Free Speech and the Fourteenth Amendment's Due Process Clause.

# **STATEMENT OF FACTS**

On or about May 30, 2023, after passing both chambers of the Nevada Legislature, Nevada's Secretary of State Francisco V. Aguilar and Nevada's Governor Joseph M. Lombardo signed SB 406 into law. SB 406 is described as "AN ACT relating to elections; making it unlawful for a person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence with the intent to interfere with the performance of duties of an elections' official or retaliate against an elections official for the performance of such duties;"

Sections 1 and 2 of SB 406 impose impossible—and unpredictable—burdens on individuals that come into contact with "election officials" during elections at voting centers and ballot processing centers.

The consequence of said sections in SB 406 is a sweeping and unwieldy regulation that leaves the identification of what an offense is so opaque, uncertain, and all-encompassing that Plaintiffs and others similarly situated cannot determine whether and when the most basic activities undertaken will subject them to drastic criminal penalties.

The failure to precisely define the identification of a protected class or victim to be covered by said sections in SB 406 so opaque and uncertain, that Plaintiffs and others similarly situation cannot determine who an election official is and who is protected under SB 406.

Furthermore, SB 406 provides no classification for immunity or exemption for "election officials' or election observers as defined under NRS 293.274 [*and/or supervisors*] whom are paid to ensure election oversight, management and transparency among themselves. Defendants bring this Motion to Dismiss this 42 U.S.C § 1983 Complaint in its entirety inclusive of the following Claims for Relief:

First Claim for Relief: Violation of the First Amendment -Free Speech Clause (Overbreadth)

Second Claim for Relief: Violation of the Fourteenth Amendment- Substantive Due Process (Vagueness)

Third Claim for Relief: Violation of Nevada Constitution Article I Declaration of Rights.

This Court should deny Defendants Motion to Dismiss the First Amended Complaint as delineated *infra*.

## LEGAL ARGUMENT

A.   **PLAINTIFFS' ALLEGATIONS ARE SUFFICIENTLY PLED UNDER *TWOMBLY* TO PRECLUDE DEFENDANTS FROM PREVAILING ON THEIR RESPECTIVE MOTIONS TO DISMISS**

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face.*" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).* Although a complaint need not contain "detailed factual

allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id. at 555.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Twombly, 550 U.S. at 555).* In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly, 550 U.S. at 556.* However, at the pleading stage, the plausibility requirements of *Iqbal* and *Twombly* do not require "some general and formal level of evidentiary proof." *Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012).*

Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the claimed violations. *Twombly, 550 U.S. at 556.* "There is no requirement for direct evidence; the factual allegations may be circumstantial and 'need only be enough to nudge the claim 'across the line from conceivable to plausible.'" *McDonough, 799 F3d at 945 (quoting Cardigan Mountain Sch. v. New Hampshire Ins. Co., 787 F.3d 82, 88 (1st Cir. 2015) (quoting Twombly, 550 U.S. at 556)).*

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* (internal quotation marks omitted).

A lawsuit need not be meritorious to proceed past the motion-to-dismiss stage. In fact, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely. To dismiss a plaintiff's

complaint because of some initial skepticism would be to mistakenly collapse discovery, summary judgment, and trial into the pleading stages of a case. *Id. at 434.*

## B.   PLAINTIFFS HAVE STANDING TO PURSUE THESE CLAIMS AND PURSUE THEM AGAINST THE CORRECT OFFICIALS

To survive a challenge to a plaintiff's Article III standing under Federal Rule of Civil Procedure 12(b)(1), Plaintiffs bear the burden of showing that their injury-in-fact is "concrete, particularized, and actual or imminent, " rather than "conjectural or hypothetical"; that it is "fairly traceable to the challenged action"; and that it is "redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010); *Davidson v. Kimberly-Clark Corp.*, *889 F.3d 956, 967 (9th Cir. 2018).*

In conducting a standing inquiry, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in their favor without reaching the merits of their claim. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011); *Vizcarra v. Unilever U.S., Inc.*, *2020 WL 4016810, at \*5 (N.D. Cal. July 16, 2020).*

When seeking injunctive relief, the injury-in-fact requirement is met when a litigant alleges (1) cannot "rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or (2) might purchase the product again, "as she may reasonably, but incorrectly, assume the product was improved." *Davidson*, 889 F.3d at *969-70.*

