SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd #203
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SUSAN VANNESS, an individual, ) <br> ALEXANDREA SLACK, an individual ) <br> MARTIN WALDMAN, an individual, ) <br> ROBERT BEADLES, an individual ) <br> ) <br> Plaintiffs, ) <br> vs. ) <br> ) <br> FRANCISCO V. AGUILAR, in his official ) <br> capacity as Nevada Secretary of State, JOSEPH M. ) <br> ) <br> LOMBARDO, in his official capacity as Governor ) <br> of the State of Nevada, DOES ) <br> I-X, inclusive: ROE ) <br> CORPORATIONS 11-20, inclusive. ) <br> ) <br> ) <br> Defendants. ) <br> ) | Case No: 2:23-cv-01009-JCM-VCF <br><br> **PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION**

COME NOW, Plaintiffs, SUSAN VANNESS *Et Al*, by and through the undersigned attorney of record, SIGAL CHATTAH, ESQ., of the CHATTAH LAW GROUP, and pursuant to Fed. R. Civ. Pro. 65, hereby submit the foregoing Reply to Defendants' Response to Motion for Preliminary Injunction.

Plaintiffs request this Court enter a preliminary injunction against Defendants, to enjoin them from wanton and arbitrary enforcement of sections 1 and 2 of SB 406, known as the Election Worker Protection Act, and a declaration rendering said sections unconstitutional as delineated *infra*.

Plaintiffs' Reply is based upon the pleadings and papers on file herein, the following points and authorities and any oral arguments made at the time of hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants reiterate their claims raised in their Motion to Dismiss [ECF 13] as their substantial bases for denying Plaintiffs' Motion for Preliminary Injunction, making the same substantive arguments herein.

A.   **PLAINTIFFS HAVE STANDING TO PURSUE THESE CLAIMS**

To survive a challenge to a plaintiff's Article III standing under Federal Rule of Civil Procedure 12(b)(1), Plaintiffs bear the burden of showing that their injury-in-fact is "concrete, particularized, and actual or imminent, " rather than "conjectural or hypothetical"; that it is "fairly traceable to the challenged action"; and that it is "redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).

In conducting a standing inquiry, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in their favor without reaching the merits of their claim. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011); *Vizcarra v. Unilever U.S., Inc.*, 2020 WL 4016810, at *5 (N.D. Cal. July 16, 2020).

When seeking injunctive relief, the injury-in-fact requirement is met when a litigant alleges (1) cannot "rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or (2) might purchase the product again, "as

she may reasonably, but incorrectly, assume the product was improved." *Davidson*, 889 F.3d at 969-70.

In a series of decisions, the Supreme Court has explained what a plaintiff seeking injunctive relief must show in order to establish the requisite injury in fact. Among other things, the plaintiff must demonstrate that face an "imminent" threat of "concrete, particularized" harm.  As the Court observed in <u>Clapper v. Amnesty International USA</u>, 133 S.Ct. 1138 (2013), the threatened injury must be "*certainly impending*"; it is not enough to identify a "speculative" or "*possible* future injury" or one for which there is only an "objectively reasonable likelihood" that it may occur. And at the motion-to-dismiss stage, the plaintiffs' allegations of the imminent future threat must be plausible.

In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), which dealt with "flushable" wipes that allegedly were not actually flushable, the Ninth Circuit held that there are two situations in which a purchaser could "properly allege a threat of imminent or actual harm sufficient to confer standing to seek injunctive relief." First, the consumer might plausibly allege that "she would like to" buy the product again, but "will not purchase" it because she is "unable to rely on the product's advertising or labeling in the future." Second, the consumer could allege that "she might purchase the product in the future" because "she may reasonably, but incorrectly, assume the product was improved."  *See also Nacarino v. Chobani LLC* and *Johnson-Jack v. Health-Ade LLC, No20-cv-07437-EMC, 2021 WL 3487117(N.D. Call Aug. 9,2021)*.

