AARON D. FORD
  Attorney General
JESSICA E. WHELAN (Bar No. 14781)
  Senior Deputy Attorney General
KIEL B. IRELAND (Bar No. 15368)
  Deputy Solicitor General
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
T: (775) 684-1100
E:  kireland@ag.nv.gov

*Attorneys for Governor Lombardo*

AARON D. FORD
  Attorney General
LAENA ST-JULES (Bar No. 15156)
  Deputy Attorney General
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
T: (775) 684-1100
E:  lstjules@ag.nv.gov

*Attorneys for Secretary Aguilar*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SUSAN VANNESS, an individual, ALEXANDREA SLACK, an individual, MARTIN WALDMAN, an individual, ROBERT BEADLES, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>FRANCISCO V. AGUILAR, in his official capacity as Nevada Secretary of State, JOSEPH M. LOMBARDO, in his official capacity as Governor of the State of Nevada, DOES I-X, inclusive; ROE CORPORATIONS 11-20, inclusive,<br><br>Defendants. | Case No. 2:23-cv-01009-CDS-VCF<br><br>**DEFENDANTS GOVERNOR LOMBARDO AND SECRETARY AGUILAR'S REPLY IN SUPPORT OF MOTION TO DISMISS** |

Defendants Joseph M. Lombardo, in his official capacity as Governor of the State of Nevada ("Governor Lombardo"), and Francisco V. Aguilar, in his official capacity as Nevada Secretary of State ("Secretary Aguilar"), reply to Plaintiffs Susan Vanness, Alexandrea Slack, Martin Waldman and Robert Beadles's response to motion to dismiss, ECF No. 16.

## I.  Introduction

Plaintiffs concede that, to show that they have standing, they must allege a "certainly impending" threatened injury and that "it is not enough to identify a speculative or *possible* future injury." ECF No. 16, at 6 (cleaned up). Yet they ignore the fact that the operative complaint contains zero allegations showing any certainly impending threatened injury. There is no allegation that Plaintiffs intend to be ballot observers in a future election. There is no allegation that they intend to confront elections officials. There is no allegation that Defendants (or anyone else) has put them on notice that SB 406 will be enforced. There is no allegation that they are modifying their behavior because of SB 406. SB 406 is a crucial statute protecting our electoral system; it cannot be invalidated based on speculation divorced from anything in the complaint.

Even if Plaintiffs somehow had standing, their claims would fail on the merits. They fixate on the term "interfere." There is nothing ambiguous about "interfere," and Plaintiffs fail to grapple with the fact that an intent to interfere violates SB 406 *only if* the interferer "use[s] or threaten[s] or attempt[s] to use any force, intimidation, coercion, violence, restraint or undue influence." That makes SB 406 a clear, narrowly circumscribed law that criminalizes only conduct and expression outside the First Amendment's scope. This Court should dismiss the operative complaint.

## II.  Relevant Background

The Nevada Legislature enacted SB 406 to "provide additional protection for election workers" and reverse the "unbelievable turnover of election officials in elected and administrative positions over the last four years." *Minutes of the Senate Committee on Legislative Operations and Elections*, 82d Sess., 2-3 (Nev. Apr. 11, 2023) (statement of Gabriel Di Chiara), https://tinyurl.com/SB406Mins. Section 1 provides:

> 1.  It is unlawful for any person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence with the intent to:
>
> (a)  Interfere with the performance of the duties of any elections official relating to an election; or

(b)  Retaliate against any elections official for performing duties relating to an election.

SB 406 § 1(1).

The operative first amended complaint asserts three claims: overbreadth, vagueness and violation of article 1 of the Nevada Constitution. ECF No. 9, at 12, 14, 16. Plaintiffs' only allegation about their own situation (other than their residency and citizenship) is that they "were previously poll observers, ballot runners, or ballot counting rooms observers and are lawful election observers in their respective counties and have standing as lawful public election observers classified under NRS 293.274."[1]  ECF No. 9, at 10. Plaintiffs also allege without factual support that "SB 406 subjects [them] to many different injuries, each of which are concrete and particularized actual or imminent, fairly traceable to the challenged action of the defendant, and the injury Plaintiff complains of will be redressed by a favorable decision." *Id.*

### III. Argument

#### A. Plaintiffs' Conclusory Allegations Cannot Support Standing

The parties agree that it's Plaintiffs' burden to show standing. ECF No. 16, at 5. The parties agree that because Plaintiffs are seeking prospective relief, they must adequately plead a threatened injury that is "certainly impending." *Id.* at 6 (emphasis omitted) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). And the parties

---

[1] NRS 293.274 provides:
1.  The county clerk shall allow members of the general public to observe the conduct of voting at a polling place.

