UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Susan Vanness, et al., <br><br> Plaintiffs <br><br> v. <br><br> Francisco V. Aguilar, in his official capacity as Nevada Secretary of State, et al., <br><br> Defendants | Case No. 2:23-cv-01009-CDS-VCF <br><br> **Order Granting Defendants' Motion to Dismiss and Denying Plaintiffs' Motion for Preliminary Injunction** <br><br> [ECF Nos. 13, 14] |

This is a 42 U.S.C. § 1983 action. Plaintiffs Susan Vanness, Alexandrea Slack, Martin Waldman, and Robert Beadles (together, plaintiffs) challenge the constitutionality of sections 1 and 2 of the Election Worker Protection Act (hereinafter, SB 406) for allegedly violating the First and Fourteenth Amendments of the United States Constitution and Article I of the Constitution of the State of Nevada. Defendants Francisco V. Aguilar, Nevada Secretary of State, Joseph M. Lombardo, Governor of the State of Nevada, and various unnamed Doe corporations (together, defendants) move to dismiss the complaint. ECF No. 13. Plaintiffs oppose dismissal and move for a preliminary injunction. ECF No. 14. Both motions are fully briefed. Because I find that plaintiffs fail to demonstrate standing to bring their claims, I grant the motion to dismiss the complaint and, for the same reason, deny the motion for preliminary injunction.

I.   Background

In April 2023, the 82nd Legislative Session of Nevada adopted SB 406 to combat the recent wave of high turnover in elections officials across the state.[1] SB 406 contains provisions—

---

[1] *Minutes of the Senate Committee on Legislative Operations and Elections*, 82d Sess., 2–3, 12 (Nev. Apr. 11, 2023) (statements of Gabriel Di Chiara and Burgans), https://tinyurl.com/SB406Mins (last visited Oct. 20, 2023) (stating that the Nevada Legislature enacted SB 406 to "provide additional protection for election workers" and reverse the "unbelievable turnover of election officials in elected and administrative positions over the last four years.").

those at issue here—that criminalize the use, threat, or attempted use of force, intimidation, coercion, violence, restraint, or undue influence with an intent to interfere with or retaliate against elections officials who are performing their elections duties. SB 406 § 1(6)(b). A person who violates section 1 is guilty of a category E felony. *Id.* at § 1(4).

In June 2023, plaintiffs, who state that they are former poll workers, filed the instant case, complaining that SB 406 is: 1) overbroad in violation of the First Amendment of the U.S. Constitution; 2) vague in violation of substantive due process under the Fourteen Amendment of the U.S. Constitution; and 3) vague and overbroad in violation of Article 1, section 1 of the Constitution of the State of Nevada. First Am. Compl., ECF No. 9 at 12–17. The crux of plaintiffs' complaint is that, due to the alleged "overbreadth" and "vagueness" of sections 1 and 2 of SB 406, innoxious, legitimate behavior from plaintiffs and other poll workers in future elections may inadvertently implicate criminal liability. *See id.* at 5–6. For example, plaintiffs complain that a ballot inspector may "feel[] intimidated" as a result of a Rover's[2] attempt to correct the inspector's perceived wrongful conduct, thus subjecting that Rover to criminal liability under SB 406. *See id.* at 5.

On July 27, 2023, defendants filed the instant motion to dismiss, arguing that none of plaintiffs' claims can survive because 1) plaintiffs fail to establish standing; 2) the Eleventh Amendment bars the claims; and 3) plaintiffs have failed to state a claim upon which relief can be granted. *See generally* ECF No. 13.

On the same day, plaintiffs filed the instant motion for injunctive relief, requesting that the court enjoin defendants from wanton and arbitrary enforcement of sections 1 and 2 of SB 406, and declare said sections facially unconstitutional. *See generally* ECF No. 14.

---

[2] Plaintiffs do not specifically define the term "Rover" in their complaint or preliminary injunction, but they include it as one of the potential "election official" positions, which are generally defined to be "any individual responsible for the proper and orderly voting at polling stations and monitoring the conduct of the election workers[.]" ECF No. 9 at 4.

Because I find that plaintiffs have failed to demonstrate standing under either the motion to dismiss or preliminary injunction standard, I address *infra* only my subject matter jurisdiction to adjudicate this case. I do not address or rule on the merits of any other argument or issue in this case.

## II. Legal standard

### A. *Motion to Dismiss*

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.

