**ACOM**
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd #203
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax:(702) 643-6292
Chattahlaw@gmail.com
Attorney for Plaintiff
*Susan Vanness Et Al*

# THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

SUSAN VANNESS, an individual,               )
ALEXANDREA SLACK, an individual             )
MARTIN WALDMAN, an individual,              )
ROBERT BEADLES,an individual                )
                                            )   Case No: **2:23-cv-01009-CDS-VCF**
                 Plaintiffs,                )
        vs.                                 )
                                            )        **AMENDED**
FRANCISCO V. AGUILAR, in his official       )        **COMPLAINT**
capacity as Nevada Secretary of State, JOSEPH M. )  **[SECOND]**
LOMBARDO, in his official capacity as Governor )
of the State of Nevada, DOES                )
I-X, inclusive: ROE                         )
CORPORATIONS 11-20, inclusive.              )
                                            )
                                            )
                 Defendants.                )
_____ )

## [SECOND] AMENDED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, DECLARATORY JUDGMENT, AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

COME NOW, individual Plaintiffs, ALEXANDREA SLACK, SUSAN VANNESS,

MARTIN WALDMAN, and ROBERT BEADLES, who bring this action by and through the

undersigned attorney of record SIGAL CHATTAH, ESQ. of CHATTAH LAW GROUP, and

respectfully request this Court to issue a Temporary Restraining Order, Declaratory Judgment,

and Preliminary and Permanent Injunctive Relief and Damages.  In support thereof, Plaintiffs show unto the Court as follows:

## PRELIMINARY STATEMENT

1.      This is a lawsuit for declaratory judgment and injunctive relief facially challenging the legality of portions of Senate Bill 406, known as, the Election Worker Protection Bill, amending Chapter 293, creating a new category for a criminal offense toward election workers and lawful election observers promulgated by the Defendants.

2.      Despite the fact that there already exists clear and concise laws in the State of Nevada, regarding intimidation, harassment and coercion, *see infra,* SB 406 imposes impossible—and unpredictable—burdens on individuals that come into contact with "election officials" during elections at voting centers and ballot processing centers.

3.      Elections officials engage with volunteer observers in good faith to ensure processes are understood and any improper activities are corrected.   The issue becomes problematic discerning at what point does that interaction become construed as intimidating with an intent to interfere. The subjectivity of that interaction is 1) problematic and 2) subject to heightened consequences of being charged with a class E felony.

4.      Plaintiffs herein allege that but for the passage of SB 406, each of them, had an intention to engage in poll watching/observing, election day watching/observing.

5.      Plaintiffs further allege that following the passage of SB 406, they have an imminent fear of engaging in these activities, because of the threat of prosecution under such a vague statute that fails to identify what the particularly prohibited conduct is.

6.      Plaintiffs are aware that in September, 2020, Nevada's Attorney General, threatened to prosecute poll watchers, qualifying those actions as "voter intimidation" and not

poll watching and have a fear that observing and watching elections officials will be subject to the same subjective standard the Attorney General proposed during the 2020 election.

7.    Plaintiffs have a fear that the threat of subjective enforcement of SB 406 is sufficiently imminent that their course of conduct, which has been previously viewed as intimidation by Nevada's Attorney General in 2020, can and will be threatened by prosecution.

8.    In fact, in a poll taken by the Washoe Republican Party Central Committee members on October 30, 2023, 80% of its membership will no longer engage in poll/elections observing in the 2024 elections as a result of fear of prosecution under SB 406.

9.    Plaintiffs' refusal to participate in poll watching/elections observation is precisely the clearest explanation of voter/election suppression and oversight.

10.    It is significant to note that Plaintiff Beadles is currently subject to a Motion for Sanctions in Second Judicial District Court, Case No.23-OC-00105-1B entitled *Beadles v Rodriguez Et Al.* In that case, the Defendants' proposition is based on Beadles purportedly filing the suit to "attack and remove his perceived political adversaries and grandstand about his debunked election fraud theories." This being alleged, despite the fact that Beadles is not a public official, nor does he have "political adversaries".

11.    The ability to prosecute Beadles, under SB 406 subsection 2, for filing a legal action, will have an unequivocal chilling effect on any type of dissent or demanding accountability of government officials for fear of prosecution under SB 406.

12.    SB 406 fails to provide any exemption or affirmative defenses affording exclusion from prosecution individuals lawfully engaged in election conduct, even as election officials as defined in SB 406 (6)(b).

13.    Nevada already has laws that protect individuals from intimidation and harassment, rendering SB 406 unnecessary and duplicative and based on subjective interpretation as seen by Attorney General Ford in 2020.