In *Patel v. Facebook, Inc., 932 F.3d 1264, 1270 (9th Cir. 2019)* the Court used a two-step approach to assess whether a statutory violation causes a concrete injury sufficient to satisfy Article III.  "(1) whether the statutory provisions at issue were established to protect the plaintiff's concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests.'" *Id.* at 1270-71 (alteration omitted) (*quoting Robins v. Spokeo, Inc., 867 F.3d 1108, 1113 (9th Cir. 2017)).*

–5–

Moreover, in the context of requests for injunctive relief, the standing inquiry requires plaintiffs to "demonstrate that [they have] suffered or [are] threatened with a 'concrete and particularized' legal harm, coupled with a 'sufficient likelihood that [they] will again be wronged in a similar way.'"  (quotation omitted).  This requires the plaintiff has a "real and immediate threat of repeated injury" that is "certainly impending" to constitute an injury in fact for injunctive relief purposes.  (quotation omitted).

In a series of decisions, the Supreme Court has explained what a plaintiff seeking injunctive relief must show in order to establish the requisite injury in fact. Among other things, the plaintiff must demonstrate that face an "imminent" threat of "concrete, particularized" harm.

As the Court observed in *Clapper v. Amnesty International USA*, *133 S.Ct. 1138 (2013)*, the threatened injury must be "*certainly impending*"; it is not enough to identify a "speculative" or "*possible* future injury" or one for which there is only an "objectively reasonable likelihood" that it may occur. And at the motion-to-dismiss stage, the plaintiffs' allegations of the imminent future threat must be plausible.

In *Davidson v. Kimberly-Clark Corp.*, *889 F.3d 956 (9th Cir. 2018)*, which dealt with "flushable" wipes that allegedly were not actually flushable, the Ninth Circuit held that there are two situations in which a purchaser could "properly allege a threat of imminent or actual harm sufficient to confer standing to seek injunctive relief." First, the consumer might plausibly allege that "she would like to" buy the product again, but "will not purchase" it because she is "unable to rely on the product's advertising or labeling in the future." Second, the consumer could allege that "she might purchase the product in the future" because "she may reasonably, but incorrectly, assume the product was improved."  *See also Nacarino v. Chobani LLC* and *Johnson-Jack v. Health-Ade LLC, No20-cv-07437-EMC, 2021 WL 3487117(N.D. Call Aug. 9,2021).*

It is clear as alleged by Defendants, that they have previously been poll workers and elections observers, the passage of SB 406 has a direct impact on their ability to execute their

functions as same. Further, the implications of SB 406 may impact on whether they will risk engaging as elections and poll workers and observers in 2024, with the knowledge that such vague legislation may subject them to criminal prosecution.

The injunctive relief that Plaintiffs request is prospective and is not barred for lack of standing. *see Nacarino v. Chobani, LLC, No. 20-CV-07437-EMC, 2021 WL 3487117, at *12 (N.D. Cal. Aug. 9, 2021).*

## C. THIS ACTION IS NOT BARRED BY THE ELEVENTH AMENDMENT AS A *YOUNG* ACTION

The Eleventh Amendment bars federal courts from hearing certain "suit[s]" filed by individual citizens against a state without the consent of the state. *U.S. Const. amend. XI; see generally Hans v. Louisiana, 134 U.S. 1 (1890).* But that Amendment does not bar actions when citizens seek only injunctive or prospective relief against state officials who would have to implement a state law that is allegedly inconsistent with federal law. *See generally Ex parte Young, 209 U.S. 123 (1908).* "The *Ex parte Young* doctrine is founded on the legal fiction that acting in violation of the Constitution or federal law brings a state officer into conflict with the superior authority of the Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." C*ardenas v. Anzai, 311 F.3d 929, 935 (9th Cir. 2002).*

The allegations in the First Amended Complaint clearly delineate that this matter is brought under 42 U.S.C. §1983, brought under *Ex Parte Young*, requesting an injunction to enjoin the State from enforcement of Sections 1 and 2 of SB 406, suing the Defendants in their capacities as Governor and Secretary of State, respectively.