It is clear as alleged by Defendants, that they have previously been poll workers and elections observers, the passage of SB 406 has a direct impact on their ability to execute their functions as same in any future election for fear of prosecution. Further, the implications of SB 406 may impact on whether they will risk engaging as elections and poll workers and

observers in 2024, with the knowledge that such vague legislation may subject them to criminal prosecution.

The injunctive relief that Plaintiffs request is prospective and is not barred for lack of standing. *see Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2021 WL 3487117, at *12 (N.D. Cal. Aug. 9, 2021).* As former elections workers and observers, and so they can continue to do so in upcoming elections, Plaintiffs seek to enjoin enforcement of SB 406 sections 1 and 2, which criminalized lawful conduct.

In evaluating standing in a pre-enforcement challenge to a speech regulation, the Ninth Circuit's inquiry focuses on (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute. *Alaska Right to Life Pol. Action Comm. v. Feldman, 504 F.3d 840, 849 (9th Cir. 2007) (quoting Cal. Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003).*

"The potential plaintiff must have an 'actual or well-founded fear that the law will be enforced against'" it. *Id. at 851 (quoting Getman, 328 F.3d at 1095).* Given that pre-enforcement claims necessarily occur before enforcement actions have begun, the standing factors for pre-enforcement claims are substantively similar to the ripeness factors and identical concerns motivate both analyses. *See Getman, 328 F.3d at 1093–94.*

Here, due to the fact that that Plaintiffs have previously been elections officials and elections observers, without specific definitions of prohibited conduct or a protected class, violation of sections 1 and 2 may be inevitable. Such lack of clarity as to what is prohibited conduct under SB 406, dissuades Plaintiffs and others from participating as elections officials and observers for fear of wanton prosecution. Secondly, the criminal penalties as delineated in

indictment of a Class E felony is very possible and likely. Finally, elections violations have historically been prosecuted as most recently noted below[1].

Defendants are correct in relying on *All for the Wild Rockies v Petrick, 68 F.4th 475, (9th Cir. 2023)* in discussion of the less-stringent "serious questions" standard instead of the typical "likelihood of success of the merits" inquiry. *Hanna Flats II, 550 F. Supp. 3d at 898.*

In fact, the *Petrick* Court provided that "[I]n the context of injunctive relief, "serious questions" refer to "questions that 'cannot be resolved one way or the other at the hearing on the injunction' because they require 'more deliberative investigation.'" *Id.* citing to *Manrique v. Kolc*, --- F.4th ---, No. 22-15705, 2023 WL 3036993, at *3 (9th Cir. 2023) (quoting *Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc)).

Though this standard is less demanding, it does not erase the Supreme Court's admonition that an injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter, 555 U.S. at 22.* Accordingly, a "serious question" does not exist where the plaintiff's claim is "merely plausible" or just because there are legal questions not directly answered by past precedent. *Where Do We Go Berkeley v. Cal. Dep't of Transp., 32 F.4th 852, 863 (9th Cir. 2022)* (instructing that "the district court must analyze the merits" and cannot "forgo legal analysis just because it has not identified precedent that places the question beyond debate").

Accordingly, the vagueness that is presented by SB 406 as to what conduct may subject Plaintiffs to criminal prosecution, stifles their intent to continue to be elections officials/observers in future elections. Due to the nature of the legislation and the high

---

[1] *State of Nevada v, Hartle, Donald*, EJDC No. 21-CR-046327

probability of prosecution of offenses concerning election activities, the portions that are unconstitutional must be voided as same to prevent any violation of civil liberties by Plaintiffs or individuals similarly situated as them.

### B. PLAINTIFFS SUFFICIENTLY PLEAD SUBSTANTIVE DUE PROCESS VIOLATIONS

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Supreme Court has interpreted this guarantee "to include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02 (1993).

Defendants' allegation that Plaintiffs did not adequately plead substantive due process violations is fatally flawed since Plaintiffs First Amended Complaint delineates the following: Plaintiffs are entitled to constitutional protection for certain rights or "liberty interests" related to speech under the Due Process clause of the Fourteenth Amendment. Plaintiffs' right to due process includes protection against the ills of laws whose 'prohibitions are not clearly defined.' " *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 62 (1st Cir. 2011) *(quoting Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)).