2.  A member of the general public shall not photograph the conduct of voting at a polling place or record the conduct of voting on audiotape or any other means of sound or video reproduction.

3.  For the purposes of this section, a member of the general public does not include any person who:

    (a)  Gathers information for communication to the public;

    (b)  Is employed or engaged by or has contracted with a newspaper, periodical, press association, or radio or television station; and

    (c)  Is acting solely within his or her professional capacity.

agree that Plaintiffs cannot carry that burden through speculation and conclusory allegations. ECF No. 16, at 4, 6; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "mere conclusory statements do not suffice" to survive a motion to dismiss (comma omitted)).

Those undisputed legal principles doom Plaintiffs' claims. The operative complaint doesn't allege any future injury at all, let alone one that is certainly impending. It alleges some past conduct without any indication that Plaintiffs plan to serve in election roles again. *See* ECF No. 9, at 10. Even if past behavior could somehow give standing for prospective relief – it can't, *see City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983) – Plaintiffs fail to allege that they behaved in a way that could fall within SB 406's scope. *See* ECF No. 9, at 10. And even if we go far beyond the actual allegations and speculate that Plaintiffs intend to take some action that could conceivably fall within SB 406's scope, there is no indication in the operative complaint Defendants would enforce SB 406 for that hypothetical conduct. *See id.*; *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (explaining that a plaintiff must show "a credible threat of prosecution" under the challenged law).

Assertions in Plaintiffs' response (ECF No. 16, at 6-7) that have no basis in the complaint cannot save their claims. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("[P]arties cannot amend their complaints through briefing."). Even if we were to credit the unsupported assertions in their brief, a claim that "the implications of SB 406 *may* impact on whether they will risk engaging as elections and poll workers and observers in 2024" (ECF No. 16, at 17 (emphasis added)) would not carry their burden. It still fails to show that SB 406 will alter their decisions in the future, fails to show that they plan to take some action that could put them within SB 406's scope and fails to show that the threat of Defendants enforcing SB 406 against them is certainly impending. *See Clapper*, 568 U.S. at 409.

/ / /

/ / /

1  Much of the rest of Plaintiffs' standing arguments are based on products liability
2 cases. ECF No. 16, at 5-6. Plaintiffs do not explain how those cases have any bearing here.
3 *See id.*

### B. The Eleventh Amendment Bars Plaintiffs' Claims

Plaintiffs contend that they can overcome Defendants' Eleventh Amendment immunity using the *Ex parte Young* exception. ECF No. 16, at 7-9. But as Defendants have explained, that exception applies only if the named state officer has "some connection with the enforcement of the act." ECF No. 13, at 7 (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)).

Plaintiffs' attempts to connect Defendants to SB 406's enforcement (ECF No. 16, at 8-9) fail. Their argument that Governor Lombardo is connected by his duty to "see that the laws are faithfully executed," ECF No. 16, at 8, is exactly the argument that the Ninth Circuit rejected in *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013). And the pardon powers they cite (ECF No. 16, at 8) are equally general and are related to backend clemency, not frontend enforcement.

As for Secretary Aguilar, Plaintiffs point only to a Nevada statute that provides that he is "responsible for the execution and enforcement of the provisions of title 24 of NRS and all other provisions of state and federal law relating to elections in this State." ECF No. 16, at 9 (quoting NRS 293.124). That is again a "general duty to enforce [the] law" and not the required "fairly direct" connection to the law at issue. *Eleveurs*, 729 F.3d at 943. The operative complaint lacks any allegation that Secretary Aguilar – as opposed to a law-enforcement agency – would actually enforce a criminal law like SB 406. There is no allegation that Plaintiffs have received a warning letter from Secretary Aguilar or that Secretary Aguilar has enforced SB 406 (or any other criminal law) against someone else.

Plaintiffs' Nevada Constitution claim is also barred by the Eleventh Amendment for an independent reason: "*Ex parte Young* allows prospective relief against state officers only to vindicate rights under federal law," not state law. *Spoklie v. Montana*, 411 F.3d 1051,

///

1060 (9th Cir. 2005). Contrary to Plaintiffs' argument (ECF No. 16, at 21-22), 42 U.S.C. § 1983 doesn't save their claim. Section 1983 enforces only federal rights and cannot be the basis for a claim based on a state constitution. *Iratcabal v. Nevada*, No. 3:12-cv-481, 2013 WL 5408864, at *4 (D. Nev. Sept. 25, 2013); *see Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir. 1981).