Accordingly, Fed. R. Civ. P. 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"When 'standing is challenged on the basis of the pleadings,' we must 'accept as true all material allegations of the complaint' and 'construe the complaint in favor of the complaining party.'" *California Rest. Ass'n v. City of Berkeley*, 65 F.4th 1045, 1049 (9th Cir. 2023) (quoting *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) (simplified)). At this stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we

presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (simplified).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Fed. R. Civ. P. 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

B. *Preliminary Injunction*

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The Ninth Circuit uses two alternative tests to determine whether a preliminary injunction should issue. Under the traditional test, a plaintiff seeking an injunction must prove that: 1) they are likely to succeed on the merits; 2) they are likely to suffer irreparable injury in the absence of preliminary relief; 3) the balance of equities tips in their favor; and 4) an injunction is in the public interest. *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001) (citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980)). In the alternative, the Ninth Circuit uses a "sliding scale" approach. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011). Under this test, a preliminary injunction may issue if there are serious questions going to the merits of the case, the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied. *Bartell Ranch LLC v. McCullough*, 558 F. Supp. 3d 974, 979 (D. Nev. 2021), *reconsideration denied*, 570 F. Supp. 3d 945 (D. Nev. 2021), *appeal dismissed*, 2022 WL 1165410 (9th Cir. Apr. 4, 2022) (citing *All for the Wild Rockies*, 632 F.3d at 1135).

To satisfy the first element of the standard for injunctive relief, it is not necessary for the moving party to "prove his case in full[,]" *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), or to show that they are "more likely than not" to prevail. *Leiva–Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Instead, the moving party must demonstrate a "fair chance of success on the merits" or raise questions "serious enough to require litigation." *Benda v. Grand Lodge of Int'l Ass'n of Machinists and Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978). Standing is a threshold issue for the first element. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). At the preliminary injunction stage, a plaintiff "must make a clear showing of each element of standing," proving 1) an injury in fact that is "concrete and particularized" and "actual or imminent"; 2) "a causal connection between the injury and the conduct complained of"; and that 3) "the injury will likely be redressed by a favorable decision." *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013); *see Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (citing *Winter*, 555 U.S. at 22 (a "clear showing" of injury-in-fact is required at the preliminary injunction stage).

### III. Discussion

#### A. *Justiciability*

This court's jurisdiction is limited to "Cases" and "Controversies." U.S. Const., art. III, § 2; *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017). The doctrine of standing gives meaning to these constitutional limits by "identify[ing] those disputes which are appropriately resolved through the judicial process." *Lujan*, 504 U.S. at 560. "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To establish Article III standing, a plaintiff must show 1) an "injury in fact," 2) a sufficient "causal connection between the injury and the conduct complained of," and 3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal quotation marks omitted).

This case concerns the injury-in-fact requirement, which helps to ensure that the plaintiff has a "personal stake in the outcome of the controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation marks omitted). An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560 (some internal question marks omitted). An injury cannot be hypothetical or based on conjecture. *Id*. An allegation of future injury can be sufficient if the threatened injury is "certainly impending," or there is a "'substantial risk' that the harm will occur." *Clapper*, 568 U.S at 414, n. 5 (emphasis deleted and internal quotation marks omitted).

       1.   Plaintiffs Fail to Demonstrate Standing.

In response to the motion to dismiss and in reply to their preliminary injunction motion, plaintiffs argue that two discrete types of sufficient future injury underlay their claims. First, plaintiffs allege that as previous poll worker and election observers, "the passage of SB 406 has a direct impact on their ability to execute their functions as same" in the future. ECF No. 16 at 6–7. Specifically, plaintiffs argue that they face a "very possible and likely" threat of criminal prosecution under SB 406 due to its criminal provisions' alleged vagueness and overbreadth. ECF No. 17 at 4–5. Second, plaintiffs argue that the fear of prosecution will "dissuade" plaintiffs and others from participating as election officials and observers in the future. *Id*. at 4. In other words, plaintiffs argue that they will experience harm by being chilled away from future participation in their job. ECF No. 16 at 6–7.

For the following reasons, neither of these proffered hypothetical injuries is sufficiently concrete or imminent to confer on plaintiffs standing to bring these claims.

       a.   Threat of prosecution

Plaintiffs argue that they have pleaded sufficient harm to confer standing because they face a "very possible and likely" threat of criminal prosecution under SB 406. ECF No. 16 at 6–7; ECF No. 17 at 4–5. This is not so.

When an individual is subject to the threat of prosecution, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat."). Rather, the Supreme Court has determined that pre-enforcement review is permissible under certain circumstances. Specifically, such review is permissible where the threatened enforcement is "sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). A plaintiff satisfies the injury-in-fact requirement for prospective prosecution where they allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). This is true even for vagueness challenges. *See Carrico v. City. & Cnty. of San Francisco*, 656 F.3d 1002, 1005, 1006 (9th Cir. 2011); *see also Bradford v. Sisolak*, 2021 U.S. Dist. LEXIS 93234, *10 (D. Nev. May 14, 2021).

        i.    Plaintiffs do not allege that they intend to engage in the prescribed conduct.