14.    Specifically and to wit: NRS 200.571[1] entitled *Harassment*; NRS 207.190[2] entitled *Coercion* and, NRS 199.300[3] entitled *Intimidating public officer, public employee,*

---

[1] NRS 200.571
1.   A person is guilty of harassment if:
     (a) Without lawful authority, the person knowingly threatens:
          (1) To cause bodily injury in the future to the person threatened or to any other person;
          (2) To cause physical damage to the property of another person;
          (3) To subject the person threatened or any other person to physical confinement or restraint; or
          (4) To do any act which is intended to substantially harm the person threatened or any other person with respect to his or her physical or mental health or safety; and
     (b) The person by words or conduct places the person receiving the threat in reasonable fear that the threat will be carried out.
     2.   Except where the provisions of subsection 2, 3 or 4 of NRS 200.575 are applicable, a person who is guilty of harassment:
     (a) For the first offense, is guilty of a misdemeanor.
     (b) For the second or any subsequent offense, is guilty of a gross misdemeanor.
     3.   The penalties provided in this section do not preclude the victim from seeking any other legal remedy available.

[2] **NRS  207.190    Coercion.**
     1.   It is unlawful for a person, with the intent to compel another to do or abstain from doing an act which the other person has a right to do or abstain from doing, to:
     (a) Use violence or inflict injury upon the other person or any of the other person's family, or upon the other person's property, or threaten such violence or injury;
     (b) Deprive the person of any tool, implement or clothing, or hinder the person in the use thereof; or
     (c) Attempt to intimidate the person by threats or force.
     2.   A person who violates the provisions of subsection 1 shall be punished:
     (a) Where physical force or the immediate threat of physical force is used, for a category B felony by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years, and may be further punished by a fine of not more than $5,000.
     (b) Where no physical force or immediate threat of physical force is used, for a misdemeanor.

[3] **NRS  199.300    Intimidating public officer, public employee, juror, referee, arbitrator, appraiser, assessor or similar person.**
     1.   A person shall not, directly or indirectly, address any threat or intimidation to a public officer, public employee, juror, referee, arbitrator, appraiser, assessor or any person authorized by law to hear or determine any controversy or matter, with the intent to induce such a person contrary to his or her duty to do, make, omit or delay any act, decision or determination, if the threat or intimidation communicates the intent, either immediately or in the future:
     (a) To cause bodily injury to any person;
     (b) To cause physical damage to the property of any person other than the person addressing the threat or intimidation;
     (c) To subject any person other than the person addressing the threat or intimidation to physical confinement or restraint; or

*juror, referee, arbitrator, appraiser, assessor or similar person* all qualify as laws that seek to prohibit exactly the conduct that SB 406's subjective standard provides for.

15.     The consequence of SB 406 is a sweeping and unwieldy regulation that leaves the identification of what an offense is so opaque, uncertain, and all-encompassing that Plaintiffs and others similarly situated cannot determine whether and when the most basic activities undertaken will subject them to drastic criminal penalties.

16.     The failure to define what is "election official" includes (without affording the ability to claim an affirmative defense or exemption), leaves the identification of a protected class or victim to be covered by SB 406 so opaque and uncertain, that Plaintiffs and others similarly situated cannot determine who an election official is and who is protected under SB 406.

17.     On or about May 30, 2023, after passing both chambers of the Nevada Legislature, Nevada's Secretary of State Francisco V. Aguilar and Nevada's Governor Joseph M. Lombardo signed SB 406 into law.

---

(d) To do any other act which is not otherwise authorized by law and is intended to harm substantially any person other than the person addressing the threat or intimidation with respect to the person's health, safety, business, financial condition or personal relationships.

2.   The provisions of this section must not be construed as prohibiting a person from making any statement in good faith of an intention to report any misconduct or malfeasance by a public officer or employee.

3.   A person who violates subsection 1 is guilty of:

(a) If physical force or the immediate threat of physical force is used in the course of the intimidation or in the making of the threat:

(1) For a first offense, a category C felony and shall be punished as provided in NRS 193.130.

(2) For a second or subsequent offense, a category B felony and shall be punished by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 10 years, and may be further punished by a fine of not more than $10,000.

(b) If no physical force or immediate threat of physical force is used in the course of the intimidation or in the making of the threat, a gross misdemeanor.

4.   As used in this section, "public employee" means any person who performs public duties for compensation paid by the State, a county, city, local government or other political subdivision of the State or an agency thereof, including, without limitation, a person who performs a service for compensation pursuant to a contract with the State, county, city, local government or other political subdivision of the State or an agency thereof.