**1.   Defendant Joseph M. Lombardo is the Chief Executor of the Laws of the State of Nevada and is Correctly Named in His Capacity as Governor of the State**

Article 5 of the Nevada Constitution delineates powers and procedures of the Executive Department, the Governor's office. Sec: 7. of Article 5, entitled *Responsibility for execution of laws* provides that the "[G]overnor shall see that the laws are faithfully executed." *Id.*

Furthermore, Sec:  13 of Article 5 of the Nevada Constitution entitled *Pardons, reprieves and commutations of sentence; remission of fines and forfeitures* provides that "[T]he Governor shall have the power to suspend the collection of fines and forfeitures and grant reprieves for a period not exceeding sixty days dating from the time of conviction, for all offenses, except in cases of impeachment. The Governor shall communicate to the Legislature, at the beginning of every session, every case of fine or forfeiture remitted, or reprieve, pardon, or commutation granted, stating the name of the convict, the crime of which he was convicted, the Sentence, its date, and the date of the remission, commutation, pardon or reprieve.

Additionally, Article 5 Sec.  14.entitled *State Board of Pardons Commissioners; remission of fines and forfeitures; commutations and pardons; suspension of sentence; probation* provides that the governor, justices of the supreme court, and attorney general shall constitute the State Board of Pardons Commissioners.

As Chief executor of the laws of the State of Nevada and the Government official who has the power to issue pardons, reprieves, and commute sentences, for a law that criminalizes conduct that would otherwise be a civil matter, is the Governor of the State of Nevada; ergo, the proper party to be named in a *Young* Action.

2.   **Defendant Francisco Aguilar as Chief Elections Officers is Correctly Named in His Official Capacity as Nevada Secretary of State.**

NRS  293.124  entitled *Secretary of State to serve as Chief Officer of Elections;* provides that "[T]he Secretary of State shall serve as the Chief Officer of Elections for this State. As Chief Officer, the Secretary of State is responsible for the execution and enforcement of the provisions of title 24 of NRS and all other provisions of *state and federal law relating to elections* in this State. The Secretary of State shall adopt such regulations as are necessary to carry out the provisions of this section." [*Emphasis added*] *Id.*

As Chief Elections officer, Defendant Aguilar is not only in charge of the States elections but also tasked with ensuring that all election laws, including SB 406 are enforced. The combination of these two Defendants working congruently to enforce these laws is precisely what qualifies both of them to be named in their official capacity herein.

**D.    DEFENDANTS' ATTEMPT TO SHIFT THE BURDEN OF IDENTIFYING WHAT SPEECH IS PROTECTED AND WHAT IS SUBJECT TO CRIMINAL PROSECUTION IS PRECISELY WHY SB 406 FAILS**

At the outset, Defendants assume the flawed position delineated in *United States v Hansen*. *See* [ECF 13, p. 8]. The First Amendment usually prohibits the government from enacting laws that regulate protected speech, and it "prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech. *Houston Cmty. Coll. Sys. v. Wilson, 142 S. Ct. 1253, 1259 (2022) (quoting Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019)).*

If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Id.*

In evaluating standing in a pre-enforcement challenge to a speech regulation, the Ninth Circuit's inquiry focuses on (1) whether the plaintiffs have articulated a concrete plan to violate

the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute. *Alaska Right to Life Pol. Action Comm. v. Feldman, 504 F.3d 840, 849 (9th Cir. 2007) (quoting Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003).*

"The potential plaintiff must have an 'actual or well-founded fear that the law will be enforced against'" it. *Id. at 851 (quoting Getman, 328 F.3d at 1095).* Given that pre-enforcement claims necessarily occur before enforcement actions have begun, the standing factors for pre-enforcement claims are substantively similar to the ripeness factors and identical concerns motivate both analyses. *See Getman, 328 F.3d at 1093–94.*

Here, due to the fact that that Plaintiffs have previously been elections officials and elections observers, without specific definitions of prohibited conduct or a protected class, violation of sections 1 and 2 may be inevitable. Such lack of clarity as to what is prohibited conduct under SB 406, dissuades Plaintiffs and others from participating as elections officials and observers for fear of wanton prosecution. Secondly, the criminal penalties as delineated in indictment of a Class E felony is very possible and likely. Finally, elections violations have historically been prosecuted as most recently noted below[1].