Plaintiffs are entitled to a 'fair warning' of what a law prohibits to prevent 'arbitrary and discriminatory enforcement' of laws by requiring that Defendants provide explicit standards for those who apply them. *See* [ECF 9, p.14-15].

A plaintiff claiming a violation of substantive due process is asking a court to override the judgment of the political branches and invalidate an ordinance, statute, or an administrative determination because the action is somehow illegitimate. See, *e.g., Moore v.*

*City of East Cleveland, Ohio,* 431 U.S. 494, 502, 97 S. Ct. 1932, 52 L. Ed. 2d 531 (1977) (substantive due process "has at times been a treacherous field").

**C.    SB406(5) FAILS TO IDENTIFY PROHIBITED CONDUCT THAT MAY RESULT IN CRIMINAL PROSECUTION.**

The section that should be the most concise in SB 406 is subsection 5, which should allow Plaintiffs adequate notice of what is lawful and what is unlawful behavior in an attempt to comply with the regulation. Subsection 5 lists a variety of acts which <u>*are not limited*</u> by the criminalization noted in subsections, 1 and 3. This list includes:

*(a)  The applicability of the provisions of law relating to:*

*(1)  **Observing** the conduct of voting at a polling place pursuant to NRS 293.274 or 293C.269;[2]*
*(2)  **Observing** the conduct of tests pursuant to NRS 293B.145 or 293C.615;   (3) Observing the handling of ballots upon the closing of*
*the polls pursuant to NRS 293B.330 or 293C.630;*
*(4)  **Observing** the counting of ballots at the central counting place pursuant to NRS 293B.353;*
*(5)  **Observing** the delivery, counting, handling and processing of the ballots at a polling place, receiving center and the central counting place pursuant to NRS 293B.354; and*
*(6)  **Observing** ballot processing pursuant to NRS 293B.380.*
 *(b)  The ability of a person to give or offer to give prepackaged food items, nonalcoholic beverages, coats, handwarmers or other similar items to other persons who are at a polling place or any other location described in paragraph (a), if done in accordance with any other law and to the extent such items are not distributed inside of a building which does not permit the distribution of such items in the building as indicated by a sign posted in a prominent place at the entrance of the building.*
 *(c)  The ability of a person to engage in written recordation of notes at a polling place or a location other than a polling place; or*
*(d)  The ability of a person to communicate with voters, election board officers or other persons in any way that is not otherwise limited or prohibited pursuant to subsection 1 or 3 or any other provision of law, including, without limitation NRS 293.740[3].*

---

[2] Lawful poll watching and poll watching in city elections.
[3] Nevada's electioneering statute.

Notably, the section does not address confrontation of an observer of an "election official" regarding discrepancies that are noticed, and vocalized. It also does not address one election official confronting another one regarding either discrepancies or deviation from election protocol, which could be construed as intimidation or intention to interfere with the election process.

Defendants, spill much ink asserting that Plaintiffs have cited nothing to support their conclusory assertion that observers are entitled to confront elections officials. First and foremost, there is nothing in any of the statutory provisions that makes it unlawful for an observer to confront an election official. In fact, Defendants admit that "[E]lections officials certainly ***do engage with volunteer observers in good faith*** to ensure processes are understood ***and any improper activities are corrected***" [ECF 15 pg. 4]. Defendants also assert that Plaintiffs fail to cite any right to engage with elections officials or demand corrective action of election officials.

While, Defendants concede that there are obviously exchanges between elections workers/ observers, and have been in the past, there is no statutory provision that prohibits such exchanges. Additionally, taking Defendants' position in regards to Observers' rights under NRS Chapter 293, it seems that, that such interactions are in fact, cultivated and facilitated if not promoted by both statute and elections officials.

The issue than becomes problematic at discerning at what point does that interaction become construed as intimidating with an intent to interfere. The subjectivity of that interaction is 1) problematic and 2) subject to heightened consequences of being charged with a class E felony.