### C. Plaintiffs' Claims Also Fail on the Merits

#### 1. SB 406 Is Not Overbroad

To sustain an overbreadth claim, it is the plaintiff's burden to show that the challenged law "prohibits a substantial amount of protected speech" relative to its "plainly legitimate sweep." *United States v. Hansen*, 143 S. Ct. 1932, 1939 (2023). While Plaintiffs complain that "Defendants assume the flawed position delineated in [*Hansen*]," ECF No. 16, at 9, *Hansen* is binding Supreme Court precedent, whether Defendants agree with it or not.

Plaintiffs have not met their burden. "Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message." *United States v. Grider*, 617 F. Supp. 3d 42, 52 (D.D.C. 2022).

Plaintiffs' primary response is that SB 406 is overbroad because it uses the term "interfere." ECF No. 16, at 11. But Plaintiffs ignore half the statute – it makes it unlawful "for any person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence with the intent" to "[i]nterfere" (in addition to other proscribed intents). SB 406 § 1(1). An intent to interfere alone is not prohibited.

Plaintiffs' hypotheticals (ECF No. 16, at 11, 15) are divorced from SB 406's text. Even assuming a jury would consider a supervisor's "attempt to ensure corrective measures" (*id.* at 11) to be interference, it would not violate the statute unless the supervisor used or threatened or attempted to use force, intimidation, coercion, violence, restraint or undue influence. And if, for example, the supervisor threatened violence in his attempt to ensure corrective measures, then his words were not protected speech. *Counterman v. Colorado*, 143 S. Ct. 2106, 2111 (2023). Same with "one election official

confronting another one regarding either discrepancies or deviation from election protocol" (ECF No. 16, at 15) – it is not unlawful under SB 406 unless it's accompanied by threats or other related bad acts, in which case it's unprotected.

Plaintiffs' other objections don't make the statute overbroad or are based on misunderstandings about SB 406. They cite no authority for the proposition (ECF No. 16, at 12) that a failure to expressly define a "victim" makes a criminal statute unconstitutional. In any event, the victim is clear from the statutory text – the elections official (as that term is statutorily defined) subject to the threatening conduct. The intent to interfere is not based on the victim's "subjective perception" (contra ECF No. 16, at 11); it's based on the criminal defendant's state of mind, as shown by his conduct. *United States v. Williams*, 553 U.S. 285, 306-07 (2008). Plaintiffs are equally wrong (ECF No. 15, at 12) that SB 406 shifts the burden of proof to the criminal defendant. Specific intent is an element of the crime that the prosecution must prove beyond a reasonable doubt. *United States v. Gilbert*, 813 F.2d 1523, 1530 (9th Cir. 1987).

Lastly, SB 406 does not conflict with any other right granted by Nevada law (not that that would be a basis for invalidating it under the First Amendment anyway). Plaintiffs point out that NAC 293.245 permits the observation of voting, ECF No. 16, at 13, but they ignore that it also requires the observer to affirm that he will not "interfer[e] with the conduct of voting," so it is consistent with SB 406. And no provision of Nevada law entitles an elections official to use or threaten force in a dispute with a fellow elections official, which is all that SB 406 prohibits. Plaintiffs' citation of *Berkovitz v. United States*, 486 U.S. 531 (1988), and related cases (ECF No. 16, at 14) is off base: those cases involve the Federal Tort Claims Act, not state criminal statutes.

### 2. SB 406 Is Not Vague

Plaintiffs challenge two terms in SB 406 as purportedly vague: "intimidation" and "interfere." ECF No. 16, at 17-18. The Ninth Circuit has held that neither term is vague. *Gilbert*, 813 F.2d at 1530 (concluding that "intimidate" in criminal statute was not unconstitutionally vague); *United States v. Gwyther*, 431 F.2d 1142, 1144 n.2 (9th Cir.