Plaintiffs fail to satisfy the first element: none of the plaintiffs allege an intent or plan to engage in conduct prescribed by the statute. *See Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1210 (9th Cir. 2022) (finding that plaintiffs have not sufficiently alleged a constitutional injury in fact because the complaint utterly lacks, let alone states "with some degree of concrete detail," an allegation that plaintiffs "intend to violate" the Rule as interpreted by the 2016 letter). Specifically, plaintiffs at no point allege that they intend or plan to engage in behavior for the purpose of intimidating or coercing poll workers. *See Plunderbund Media L.L.C. v. DeWine*, 312 F. Supp. 3d 654, 661 (N.D. Ohio), *aff'd sub nom. Plunderbund Media, L.L.C v. DeWine*, 753 F. App'x 362

(6th Cir. 2018) ("Plaintiffs do not allege that they intend to engage in political expression online for the purpose of abusing or harassing government officials, public figures, or any person . . . [i]n the absence of an allegation that plaintiffs intend to engage in conduct proscribed by the statute, their pre-enforcement complaint fails to present an injury-in-fact required for constitutional standing."); *see also Glenn v. Holder*, 738 F. Supp. 718, 721 (E.D. Mich. 2010) (pastors claiming that the Hate Crimes Act violates their first amendment right to oppose homosexual behavior lack standing because the pastors do not allege that they intended to engage in conduct proscribed by the statute—willfully causing or attempting to cause bodily injury to a person because of sexual orientation).

        ii.  Plaintiffs do not allege facts sufficient to show that prosecution based on misinterpretations of their action is likely.

Plaintiffs also fail to meet the second element—demonstrating that there exists a "credible threat of prosecution." Plaintiffs in effect argue that, despite lacking intent to engage in the proscribed behavior, they still face the threat of prosecution because their actions may be *misinterpreted* by other poll workers as intimidation or coercion, etc. "While plaintiffs need not expose themselves to actual arrest or prosecution in order to establish an injury-in-fact necessary for standing, their fear of prosecution cannot be 'imaginary or speculative.'" *Grendell v. Ohio Supreme Ct.*, 252 F.3d 828, 834 (6th Cir. 2001) (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)). Rather, a plaintiff must establish that the threat of prosecution is "well founded" and "substantial[.]" *Susan B. Anthony List*, 573 U.S. at 160, 164. A plaintiff's subjective and irrational fear of prosecution is not enough to confer standing. *See Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).

Here, plaintiffs fail to articulate a non-speculative concern, let alone a "well founded" one, that any of their potential future actions are likely to precipitate mistaken enforcement. For example, they postulate that an inspector may feel "intimated" (thus implicating SB 406 liability) if a Rover "confronts a ballot inspector over an inspector's perceived wrongful

conduct"; or that "if a Ballot inspector confronts another ballot inspector outside the Central Ballot processing area/Election office/Warehouse, about perceived wrongful conduct, with an intent to correct it, that may subject a ballot inspector to criminal liability for intimidation or undue influence." ECF No. 9 at 5–6. However, plaintiffs provide no basis to believe that either of these scenarios, or any other similar ones, are likely to come about or otherwise have any grounding in experience or fact. *Cf. Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (possible prosecution under panhandling statute is not imaginary or speculative where plaintiff had been warned twice to stop handbilling and his handbilling companion was prosecuted).

The most plaintiffs say is that elections violations have "historically been prosecuted" while citing to a complaint in Clark County for an individual charged with the crime of "voting using the name of another person" and "voting more than once at the same election[.]" ECF No. 17 at 4–5, n.1 (citing *State of Nevada v. Hartle, Donald*, EJDC No. 21-CR-046327[3]). This is inapposite. Quite simply, voting under a different name and twice in an election is not the "same conduct" as intimidating a poll worker, intentionally or not. *Cf. Susan B. Anthony List*, 134 S. Ct. at 2345 ("[P]ast enforcement [of a statute] against the same conduct is good evidence that the threat of enforcement is not chimerical") (internal quotation marks omitted). Indeed, plaintiffs do not even attempt to show how an individual charged for election-related crimes that are both different in nature and statute than the instant statute and related crimes demonstrates a likelihood that plaintiffs' misinterpreted actions relating to SB 406 face a substantial likelihood of prosecution. In short, plaintiffs fail to give assurance that the conduct in question—the mistaken intimidation of poll workers—has a history in enforcement or is otherwise "reasonably founded in fact." *Planned Parenthood Ass'n of Cincinnati v. City of Cincinnati*, 822 F.2d 1390, 1395 (6th Cir. 1987).