18.    SB 406 is described as "AN ACT relating to elections; making it unlawful for a person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence with the intent to interfere with the performance of duties of an elections' official or retaliate against an elections official for the performance of such duties;"

19.    SB 406 subjects Plaintiffs to many different injuries, each of which is "concrete and particularized"," actual or imminent" fairly traceable to SB406 and likely to be redressed by a "favorable decision from this Court". *Lujan v Defs. Of Wildlife, 504 U.S. 555, 560-561 (1992).*

20.    SB 406 Section 1 provides "[C]hapter 293 of NRS is hereby amended by adding thereto a new section to read as follows:

> 1.    It is unlawful for any person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence ***with the intent*** to:
> (a)  ***Interfere with the performance of the duties*** of any ***elections official*** relating to an election; or
> (b)  Retaliate against any ***elections official*** for performing duties relating to an election.
> 2.    The provisions of subsection 1 apply ***regardless of whether*** a person uses or threatens or ***attempts to use*** such force, intimidation, coercion, violence, restraint or undue influence ***at a polling place or a location*** other than a polling place.
> [*Emphasis added*]

21.    It is significant to note that nowhere in Chapter 293 subsection 6(b) of the Nevada Revised Statute is the term "election official" defined as to who is exempt from criminal prosecution making the assessment of a purported victim of a crime under SB 406 vague and overbroad.

22.    It is also significant to note that because actual "election officials" or election observers are not afforded an affirmative defense or exemption from prosecution, completely lawful conduct is criminalized in the statutory scheme of Chapter 293.

23.    In addition to the definitions delineated in subsection (6)(b), the term "election official" can be used to qualify any individual responsible for the proper and orderly voting

at polling stations and monitoring the conduct of the election workers including members of the

Counting Board which include the following:[4]

- Ballot Inspectors

- Ballot Runners

- Opex Operators

- Lead/Supervisors

- Duplicating Team/Duplication Board

- Administrators

- Rovers

- Folder Audit Verification Team

- Imprint Verification Team

24.     It is also significant to note that NRS 293.274 entitled *Members of general public*

*allowed to observe conduct of voting at polling place; photographing or otherwise recording*

*conduct of voting by members of general public prohibited* provides as follows:

1.   The county clerk shall allow members of the general public to observe the conduct of voting at a polling place.
2.   A member of the general public shall not photograph the conduct of voting at a polling place or record the conduct of voting on audiotape or any other means of sound or video reproduction.
3.   For the purposes of this section, a member of the general public does not include any person who:
    (a)  Gathers information for communication to the public;
    (b)  Is employed or engaged by or has contracted with a newspaper, periodical, press association, or radio or television station; and
    (c)  Is acting solely within his or her professional capacity.

---

[4] It is significant to note, the Defendants have conceded that there are no exemptions for supervisory elections officials over subordinate elections officials.

25.     Interestingly, an election observer, or a volunteer poll-observer (under NRS 293.274) may potentially not only be a victim of SB 406 but also be subject to a prosecution under SB 406, for a Class E felony, if an election observer vocally objects to any conduct which may be *subjectively* viewed as intimidation or undue influence, by a purported victim under SB 406.

26.     Furthermore, SB  406 subjects Plaintiffs to criminal liability without defining what intimidation and/or undue influence with the intent to interfere is for said crime, obstructing the purpose of election observers which are statutorily authorized under NRS 293.274.

27.     In fact, SB 406 makes it a category E felony for an act regardless of an attempt to engage in such intimidation, undue influence etc. whether at a polling location, election office or any location any time.

28.     The costs of acting in a way that may be deemed intimidation or use undue influence "regardless of whether a person attempts to use" same at a polling place or other location is absolutely absurd, since it places the burden of proving scienter on a criminal defendant.

29.     This was clearly the case when Attorney General Ford, unilaterally decided that "poll observers" were going to engage in "voter intimidation" in 2020 and threatened to prosecute them.

30.     For example, if a "Rover"[5] confronts a ballot inspector over an inspector's perceived wrongful conduct, with the intent to have that wrongful conduct corrected, and the inspector feels intimidated, under SB 406 that subjects the Rover to criminal liability.

31.     Moreover, if a Ballot inspector confronts another ballot inspector outside the Central Ballot processing area/Election office/Warehouse, about perceived wrongful conduct, with an intent to correct it, that may subject a ballot inspector to criminal liability for intimidation or undue influence.

32.     The potential of innocent individuals, lawfully engaging in election oversight being subject for criminal liability for attempting to take corrective actions, under the vague and overbroad statutory scheme under SB 406 is inconceivable

33.     A first-time criminal offense for a person who violates the provisions of subsection 1 is guilty of a category E felony[6] and shall be punished as provided in NRS 193.130

34.     Plaintiffs and others similarly situated fear that even minimal expressions as poll observers and lawful election officials protected by the First Amendment (and authorized under NRS 293.274) will result in an arbitrary violation of SB 406 and prosecution thereunder since there are no exemptions from prosecution afforded for even those identified as elections officials under subsection (6)(b).