Accordingly, the vagueness that is presented by SB 406 as to what conduct may subject Plaintiffs to criminal prosecution, stifles their intent to continue to be elections officials/observers in future elections. Due to the nature of the legislation and the high probability of prosecution of offenses concerning election activities, the portions that are unconstitutional must be voided as same to prevent any violation of civil liberties by Plaintiffs or individuals similarly situated as them.

---

[1]  State of Nevada v, Hartle, Donald, EJDC No. 21-CR-046327

**1. SB 406's "Sharp Limitation" Creates a Greater Burden in its Application and Prosecution Since the Legislation is Devoid of Any Description of the "Sharp Limitation".**

Defendants concede that SB 406 is sharply limited and applies when a person takes action in connection an "election official", deliberately precluding volunteer observers in the definition, since "they choose whether to attend elections related activities as observers". *See* ECF 13 p. 8-9, lns 9-11.

In addressing Plaintiffs' claim regarding supervisory authority and exemption from prosecution under SB406, Defendants further articulate that "No one is exempt. If a person takes any of the actions specified in SB 406 to interfere with or retaliate against an elections official, that person is in violation of SB 406, regardless of whether they themselves are elections officials". *See* ECF 13, pg 11 lns 23-26. Since Plaintiffs are concerned applies to the term "interfere", only this portion will be addressed.

Presumably, under Defendants' logic, a supervisor may attempt to ensure corrective measures are taken by an "inferior" elections official (ego employee), whereby the inferior elections official may classify this attempt as interference, based on his/her subjective perception, and the supervisor would not be exempt from prosecution under SB 406 despite his/her obligation and official protocol, and job requirements.

The subjective nature of what "interference" is, compounded by the fact that even a supervisor or superior election official may deemed to "interfere" based on perception is what deems this legislation vague.

Presumably, this "sharp limitation" subjects even elections officials to criminal prosecution, for interfering with each-others' conduct based on a subjective view of a colleague being intimidated. Even assuming *arguendo*, that this Court finds that these acts do not render

the legislation vague, the fact that it has potential to criminalize a completely lawful action

deems it overbroad in its scope and therefor void.

(a) **SB406 Fails to Designate a Victim of Crime or Provide Immunity or an Affirmative Defense to Paid Election Officials or Election Workers with Supervisory Authority**

NRS  217.070, Nevada's criminal statute defines "*Victim"* as a person who suffers direct

or threatened physical, financial or psychological harm as a result of the commission of a crime."

*Id.*

"The definition of the elements of a criminal offense is entrusted to the legislature,

particularly in the case of [federal crimes], which are solely creatures of statute." *Liparota v.*

*United States, 471 U. S. 419, 424 (1985). See also Dixon v. United States, 548 U. S. 1, 7 (2006).*

Here, likewise, in SB 406, the Nevada Legislature passed a statute that created a crime for a

specific type of conduct, involving specific people, and fails to exclude any affirmative defense

for a susceptible protected class such as supervisors or election officials themselves.

An affirmative defense—that is, a "justification or excuse which is a bar to the imposition

of criminal liability" on conduct that satisfies the elements of an offense. *1 W. LaFave,*

*Substantive Criminal Law §1.8(c) (3d ed. 2018).* The Supreme Court established that

governments are "foreclosed from shifting the burden of proof to the defendant only 'when an

affirmative defense . . . negate[s] an element of the crime.'" *Martin v. Ohio, 480 U. S. 228, 237*

*(1987).*

In criminal law, the distinction between the elements of an offense and an affirmative

defense is well-known and important. *Kahn v U.S. 597 U. S. ____ (2022).* The common law rule

that the burden of proving "affirmative defenses— indeed, 'all . . . circumstances of justification,

excuse or alleviation'—rest[s] on the defendant." *Patterson v. New York, 432 U. S. 197, 202*

*(1977).*

Immunity from prosecution is a legal protection granted to a person that shields them from criminal prosecution for a particular offense or set of offenses. SB 406 also fails to provide that there are no defenses to the violation of said statute.[2] There are certain prohibitions on public observers are codified in Nev. Admin. Code § 293.245 and include the following:

"…[An]ny person may observe the conduct of voting at a polling place, including, without limitation, a polling place for early voting and a vote center. Before observing the conduct of voting at a polling place pursuant to subsection 1, a person must sign an acknowledgment in the form prescribed by the Secretary of State stating that the person, during the time the person observes the conduct of voting:
**(a)** Acknowledges that he or she is prohibited from:
**(1)** Talking to voters within the polling place;
**(2)** Using a mobile telephone or computer within the polling place;
**(3)** Advocating for or against a candidate, political party or ballot question;
**(4)** Arguing for or against or challenging any decisions of county or city election personnel; and
**(5)** Interfering with the conduct of voting; and
**(b)** May be removed from the polling place by the county or city clerk for violating any provision of title 24 of NRS or any of the provisions of paragraph (a).