If Chapter 293, does not delineate the prohibited conduct or preclusions on basic interaction between elections observers and elections officials, how can SB 406 create a crime

punishable by up to four years in jail based on a subjective and unprecedented standard. These are the issues that contribute to the overbreadth and vagueness of SB 406 by failing to provide fair notice of what is and may be subjectively construed as prohibited conduct

### 1. Defendants Conceded that SB 406 delineates a Specific Intent Crime

Defendants concede that SB 406 is a specific intent crime which requires a Defendant to have the specific intent to "either interfere with an election official's performances of duties or retaliate against an elections' official for his or her performance of duties". *See* [ECF 13, p 9, lns12-13].

In proving a specific intent crime, the prosecution of an individual under SB 406 would require that not only did that individual intend to bring out a specific consequence through his or her actions, but that he/she performed those actions with a ***wrongful purpose.***

Defendants also cite to *United States v Jae Gab Kim, 449 F.3d 933, 943 (9th Cir. 2006)* in support of their position that SB 406's intent requirements further mitigates any remote possibility of vagueness because "Plaintiffs can base their behavior on their own factual knowledge of the situation and avoid violating the law".[4] *See* CMECF 13, p 13 lns. 1-4.

It is clear that the purpose of volunteer observers and supervisory elections officials is to ensure that the proper oversight is being performed to in the course and scope of elections operations. The fact that SB 406 is a specific intent crime with the "intent to interfere"

---

[4] *Jae Gab Kim* specifically precluded Defendant from claiming ignorance of the law as a defense to "safe harbor" discrepancies in distribution of pseudoephedrine. Specifically, §841(c)(2) mens rea requirement "reasonable cause to believe" mens rea standard "limits the likelihood that a defendant will be prosecuted for mere inadvertent conduct and is consistent with the longstanding principle presuming a mens rea requirement for criminal activity." *Id.*

9

requirement as the mens rea, the purpose of oversight and ensuring election fairness and transparency is derided by making a lawful and necessary act, criminal in nature.

### D. PLAINTIFFS ENJOY A LIKELIHOOD OF SUCCESS ON THE MERITS

In *Global Horizons v US DOL*, 510 F.3d 1054 (9th Cir. 2007) the Ninth Circuit opined "[We have described the relationship between success on the merits and irreparable harm as "a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Citing to Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 874 (9th Cir. 2000). To reach this sliding scale analysis, however, a moving party must, at an "irreducible minimum," demonstrate some chance of success on the merits. Arcamuzi v. Cont'l Air Lines, Inc.,* 819 F.2d 935, 937 (9th Cir. 1987).

Here it is abundantly clear that SB 406 is not only vague and overbroad, but it has the potential to subject innocent actors to criminal prosecution with a hefty criminal conviction. The conviction or even prosecution of an innocent election observer for conduct that is subjectively found to be intimidating or interfering with an election is the type of irreparable harm that no individual should be subjected to with all well-meaning intentions of simply engaging in election oversight.

Furthermore, there is never a public interest in prosecution of innocent election observers, who simply engage in their civic right to ensure election integrity, but most importantly are authorized to do so under Chapter 293 of the NRS.

**CONCLUSION**

Accordingly, Plaintiffs respectfully demand an injunction be issued as follows:

1. Permanently enjoin Defendants and all persons and entities in active concert or participation with Defendants from prosecution of any offense under SB 406.

2. Declare that sections 1 and 2 of SB 406 are unconstitutional as they are vague, overbroad and criminalize lawful behavior, whereby there is no compelling government interest in its passage nor is it narrowly tailored to meet those interests.

DATED this _17th_ day of August 2023.

**CHATTAH LAW GROUP**

*/s/ Sigal Chattah*
SIGAL CHATTAH, ESQ.
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Tel.:(702) 360-6200
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of August, 2023, I personally served a true copy of the foregoing Plaintiffs' REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION by the Courts electronic service system to all registered parties:

*/s/ Sigal Chattah*

An Agent of Chattah Law Group