1970) ("'[I]nterfere' has such a clear, specific and well-known meaning as not to require more than use of the word[ itself] in a criminal statute."). And it has held that "legislation which proscribes the use of force or the threat of force," like SB 406, "should not be found to be void for vagueness." *Gilbert*, 813 F.2d at 1530. Those holdings are binding here.[2]

Even if there weren't binding caselaw foreclosing Plaintiffs' argument, the terms' ordinary meanings would save them from any vagueness challenge. *United States v. Reliant Energy Servs., Inc.*, 420 F. Supp. 2d 1043, 1053 (N.D. Cal. 2006). Plaintiffs complain that "intimidation" and "interference" lack statutory definitions (ECF No. 16, at 18), but courts regularly interpret undefined terms by looking to dictionary definitions to find their ordinary meaning, *see Reliant Energy*, 420 F. Supp. 2d at 1053. "Intimidation" and "interfere" have straightforward dictionary definitions that are understandable by Nevadans of ordinary intelligence. *See, e.g., Intimidation*, dictionary.com, https://tinyurl.com/y9d74uxb (last visited Aug. 14, 2023) ("[T]he act or process of attempting to force or deter an action by inducing fear."); *Interference, Black's Law Dictionary* (11th ed. 2019) ("The act or process of obstructing normal operations or intervening or meddling in the affairs of others.").

Plaintiffs concede that SB 406 creates a specific-intent offense. ECF No. 16, at 15-16. That provides yet more support for the statute's constitutionality. *See United States v. Makowski*, 120 F.3d 1078, 1081 (9th Cir. 1997).

Plaintiffs also appear to argue that real-life enforcement of SB 406, if it ever occurs, may present difficult fact questions. ECF No. 16, at 19. But the "mere fact that close cases can be envisioned" does not make a statute vague. *Williams*, 553 U.S. at 305-06. Criminal defendants are protected from prosecutions based on marginal facts "by the requirement of proof beyond a reasonable doubt," not vagueness doctrine. *Id.* at 306.

/ / /

---

[2] It is true that *Brennan v. United States Department of Homeland Security*, 691 F. App'x 332 (9th Cir. 2017) (unpublished), involved a civil fine, not a criminal statute. ECF No. 16, at 19-21. But it is also irrelevant: *Gilbert* and *Gwyther* held that "intimidate" and "interfere" are not vague and they both arose from criminal prosecutions. *Gilbert*, 813 F.2d at 1525; *Gwyther*, 431 F.2d at 1143.

### 3. Plaintiffs' Unpleaded Due Process Claim Is Meritless

Plaintiffs' response tries to assert a Fourteenth Amendment substantive due process claim. ECF No. 16, at 22. That is another impermissible attempt to amend their complaint by briefing. *See S. Walk at Broadlands*, 713 F.3d at 184. The only federal claims asserted in the operative complaint are "overbreadth" and "vagueness." ECF No. 9, at 12, 14 (uppercase omitted).[3]

If the operative complaint had asserted a substantive due process claim, it would be inapplicable. A constitutional claim "covered by a specific constitutional provision" must "be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Here, Plaintiffs' purported substantive due process claim is covered by the First Amendment, *see* ECF No. 16, at 22, so substantive due process analysis is improper.

Construing Plaintiffs' argument as based on the First Amendment (a claim that is equally absent from the operative complaint) does not save it. As Defendants have explained, "[a]ctivities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message." *Grider*, 617 F. Supp. 3d at 52. And SB 406's specific intent requirement also "serves to insulate [it] from unconstitutional application to protected speech." *Gilbert*, 813 F.2d at 1529.

Because SB 406 does not regulate protected speech, it is constitutional as long as passes rational-basis review. *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 359 (2009). It does: it is rationally related to the State's legitimate interest in protecting Nevadans from harassment and threats and in ensuring the proper functioning of its electoral system.

/ / /

/ / /

/ / /

/ / /

---

[3] The heading of the operative complaint's second claim is "substantive due process – vagueness." ECF No. 9, at 14 (uppercase omitted). All the allegations supporting the second claim relate to vagueness. *Id.* at 14-15.

## IV. Conclusion

For the reasons stated above, this Court should grant the motion and dismiss the operative complaint.

DATED this 17th day of August 2023.

        AARON D. FORD
        Attorney General

By: */s/Kiel B. Ireland*
    JESSICA E. WHELAN (Bar No. 14781)
     Senior Deputy Attorney General
    KIEL B. IRELAND (Bar No. 15368)
     Deputy Solicitor General
    Office of the Attorney General
    100 North Carson Street
    Carson City, Nevada 89701-4717
    T: (775) 684-1100
    E: kireland@ag.nv.gov

*Attorneys for Governor Lombardo*

        AARON D. FORD
        Attorney General

By: */s/Laena St. Jules*
    LAENA ST-JULES (Bar No. 15156)
     Deputy Attorney General
    Office of the Attorney General
    100 North Carson Street
    Carson City, Nevada 89701-4717
    T: (775) 684-1100
    E: lstjules@ag.nv.gov

*Attorneys for Secretary Aguilar*