---

[3] The court notes that the correct citation for this complaint is: *State of Nevada v. Donald Hartle*, C-21-360352-1.

### 2. Chilling effect

The fulcrum of plaintiffs' second injury basis is that the fear of criminal prosecution may dissuade plaintiffs—and other like plaintiffs—from working as poll workers in future elections. ECF No. 16 at 6–7. In the First Amendment context, because a chilled plaintiff's injury arises not from actual harm that has already occurred, but from the plaintiff's fear of future prosecution, the court must ascertain that such fear is sufficiently concrete and immediate to constitute a present injury to plaintiff's First Amendment rights, rather than a speculative or illusory allegation of future harm. In other words, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird* 408 U.S. at 13–14. As discussed *supra*, plaintiffs have failed to articulate an objective, concrete threat of future harm (in this case, prosecution). *See Glenn*, 738 F. Supp. 2d at 731 ("Even though Plaintiffs allege that their exercise of their First Amendment rights is chilled, particularly because of the potential for criminal penalties, Plaintiffs have not alleged sufficient facts to demonstrate that they are likely to suffer an injury as a result of the Hate Crimes Act.").

####    a. Plaintiffs do not concretely allege that they will be chilled from returning as poll workers in future elections.

Even assuming, arguendo, that plaintiffs *had* successfully demonstrated a sufficient threat of future prosecution, nowhere do plaintiffs actually allege that even a single one of them definitively *will not* participate in future elections. *See generally* ECF No. 9. Instead, they simply argue that "the implications of SB 406 *may impact* on whether they will risk engaging as elections and poll workers and observers in 2024"; that the "lack of clarity as to what is prohibited conduct under SB 406, *dissuades* Plaintiffs and others from participating as elections officials and observers for fear of wanton prosecution"; and that "the vagueness that is presented by SB 406 as to what conduct may subject Plaintiffs to criminal prosecution, *stifles* their intent to continue to be elections officials/observers in future elections." ECF No. 17 at 3–5 (emphasis added). These

noncommittal postulations are textbook speculation and plainly insufficient to demonstrate a concrete and particularized injury. *See Lujan*, 504 U.S. at 560; *see Yazzie v. Hobbs*, 977 F.3d 964, 967 (9th Cir. 2020) ("What is missing for [plaintiff] is any allegation or showing as to, at a bare minimum, whether any of the plaintiffs intend to vote in this general election, and if so, whether they intend to vote by mail.").

The two cases that plaintiffs cite in support of this alleged injury do nothing to alter the analysis. ECF No. 17 at 3. For one, both are consumer protection cases, which implicate an inapposite line of consumer-context-specific standing analysis. More importantly, both cases involve plaintiffs who specifically alleged a concrete intent to *not engage* in the relevant future action. *Compare Nacarino v. Chobani, LLC*, 2021 WL 3487117, at *11 (N.D. Cal. Aug. 9, 2021) (stating that the plaintiff alleged that she "will not purchase" the product again despite her desire to), *with Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 962 (9th Cir. 2018) (stating that plaintiff "has never again purchased [the product]" and will not despite her desire to do so). Conversely, again, plaintiffs here make no concrete allegations that they will not return to the polls and thus fail to allege an actionably concrete injury.

> b. Because plaintiffs lack standing, their motion for a preliminary injunction (ECF No. 14) is denied and defendants' motion to dismiss (ECF No. 13) is granted without prejudice and with leave to amend.

For the foregoing reasons, I find that plaintiffs have failed to allege a threat of imminent, credible harm sufficient to confer standing. Therefore, defendants' motion to dismiss is granted for lack of subject-matter jurisdiction. Because I cannot determine if amendment would be futile, the complaint is dismissed but without prejudice and with leave to amend. *See Knappenberger v. City of Phx.*, 566 F.3d 936, 942 (9th Cir. 2009) (Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of additional facts.).

Further, because I find that plaintiffs have failed to allege even "general" factual allegations of injury sufficient to articulate a legally cognizable injury under the more lenient

motion to dismiss standard, I also find that plaintiffs have failed to make a "clear showing of each element of standing" for their request for injunctive relief. *Compare Townley*, 722 at 1133, *with Lujan*, 504 U.S. at 561. Accordingly, plaintiffs' motion for a preliminary injunction is denied for lack of standing.

## IV. Conclusion

IT IS THEREFORE ORDERED that defendants' motion to dismiss the complaint **[ECF No. 13] is GRANTED**. The complaint is dismissed without prejudice. Plaintiffs have 14 days from the date of this order to file a second amended complaint.

IT IS FURTHER ORDERED that plaintiffs' motion for preliminary injunction **[ECF No. 14] is DENIED.**

DATED: October 20, 2023

_____
Cristina D. Silva
United States District Judge