---

[5] Rover ~ The Rover serves as a "roving clerk" and is responsible for several precincts within a zone; they assist with problems, deliver extra supplies if needed; monitors and reports voter turnout and makes assessments of the polling places and procedures. See Microsoft Word - Poll Worker Positions.doc (votecitrus.com)
[6] NRS 193.130(e) defines a category E felony as "a felony for which a court shall sentence a convicted person to imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 4 years. Except as otherwise provided in paragraph (b) of subsection 1 of NRS 176A.100, upon sentencing a person who is found guilty of a category E felony, the court shall suspend the execution of the sentence and grant probation to the person upon such conditions as the court deems appropriate. Such conditions of probation may include, but are not limited to, requiring the person to serve a term of confinement of not more than 1 year in the county jail. In addition to any other penalty, the court may impose a fine of not more than $5,000, unless a greater penalty is authorized or required by statute".

35.     Accordingly, SB 406's potential to criminalize innocent conduct makes it vague in defining the conduct it criminalizes and therefore unconstitutional as delineated *infra*.

36.     On or about September 29, 2020, Attorney General Aaron Ford said he was ready to prosecute anyone attempting voter intimidation in Nevada after President Donald Trump's call during the debate to have his supporters "go into the polls and watch very carefully." Ford, said that he considered the president's [Trump] comments to be a "dog whistle" encouraging voter intimidation, citing the president's past comments suggesting that voters cast both mail and in-person ballots to test the system and his instruction for the right-wing extremist "Proud Boys" group to "stand back and stand by."



**Aaron D. Ford@AaronDFordNV**
Trump also told "his supporters" to "go into the polls and watch very carefully." But he wasn't talking about poll watching. He was talking about voter intimidation. FYI -- voter intimidation is illegal in Nevada. Believe me when I say it: You do it, and you will be prosecuted.
8:51 PM · Sep 29, 2020."[7]

37.     According to Ford, in his tweet, every individual that was a Trump supporter was instructed to intimidate voters – not poll watch.

38.     Nevada's own Attorney General ***unilaterally speculated*** and ***decided*** that a statement to poll watchers to remain vigilant and ensure elections were not tampered with, was a call to intimidate voters and threatened to prosecute poll watchers.

---

[7] https://x.com/AaronDFordNV/status/1311151750829678592?s=20

39.     It is absolutely conceivable that the same threat to prosecute that was made, based on the Attorney General's subjective opinion, in 2020 as to voter intimidation, will be subjectively applied as to SB406 and intimidation of an "election official".

**SB 406-SPECIFIC INTENT CRIME**

40.     The criminal liability the attaches to an individual that violates SB 406, lies in the following statement "It is unlawful for any person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence ***with the intent to interfere*** with the performance of the duties of any elections official" [*Emphasis added*].

41.     SB 406 is a specific intent crime which requires a Defendant to have the specific intent to either interfere with an election official's performances of duties or retaliate against an elections' official for his or her performance of duties.

42.     In proving a specific intent crime, the prosecution of an individual under SB 406 would require that not only did that individual intend to bring out a specific consequence through his or her actions, but that he/she performed those actions with a ***wrongful purpose.***

43.     In 2020, Attorney General Aaron Ford, unilaterally decided, without any predicate or precedent, that an instruction to poll watch was an instruction to intimidate voters, and threatened to prosecute such acts.

44.     In 2020, Nevada's Attorney General threatened to prosecute poll watchers on the basis of ***his subjective determination*** of a wrongful purpose. If there is no clarity to what a wrongful purpose is than Plaintiffs do not have adequate notice of what the crime is.

45.     Plaintiffs herein allege, based on the Attorney General's unilateral subjective determination of a wrongful purpose, that it is likely that they will be prosecuted for contemplated conduct, *ergo*, ensure that elections officials are engaging in proper protocol,

regardless of whether the purpose is perceived as wrongful or allowed, and therefore refuse to participate as poll watchers/ elections observers.

46.    Specific intent lies when a person consciously desires a result, whatever the likelihood of that result happening from his conduct; and (2) when he knows that that result is practically certain to follow from his conduct, whatever his desire may be as to that result"). *W. LaFave, Substantive Criminal Law § 5.2(a) (3d. ed. 2017)*

47.    An" attempt" in SB 406, subsection 2 requires "an intent to do an act or to bring about a certain consequence which would in law amount to a crime." *LaFave, Substantive Criminal Law § 11.3.*

48.    In order to charge someone with a criminal offense under SB 406, the Government would have to demonstrate that an individual, even a lawfully entitled poll observer OR election official intended on interfering with the performance of an "elections official".