However, because the statute does not proscribe any defenses to conduct in the ordinary course of an election official or observer's course of conduct, an observer under 293.245, can potentially engage in "intimidation" and be subjected to prosecution of a class E felony.

There is a presumption that where the express or implied government policy "allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion*." United States v Gaubert, 499 U.S. 315, 324 (1991)*

That exception provides that the Government is not liable for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, *in the execution of a statute or regulation*, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." [*Emphasis added*] The exception covers only acts that are discretionary in

---

[2] This includes public observers entitled to observes the postelection certification audit [VVPAT- voter verified paper audit trail] who shall not interfere with the conduct of the audit. NAC 293.255.

nature, acts that "involv[e] an element of judgment or choice**,"** *Berkovitz v. United States, 486 U.S. 531, 536 (1988); see also Dalehite v. United States,* 346 U. S. 15, 346 U. S. 34 (1953); and "it is the nature of the conduct, rather than the status of the actor," that governs whether the exception applies. *Varig Airlines, supra,* at 467 U. S. 813.

Here SB 406 can potentially subject government employees, to wit; elections officials, to criminal liability for performing their supervisory duties as elections officials. Yet, there is no exception, ergo, any affirmative defense delineated, that precludes prosecution of any supervisors who may "intimidate" election officials.

### (b) SB406(5) Fails to Identify Prohibited Conduct That May Result in Prosecution of a Category E Felony

The section that should be the most concise in SB 406 is subsection 5, which should allow Plaintiffs adequate notice of what is lawful and what is unlawful behavior in an attempt to comply with the regulation. Subsection 5 lists a variety of acts which <u>*are not limited*</u> by the criminalization noted in subsections, 1 and 3. This list includes:

*(a)  The applicability of the provisions of law relating to:*

*(1)* **Observing** *the conduct of voting at a polling place pursuant to NRS 293.274 or 293C.269;[3]*
*(2)* **Observing** *the conduct of tests pursuant to NRS 293B.145 or 293C.615;  (3) Observing the handling of ballots upon the closing of the polls pursuant to NRS 293B.330 or 293C.630;*
*(4)* **Observing** *the counting of ballots at the central counting place pursuant to NRS 293B.353;*
*(5)* **Observing** *the delivery, counting, handling and processing of the ballots at a polling place,  receiving  center  and the central counting place pursuant to NRS 293B.354; and*
*(6)* **Observing** *ballot processing pursuant to NRS 293B.380.*
 *(b)  The ability of a person to give or offer to give prepackaged food  items, nonalcoholic  beverages,  coats,  handwarmers  or  other similar items to other persons  who  are  at  a  polling  place  or  any  other  location  described  in  paragraph (a),  if  done  in  accordance  with  any  other  law  and  to  the  extent  such  items  are  not distributed inside of a building which does not permit the distribution of such items in the building as indicated by a sign posted in a prominent place at the entrance of the*

---

[3] Lawful poll watching and poll watching in city elections.

*building.*
*(c)  The ability of a person to engage in written recordation of notes at a polling place or a location other than a polling place; or*
*(d)  The ability of a person to communicate with voters, election board officers or other persons in any way that is not otherwise limited or prohibited pursuant to subsection 1 or 3 or any other provision of law, including, without limitation NRS 293.740[4].*

Notably, the section does not address confrontation of an observer of an "election official" regarding discrepancies that are noticed, and vocalized. It also does not address one election official confronting another one regarding either discrepancies or deviation from election protocol, which could be construed as intimidation or intention to interfere with the election process.

Defendants assert that Plaintiffs have cited nothing to support their conclusory assertion that observers are entitled to confront elections officials. First and foremost, there is nothing in the law that precludes an observer from confronting an election official. In fact, there is nothing in any of the statutory provisions that makes it unlawful for an observer to confront an election official. Perhaps these are all issues that contribute to the vagueness of SB 406 supposedly failing to provide fair notice of what is prohibited and what isn't.