49.    Additionally, in subsection 2 of SB 406, an individual can be charged for violating subsection 1, not only at a polling or election place, but anywhere geographically where an "election official" is.

50.    SB 406 is not divisible because it merely lists alternative means of committing the same crime, which is interference with an election official. However, based on the nature of SB 406, the previous threats of prosecution by Nevada's Attorney General and the overbreadth and vague manner it is drafted, it is clear that in order to provide any culpability over a defendant, a "substantial step" analysis will be necessary for adjudication.

51.    To constitute a substantial step, a potential Defendant conduct "must go beyond mere preparation and must be strongly corroborative of the firmness of a defendant's criminal intent." *United States v. Smith, 962 F.2d 923, 930 (9th Cir. 1992) (quotations omitted). That is,*

"the defendant's conduct must (1) advance the criminal purpose charged, and (2) provide some verification of the existence of that purpose." *United States v. Goetzke, 494 F.3d 1231, 1235–36 (9th Cir. 2007) (per curiam) (quoting Walters v. Maass, 45 F.3d 1355, 1358–59 (9th Cir. 1995)).*

52.    On its face, SB 406 is an absolute contradiction with the intent of NRS 293.274, allowing the public to observe election operations. Furthermore, SB 406, deliberately creates a classification of a crime, for lawful oversight on the subjective view of a purported victim of whether that victim felt intimidation or undue influence.

53.    The sole purpose behind NRS 293.274 is to allow for public oversight and transparency over elections, and the ability for public poll observers (along with ballot processing location observers) to enable corrective measures be taken when there are deviations from lawful election processes.

54.    SB 406 subverts the purpose of NRS 293.274 by criminalizing legal behavior focusing not on the intent to ensure "elections officials" take corrective measures when there is a deviation from the legal standards- but on whether the person corrected for said deviation, feels "intimidated" by ensuring they to do so.

55.    This statutory provision not only imposes its own state of mind requirement, but also requires that the underlying predicate offense itself have a certain elevated state of mind. Shifting the burden of proof of scienter on a Defendant is unconstitutional *ab initio.*

56.    The Supreme Court has held laws unconstitutional when they do not define offenses with enough specificity. *Lanzetta v. New Jersey, 306 U.S. 451 (1939); Edelman v. California, 344 U.S. 357 (1953).*

57.     A statute may be so vague or threatening to constitutionally protected activity that it can be pronounced wholly unconstitutional; i.e., unconstitutional on its face. *Papachristou v. City of Jacksonville*, *405 U.S. 156 (1972).*

58.     SB 406 not only criminalizes the legally authorized conduct enabled in NRS 293.274, it also makes it a Category E felony to engage in the very purpose NRS 293.274 exists.

59.     Plaintiffs seek a declaration from this Court affirming that SB 406 subsection 1 and 2 are unconstitutional under the 1st Amendment and Due Process clause of the 5th and 14th Amendment.

60.     To prevent, wrongful prosecution under SB 406, Plaintiffs seek to have their and others rights protected from alleged criminal conduct and request a permanent injunction against future enforcement of subsections 1 and 2 of SB 406.

**NATURE OF ACTION AND JURSIDICTION**

61.     This is a civil action under 42 U.S.C § 1983 seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States and for refusing or neglecting to prevent such deprivations and denials to Plaintiffs.

62.      Plaintiffs' claims arise under the Constitution and laws of the United States. This Court has jurisdiction over these claims under 28 U.S.C. §§ 1331, 1343(a)(3).

63.     This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. § 2201-2202 and Fed. R. Civ. P. 57 and 65. The federal rights asserted by Plaintiffs are enforceable under 42 U.S.C. § 1983.

64.     Venue is proper in the District of Nevada under 28 U.S.C. § 1391(e).

65.     Plaintiffs reside both in Washoe and Clark Counties.

**THE PARTIES**

PLAINTIFFS

66.     Plaintiff ALEXANDREA SLACK, is a citizen of the United States and was, at all times relevant herein, a resident of Clark County.

67.     Plaintiff SUSAN VANNESS[8] is a citizen of the United States and was, at all times relevant herein, a resident of Washoe County.

68.     Plaintiff MARTIN WALDMAN is a citizen of the United States and was, at all times relevant to the complaint, a resident of Clark County.

69.     Plaintiff ROBERT BEADLES is a citizen of the United States and was, at all times relevant herein, a resident of Washoe County[9].