### 2.  Defendants Concede that SB 406 is a Specific Intent Crime

Defendants concede that SB 406 is a specific intent crime which requires a Defendant to have the specific intent to "either interfere with an election official's performances of duties or retaliate against an elections official for his or her performance of duties". *See* [ECF 13, p 9, lns12-13].

In proving a specific intent crime, the prosecution of an individual under SB 406 would require that not only did that individual intend to bring out a specific consequence through his or her actions, but that he/she performed those actions with a ***wrongful purpose.***

---

[4] Nevada's electioneering statute.

In taking for example a volunteer observer with a sole purpose to ensure that election integrity or election oversight is maintained with proper oversight; commentary (or action) lodged from said volunteer observer is ***solely for the purpose*** of interfering (albeit ensuring lawful behavior) with an election officials' performance.

Defendants also cite to *United States v Jae Gab Kim, 449 F.3d 933, 943 (9th Cir. 2006)* in support of their position that SB 406's intent requirements further mitigates any remote possibility of vagueness because "Plaintiffs can base their behavior on their own factual knowledge of the situation and avoid violating the law".[5] *See* CMECF 13, p 13 lns. 1-4.

It is clear that the purpose of volunteer observers and supervisory elections officials is to ensure that the proper oversight is being performed to in the course and scope of elections operations. The fact that SB 406 is a specific intent crime with the "intent to interfere" requirement as the mens rea, the purpose of oversight and ensuring election fairness and transparency is derided by making a lawful and necessary act, criminal in nature.

### 3. SB 406 Fails to Specify in the Context of *Williams* what is Prohibited Behavior.

Plaintiffs are entitled to constitutional protection for certain rights or "liberty interests" related to speech under the Due Process clause of the Fourteenth Amendment. Plaintiffs' right to due process includes protection against the ills of laws whose 'prohibitions are not clearly defined.' " *Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 62 (1st Cir. 2011) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L.Ed.2d 222* (1972) ).

Plaintiffs are entitled to a 'fair warning' of what a law prohibits to prevent 'arbitrary and discriminatory enforcement' of laws by requiring that Defendants provide explicit standards for

---

[5] *Jae Gab Kim* specifically precluded Defendant from claiming ignorance of the law as a defense to "safe harbor" discrepancies in distribution of pseudoephedrine. Specifically, §841(c)(2) mens rea requirement "reasonable cause to believe" mens rea standard "limits the likelihood that a defendant will be prosecuted for mere inadvertent conduct and is consistent with the longstanding principle presuming a mens rea requirement for criminal activity." *Id.*

those who apply them. Plaintiffs are entitled to engage in conduct without criminal prosecution of basic First Amendment freedoms under a statute that should avoid chilling the exercise of First Amendment rights.

The criminal liability the attaches to an individual that violates SB 406, lies in the following statement "It is unlawful for any person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence **with the intent to interfere** with the performance of the duties of any elections official" [*Emphasis added*].

Litigants mounting a facial challenge to a statute normally "must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno, 481 U. S. 739, 745 (1987).*

If the challenger demonstrates that the statute "prohibits a substantial amount of protected speech" relative to its "plainly legitimate sweep," then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid. *Ibid.; see  Virginia v Hicks, 539 U. S. 113, 118-119  (2003)* Because it destroys some good along with the bad, "[i]nvalidation for overbreadth is '"strong medicine"' that is not to be 'casually employed.'" *Williams, 553 U. S., at 293.*

To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep. *New York State Club Assn., Inc. v. City of New York, 487 U. S. 1, 14 (1988); Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U. S. 789, 800–801 (1984).*

### (a) The Legislation is Vague and Fails to Identify What Intimidation Is In A Subjective Context of the Law

In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine

the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed, cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law. *The Flipside, Hoffman Estates*, 455 U.S. 489,495-496, (1982).

A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process. To succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications. *Id*. at 497.

It is significant to note that in 2013, the Nevada Legislature repealed the definition of intimidation in NRS 388.129, rendering no criminal definition of *intimidation* as to what to define it in the context of SB 406. Accordingly, SB 406 is susceptible to policy determinations of what "intimidation" is and what intent to interfere with an election official is. It creates a subjective victim by resorting to a policy analysis grounded in social, economic, and political concerns. Because of the subjectivity surrounding the requirements of intimidation with intent to interfere, and no bright line of who a victim or protected class is, the discretionary nature of application of SB406 renders it vague.