70.     All Plaintiffs herein were previously poll observers, ballot runners, or ballot counting rooms observers and are lawful election observers in their respective counties and have standing as lawful public election observers classified under NRS 293.274.

71.     Prior to the passage of SB 406, all of the named Plaintiffs intended on again working as poll observers, ballot runners, counting room observers or lawful election observers.

72.     As a direct result of the passage of SB 406, and the concern of the vagueness, the unknown applicability of the law, and the perimeters of what type of action or inaction the law penalizes, specifically what conduct could be construed as intimidating or not, each of the Plaintiffs herein will no longer subject themselves to even a slightly marginal or probable

---

[8] In addition to being a lawful public observer of the ballot counting rooms, Plaintiff Susan Vanness was also employed by the Washoe County Registrar of Voters in 2022 as a "ballot runner".

[9] In addition to being a lawful public observer of the ballot counting rooms, Plaintiff Robert Beadles was also hired by the Washoe County Registrar of Voters in 2022 as an election intake specialist.

prosecution for undefined offenses, nor will they participate in their constitutional rights during any future elections, commencing with the upcoming primary and general elections of 2024.

73.     Plaintiffs have valid, reasonable and reliable concerns, based on the Nevada Attorney General's previous threats, in 2020, to prosecute poll watchers/ election observers as voter intimidators, that they refuse to subject themselves to future prosecution by participating in a constitutionally and statutorily protected right and have no intent in engaging in poll watching/election observing, as they previously have, in the 2024 election year.

74.     Plaintiffs' have meritorious and valid concerns that by exercising their constitutional rights during the course of poll watching/observing, election watching/observing and voicing dissent to actions they observe, they will be subject to penalty for "intimidation" or allegations of "intent to interfere" with an election and be subjected to criminal prosecution under SB 406.

75.     Plaintiffs' have valid concerns that constitutional acts and first amendment communications they are entitled to engage in during the course and scope of poll watching/observing and election watching/observing will be adversely construed against them as behavior for the purpose of intimating or coercing poll workers and subject them to criminal prosecution for said constitutional acts.

76.     In fact, Plaintiff Beadles, by exercising his First Amendment right to petition the Government for a redress of grievances, through litigating a case in the Second Judicial District Court, is being subjected to a Motion for civil sanctions, for daring to question whether the Washoe County Register of Voters broke election laws in the State of Nevada.

77.    Since SB 406, lacks specificity and isn't narrowly tailored, under SB 406 subsection 2, Beadles may be subject to prosecution for attempting to interfere with an election simply for utilizing the Courts for redress.

78.    Furthermore, taking into consideration the Attorney General's comments insinuating that poll watchers were instructed to engage in voter intimidation during the 2020 election, Plaintiffs have a well-founded fear that innocent actions such as poll/election day observing could precipitate mistaken enforcement of a subjective view of intimidation.

79.    Plaintiffs are in imminent danger of sustaining a direct injury as a result of protected First Amendment communications that may be perceived by the recipient that such acts are intimidating or intended to interfere with the election officials duties.

80.    It is clear that based on the Attorney General's comments concluding that benign statements from the President in 2020 to poll watchers, that Plaintiffs belief that prosecution of perceived "intimidation" or "intent to interfere" is neither imaginary nor speculative. A unilateral statement as such from the Attorney General of Nevada regarding voter intimidation resonates identically as applied to "election officials".

81.    In fact, blanket statements such as the statement that Attorney General Ford made is precisely what voter intimidation is and intimidation of poll watchers, using his position of power as the Attorney General of Nevada to intimidate individuals and preclude them from exercising their constitutional rights to observe free and fair elections.

82.    In reality, Ford's statements intimidating poll watchers is precisely the type of act which is prohibited and prosecutable under SB 406.

83.    It is irrefutable that the purpose of Ford's baseless statement in 2020 was for the purpose of intimidating poll watchers/observers.

84.     SB 406 subjects the Plaintiffs to many different injuries, each of which are concrete and particularized actual or imminent, fairly traceable to the challenged action of the defendant, and the injury Plaintiff complains of will be redressed by a favorable decision.

DEFENDANTS

85.     Defendant FRANCISCO V. AGUILAR, named in his official capacity, is at all times relevant to this complaint, the Secretary of State of Nevada, and the chief elections officer of the State.

86.     Defendant JOSEPH M. LOMBARDO, named in his official capacity, is at all times relevant to this complaint, the Governor of the State of Nevada.

87.     At all times pertinent herein, Defendants were agents, servants, employees, or joint venturers of every other Defendant, and at all times mentioned herein were acting within the scope and course of said agency, employment, or joint venture, with knowledge and permission and consent of all other named Defendants. Whenever and wherever reference is made in this Complaint to any acts by Defendants, such allegations and references shall also be deemed to mean the acts of each Defendant acting individually, jointly or severally.