The prohibition of vagueness in criminal statutes, is an "essential" of due process, required by both "ordinary notions of fair play and the settled rules of law." *See Dimaya v Lynch, 803 F. 3d 1110 (9th Cir. 2015) citing to Johnson v. United States, 576 U. S., at ___ (slip op., at 4) (quoting Connally v. General Constr. Co., 269 U. S. 385, 391 (1926)).* The void-for-vagueness doctrine guarantees that ordinary people have "fair notice" of the conduct a statute proscribes.

*Papachristou v. Jacksonville, 405 U. S. 156, 162 (1972)*. And the doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges. *Kolender v. Lawson, 461 U. S. 352, 357– 358 (1983)*.

The overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied. The overbreadth doctrine allows a litigant (even an undeserving one) to vindicate the rights of the silenced, as well as society's broader interest in hearing them speak. *U.S. v Williams, 553 U. S. 285, 292 (2008)*.

Here the only analysis the Court needs to make is whether the statute provides an individual fair notice of what conduct will be subject to criminal penalty under SB 406, with the knowledge that SB 406 is a specific intent crime. It is clear that any corrective measure taken by either a supervisory election official, or an observer is for the purpose of interfering in the acts of the election official. The failure to identity what act is *wrongful* interference and what is legitimate interference or provide for any exemption for supervisory officials or elections observers is problematic under a *Williams* analysis.

While Defendants cite to *Brennan v U.S. Dep't of Homeland Sec.*, 691 Fed. Appx 322, (9th Cir. 2017), in support of their position that there is no vagueness in SB 406's use of the term interfere, *Brennan* is not a precedent which the term "interference" in the context of 49 C.F.R. § 1540.109 is vague, simply based on the charges and the actions therein.

In *Brennan*, Transportation Security Administration (TSA) officers at Portland International Airport told Brennan that he needed to undergo additional security screening because he tested positive for explosives, Brennan, in the middle of a TSA checkpoint, stripped naked. When TSA officers told Brennan to get dressed, he refused—three times. After TSA

officers had to close down the checkpoint and surround Brennan's naked body with bins until the police arrived to remove him, the TSA fined Brennan $500 for interfering with screening personnel in the performance of their duties under 49 C.F.R. § 1540.109 ("No person may interfere with, assault, threaten, or intimidate screening personnel in the performance of their screening duties under this subchapter.").

Brennan's argument to the Ninth Circuit was that stripping naked in the middle of a TSA checkpoint was expressive conduct protected by the First Amendment. The Ninth Circuit rejected this argument, because Brennan failed to carry his burden of showing that a viewer would have understood his stripping naked to be communicative. *See Clark v. Cmty. for Creative NonViolence, 468 U.S. 288, 293 n.5 (1984); Hilton v. Hallmark Cards, 599 F.3d 894, 904 (9th Cir. 2010).* Therefore, his conduct was not protected by the First Amendment.

Furthermore, when rejecting Brennan's argument that 49 C.F.R. § 1540.109 was vague as to the term "interference" the Ninth Circuit specified that "[I]n making this judgment, we provide "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498–99 (1982).*

The standards for evaluating vagueness were enunciated in *Grayned v. City of Rockford,* 408 U. S. 104, 408 U. S. 109 (1972) "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic

policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications."

As it is drafted, SB 406 does not provide fair notice of what is prohibited behavior, what precisely is *intimidation* and what is *interference* with an election official. Furthermore, even under *Williams*, SB 406 is ***so standardless*** that it authorizes and encourages discriminatory enforcement. *Id* at 344. Most important though is the fact that prosecution under SB 406 does not result in a civil fine (as in *Brennan*), but carries the weight of a felony punishable by 1 to 4 years in prison.

**E.   PLAINTIFFS ARE NOT BARRED FROM BRINGING A 1983 ACTION UNDER THE NEVADA CONSTITUTION IN SUPPORT OF THEIR THIRD CLAIM FOR RELIEF**

42 U.S.C. § 1983 is the "most important, and ubiquitous, civil rights statute. Section 1983 provides a cause of action for so-called constitutional-tort suits against every "person" who "subjects, or  causes to be subjected" someone else "to the deprivation of [federal] rights, privileges, or immunities" while acting "under color of" state law.  The Court has long held that the key word "person" does not include state governments. Instead, the Court has concluded, it includes only state and local officials and local governments.