88.     All of the actions taken by Defendants and/or those acting on behalf of Defendants and referred to herein, were done by Defendants while acting under color or state of law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of the United States.

89.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 100, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE is responsible in some

manner for the events and happenings herein referred to. As such, Plaintiffs will seek leave of Court to amend this Complaint to insert the true names and capacities of said Defendant as they become identified.

## **CLAIMS FOR RELIEF**

### **FIRST CLAIM FOR RELIEF**
### **VIOLATION OF THE FIRST AMENDMENT – FREE SPEECH CLAUSE-OVERBREADTH**
### (*Against All Defendants*)

90.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

91.     Plaintiffs hereon allege that based on the unilateral subjective determination by the Attorney General, in 2020, that poll watchers were instructed to engage in voter intimidation, and were threatened with prosecution, an act that allows a subjective interpretation of intimidation, chills their constitutionally protected conduct.

92.     The Free Speech Clause of the First Amendment provides that the government "shall make no law . . . abridging the freedom of speech.". *U.S. CONST. amend. I.* A regulation of speech is unconstitutionally overbroad if it regulates a substantial amount of constitutionally protected expression.

93.      Defendants may restrict speech "in a few limited areas," including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct.  *United States v. Stevens, 559 U.S. 460 (2010).* Furthermore, the First Amendment protects against the government; it does not leave us at the mercy of *noblesse oblige.*

94.     The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere. *Ashcroft v. Free Speech Coal., 535 U.S. 234, 244 (2002).*

95.    Facial overbreadth challenges are permitted because an overly broad statute may chill the speech of individuals, including individuals not named herein. *Massachusetts v. Oakes, 491 U.S. 576, 581 (1989).*

96.    SB 406 violates the First Amendment's prohibition against government abridgment of speech because it overbroadly criminalizes speech that civil remedies can sufficiently address.

97.    Plaintiffs allege herein that there are no set of circumstances under which subsections 1 and 2 SB 406, would be withstand facial challenges.

98.    Plaintiffs allege herein that SB 406 was clearly passed to stifle free speech and election oversight since there are adequate remedies to serve the protected class of SB 406 through NRS 200.571, NRS 207.190, and NRS 199.300, rendering it duplicative and unconstitutional.

99.    Plaintiffs further allege that subsections 1 and 2 SB 406 lack any plainly legitimate sweep and a substantial number of SB 406's applications are unconstitutional, judged in relation to SB 406's attempted legitimate sweep.

100.    Plaintiffs further allege that the overbroad nature of subsections 1 and 2 of SB 406 infringe on a substantial amount of constitutionally protected speech since there is a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of Plaintiffs and similarly situated individuals not before the Court.

101.    Plaintiffs further allege that the statute is "susceptible of regular application to protected expression, and criminal liability automatically attaches to that protected expression as many commonplace statements and actions could be construed as intimidating in a highly subjective context.

102.    Plaintiffs further allege that the precedent that Attorney General Ford set in 2020, subjectively characterizing Trump's instruction to poll watchers as voter intimidation, demonstrates the danger of prosecution of protected speech.

103.    Plaintiffs further allege that subsections 1 and 2 of SB 406 deliberately criminalizes a behavior that NRS 293.274 authorizes and encourages.

104.    Plaintiffs further allege that subsections 1 and 2 of SB 406, shifts the burden of proof of scienter for the criminal offense on an individual charged with the crime, making it facially unconstitutional.

105.    Accordingly, Plaintiffs seek to invalidate the statute, in its entirety as Defendants enactment of same violates the First Amendment of the US Constitution.

106.    All of the actions taken by Defendants and/or those acting on behalf of Defendants and referred to herein, were done by Defendants while acting under color or state of law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of the United States.

107.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing subsection 1 and 2 of SB 406

108.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the SB 406.

109.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF FIFTH AND FOURTEENTH AMENDMENT**
**SUBSTANTIVE DUE PROCESS RIGHTS-VAGUENESS**
*(Against All Defendants)*

110.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

111.    Plaintiffs are entitled to constitutional protection for certain rights or "liberty interests" related to speech under the Due Process clause of the Fourteenth Amendment.

112.    Plaintiffs' right to due process includes protection against the ills of laws whose 'prohibitions are not clearly defined.' *" Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 62 (1st Cir. 2011) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ).*

113.    Plaintiffs right to due process includes protections from a subjective and arbitrary designation by the Attorney General of Nevada, on what poll watchers' intent is as he set the precedent in 2020, by qualifying poll watching as voter intimidation.