Here, Plaintiffs claims under the Article 1 §8 of the Nevada Constitution as a §1983 action are wholly appropriate and supported by the same vagueness and overbreadth issues that Plaintiffs facially challenge SB 406 with. Furthermore, Plaintiffs' arguments in support of substantive due process violation under the 14th Amendment, in Article 1 §8 carry the same facial challenges as noted in their Second Claim for Relief, specifically noting that a law that is vague as to prohibited conduct violates Article 1 § 8 of the Nevada Constitution.

A facial challenge of SB 406 through a §1983 action under Article 1 §8 is authorized and survives jurisdictional challenges.

**F.     DEFENDANTS MUST DEMONSTRATE THAT SB406 WAS PASSED TO FURTHER A COMPELLING GOVERNMENT INTEREST AND MUST BE NARROWLY TAILORED TO ACHIEVE THAT INTEREST**

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." *U.S. CONST. amend. XIV, § 1*. The Supreme Court has interpreted this guarantee "to include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores, 507 U.S. 292, 301–02 (1993)*.

To survive strict scrutiny, the government must show that "the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 340, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010)*.

To satisfy strict scrutiny, Defendants must show that their infringement of the Plaintiffs' rights is "narrowly tailored" to advance a "compelling" state interest. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993)*.

When plaintiffs challenge a content-based speech restriction, the Government has the burden to prove that the proposed alternatives will not be as effective as the challenged statute. *Reno* v. *American Civil Liberties Union*, 521 U. S. 844, (1997). The purpose of the test is to ensure that speech is restricted no further than is necessary to accomplish Congress' goal. *Id.*

Here Defendants fail to provide any standard for what would qualify as legitimate oral dissent to an election official's action which may or may not be viewed as intimidating to said election worker or with the intent to interfere with elections operations. Notwithstanding same, the identical analysis can be provided for an election observers and poll workers alike.

**CONCLUSION**

As Defendants note in their Motion to Dismiss, "[T]he political climate surrounding elections since 2020 has been highly charged and divisive". *See* ECF 13 p2 lns 5-6. This statement could never be more profound or true, regardless of political affiliation; which is why legislation like SB 406, must withstand the highest level of scrutiny and must be narrowly tailored to ensure that not one individual is wrongfully prosecuted in the State of Nevada for violation thereof.

Therefore, the only analysis the Court needs to make is whether SB 406 provides an individual fair notice of what conduct will be subject to criminal penalty and what conduct is lawful. Knowing that there is no law in the State of Nevada, precluding Plaintiffs (or poll watchers) from confronting elections officials with wrongful conduct, or making it illegal to do so, the context of the words "intimidation" and "interference" must be reviewed with higher scrutiny.

The instant criminalization of lawful conduct with penalty of a Class E felony punishable by 1 to 4 years imprisonment, should be sufficient to give pause as to the application of the law and individuals potentially prosecuted under it. Notwithstanding same, the preclusive effect of SB 406 on Plaintiffs and others from participating as poll observers and elections officials as uncertainty to what conduct they are allowed or not allowed to engage in stifles public participation with completely lawful and necessary election oversight.

It is clear that any corrective measure taken by either a supervisory election official, or an observer is for the purpose of interfering in the (wrongful) acts of the election official. The failure to identity what act is *wrongful* interference and what is legitimate interference or provide for any exemption for supervisory officials or elections observers is problematic.

Accordingly, Plaintiffs request that Defendants' Motion to Dismiss be denied and all proceedings continue in the ordinary course and in the interests of justice.

DATED this  10th  day of August, 2023.

**CHATTAH LAW GROUP**

*/s/ Sigal Chattah*
SIGAL CHATTAH, ESQ.
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Tel.:(702) 360-6200
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of August, 2023, I personally served a true copy of the foregoing Plaintiffs' RESPONSE TO ALL DEFENDANTS' MOTION TO DISMISS by the Courts electronic service system to all registered parties:

*/s/ Sigal Chattah*

An Agent of Chattah Law Group