114.    Plaintiffs are entitled to a 'fair warning' of what a law prohibits to prevent 'arbitrary and discriminatory enforcement' of laws by requiring that Defendants provide explicit standards for those who apply them.

115.    Nevada already has laws that protect individuals from intimidation and harassment, rendering SB 406 unnecessary and duplicative, specifically and to wit: NRS 200.571 entitled *Harassment*; NRS 207.190 entitled *Coercion* and, NRS 199.300 entitled *Intimidating public officer, public employee, juror, referee, arbitrator, appraiser, assessor or similar person.*

116.    Plaintiffs are entitled to engage in conduct without criminal prosecution of basic First Amendment freedoms under a statute that should avoid chilling the exercise of First Amendment rights to free speech.

117.     As drafted, SB 406 fails to provide clear definitions nor does it provide a fair warning of what is contemplated to be criminal activity or prohibited conduct.

118.     Plaintiffs therefore bring this facial challenge to subsection 1 and 2 of SB 406 as to be codified in Chapter 293 as it violates their due process rights in the United States Constitution.

119.     Plaintiffs therefore bring this facial challenge to subsection 1 and 2 of SB 406 as it shifts the burden of proving scienter under the offense on a Defendant and is accordingly facially unconstitutional.

120.     Accordingly, Plaintiffs seek to invalidate subsections 1 and 2 of SB 406 as Defendants enactment of same violates the First, Fifth and Fourteenth Amendments of the United States Constitution.

121.     All of the actions taken by Defendants and/or those acting on behalf of Defendants and referred to herein, were done by Defendants while acting under color or state of law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of the United States.

122.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing these portions of SB 406

123.      Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of subsections 1 and 2 of SB 406.

124.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF THE NEVADA CONSTITUTION
### ARTICLE I DECLARATION OF RIGHTS
### (*Against All Defendants*)

125.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

126.    Since 1864, the Nevada Constitution has provided intrinsic and unalienable rights and liberties to its citizens.

127.    Chief among those rights and liberties are those found in Article 1 of the Nevada Constitution.

128.    Article 1, §1 of the Nevada Constitution provides, in pertinent part: "[A]ll men are by Nature free and equal and have certain inalienable rights among which are those of enjoying and defending life and liberty; Acquiring, Possessing and Protecting property and pursuing and obtaining safety and happiness[.]

129.    Similarly, Article I, §8 provides No person shall be deprived of life, liberty, or property, without due process of law.

130.    Plaintiffs right to engage in election oversight and ensure election integrity in the State of Nevada, cannot come at the cost of being subject to a fear of prosecution under vague criminal laws.

131.    Plaintiffs' right to exercise redress of "election officials" cannot be stifled by threat of prosecution for doing so as Attorney General Ford has already done in 2020.

132.    Plaintiffs have a right to be free from prosecution for a criminal law that is not narrowly tailored to meet a compelling government interest.

133.    Plaintiffs have a right to be free from prosecution for a criminal law that is not duplicative with motive to stifle constitutionally protected behavior.

134.     Defendants' arbitrary inclusion of the terms "intimidation" and "undue influence" interferes with Plaintiffs' rights and liberties as set forth under Article 1, §1 of the Nevada Constitution.

135.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing those vague and overbroad subsections in SB 406 codified in NRS Chapter 293.

136.     Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are entitled to an award of attorney's fees thereon.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully demand that this Court grant the following relief.

1.     Declaratory Relief declaring SB 406 subsections 1 and 2, unconstitutional under the First and Fourteenth Amendments.

2.     An Order striking all or parts of SB 406 for being vague, overboard and not narrowly tailored to serve a compelling government interest.

3.     An immediate hearing on Plaintiffs' Motion for Temporary Restraining Order, and, upon hearing, enter an Order restraining Defendants from enforcing subsections 1 and 2 of SB 406 as codified in NRS Chapter 293.

4.     Permanently enjoin Defendants and all persons and entities in active concert or participation with Defendants from enforcement of subsections 1 and 2 of SB 406, codified in NRS Chapter 293.

5.     Permanently enjoin Defendants and all persons and entities in active concert or participation with Defendants from enforcing criminal penalties included in subsection 4 of SB 406 codified in NRS Chapter 293.

6.      For an award of reasonable attorney's fees and his costs on their behalf expended as to such Defendants pursuant to 42 U.S.C. Section 1988.

7.      Such other relief as the Court deems just and proper.

Dated this  2nd  day of November, 2023.

CHATTAH LAW GROUP

*/s/ Sigal  Chattah*
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #204
Las Vegas, Nevada 89118
Tel.:(702) 360-6200
Attorney for Plaintiffs
*Susan Vanness Et Al*