AARON D. FORD
  Attorney General
JESSICA E. WHELAN (Bar No. 14781)
  Senior Deputy Attorney General
KIEL B. IRELAND (Bar No. 15368)
  Deputy Solicitor General
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
T: (775) 684-1100
E: jwhelan@ag.nv.gov
      kireland@ag.nv.gov

*Attorneys for Governor Lombardo*

AARON D. FORD
  Attorney General
LAENA ST-JULES (Bar No. 15156)
  Senior Deputy Attorney General
Office of the Attorney General
100 North Carson Street
Carson City, Nevada 89701-4717
T: (775) 684-1100
E: lstjules@ag.nv.gov

*Attorneys for Secretary Aguilar*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SUSAN VANNESS, an individual, ALEXANDREA SLACK, an individual, MARTIN WALDMAN, an individual, ROBERT BEADLES, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> FRANCISCO V. AGUILAR, in his official capacity as Nevada Secretary of State, JOSEPH M. LOMBARDO, in his official capacity as Governor of the State of Nevada, DOES I-X, inclusive; ROE CORPORATIONS 11-20, inclusive, <br><br> Defendants. | Case No. 2:23-cv-01009-CDS-VCF <br><br> **DEFENDANTS GOVERNOR LOMBARDO AND SECRETARY AGUILAR'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

Defendants Joseph M. Lombardo, in his official capacity as Governor of the State of Nevada ("Governor Lombardo"), and Francisco V. Aguilar, in his official capacity as Nevada Secretary of State ("Secretary Aguilar" and together with Governor Lombardo,

1  "Defendants"), move to dismiss Plaintiffs Susan Vanness, Alexandrea Slack, Martin

2  Waldman, and Robert Beadles' ("Plaintiffs") Amended Complaint [Second] ("SAC") (ECF

3  No. 22) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject-

4  matter jurisdiction and 12(b)(6) for failure to state a claim.

5  ## I.    INTRODUCTION

6       This case concerns Senate Bill 406 of the 82nd Legislative Session ("SB 406"), which

7  was enacted in the wake of extreme turnover in elections officials across the state, due in

8  part to harassment and death threats.  *Minutes of the Senate Committee on Legislative*

9  *Operations and Elections*, 82d Sess., 2–3, 12 (Nev. Apr. 11, 2023) (statements of Gabriel Di

10  Chiara and Amy Burgans), https://tinyurl.com/SB406Mins [hereinafter *Senate Committee*

11  *Minutes*].  Plaintiffs claim that portions of SB 406 are unconstitutional.

12       On October 20, 2023, the Court dismissed Plaintiffs' Amended Complaint [First]

13  ("FAC"), ECF No. 9, based on Plaintiffs' failure to demonstrate standing, Order Granting

14  Defendants' Motion to Dismiss and Denying Plaintiffs' Motion for Preliminary Injunction

15  ("Order"), ECF No. 21.  The Court held that Plaintiffs did not allege that they intended to

16  engage in conduct proscribed by Senate Bill 406 of the 82nd Legislative Session ("SB 406"),

17  that there was a credible threat of prosecution, or that they would be dissuaded from

18  returning as poll workers in future elections.  *Id.*  The Court granted leave to amend, *id.*,

19  and on November 2, 2023, Plaintiffs filed their SAC.

20       The SAC does not correct the standing problems that the Court identified in its

21  Order.  Plaintiffs have not identified conduct covered by SB 406 that they would have

22  engaged in but for its enactment or any credible threat of prosecution.  Moreover, the SAC

23  does not remedy the additional defects Defendants identified in their prior motion to

24  dismiss, which defects the Court did not reach in its Order.  Plaintiffs cannot overcome the

25  Eleventh Amendment's bar precluding their claims against Defendants, and they have not

26  stated any claim.  Plaintiffs' first claim for overbreadth must be dismissed because

27  Plaintiffs have shown they are unable to articulate any protected speech that SB 406

28  prohibits.  Plaintiffs' second claim for vagueness fails because Plaintiffs have not—and

cannot—point to anything vague in SB 406.  Plaintiffs' third claim for vagueness based on the Nevada Constitution fails for the same reason.  Even after an opportunity to correct the deficiencies in the FAC, Plaintiffs' SAC is devoid of any factual substance that would entitle it to proceed, and it should be dismissed without leave to amend.

## II.    BACKGROUND

### A.    Overview

The Nevada Legislature enacted SB 406 to "provide additional protection for election workers" and reverse the "unbelievable turnover of election officials in elected and administrative positions over the last four years." *Senate Committee Minutes*, *supra*, at 2–3.  Section 1 provides:

> 1. It is unlawful for any person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence with the intent to:
>    (a) Interfere with the performance of the duties of any elections official relating to an election; or
>    (b) Retaliate against any elections official for performing duties relating to an election.

SB 406 § 1(1).  The statute defines "elections official" as:

> (1) The Secretary of State or any deputy or employee in the Elections Division of the Office of the Secretary of State who is charged with duties relating to an election;
> (2) A registrar of voters, county clerk, city clerk or any deputy or employee in the elections division of a county or city who is charged with elections duties; or
> (3) An election board officer or counting board officer.

*Id.* § 1(6)(b).  A person who violates section 1 is guilty of a category E felony.  *Id.* § 1(4).

Plaintiffs initiated this action in this Court, and they allege that they are former poll observers, ballot runners, election intake specialists, or ballot counting room observers.  SAC ¶¶ 66–70.  Plaintiffs contend that SB 406 "obstruct[s] the purpose of election observers."  *Id.* ¶ 26.  By statute, members of the public can "observe the conduct of voting at a polling place," NRS 293.274(1), 293C.269(1), "the handling of ballots," NRS 293B.330(4), 293C.630(4), "the counting of ballots at a central counting place," NRS 293B.353(1), "the delivery, counting, handling and processing of ballots at a polling place, receiving center or central counting place," NRS 293B.354(1), and "the counting area

1    where computers are located during the period when ballots are being processed,"
2    NRS 293B.380(2)(a).

3         However, the ability to observe is not without limitation.  For instance, poll observers
4    cannot "[a]rgue for or against or challeng[e] any decisions of county or city election
5    personnel," NAC 293.245(2)(a)(4); and persons observing the processing and counting of
6    ballots cannot "[t]alk[] to workers within the central counting place other than the county
7    or city clerk or a person designated by the county or city clerk to address questions from
8    observers," NAC 293.356(2)(a)(1).  Thus, while volunteer observers are permitted to observe
9    certain election processes, there is nothing that permits them to, for example, insist that
10   elections officials take corrective measures, as Plaintiffs appear to argue.  *See* SAC ¶¶ 52–
11   54.  SB 406 in no way contradicts the purposes of election observer statutes.

12        **B.    The SAC**

13        Plaintiffs filed their SAC after the Court dismissed the FAC based on Plaintiffs'
14   failure to demonstrate standing.  Plaintiffs' SAC is highly similar to the FAC.  Defendants
15   Governor Lombardo and Secretary Aguilar are named in their official capacities, FAC ¶¶
16   52–56; SAC ¶¶ 85–88, and Plaintiffs challenge SB 406 on three grounds:  overbreadth
17   under the federal Constitution, vagueness under the federal Constitution, and vagueness
18   under the Nevada Constitution.  FAC ¶¶ 41–45, 58, 75–77, 90–91; SAC ¶¶ 61–65, 92, 111–
19   15, 129–30.

20        The majority of the changes to the SAC relate to two things.  First, Plaintiffs claim
21   that as a result of SB 406, they will no longer engage in poll or election observation.  *See*
22   SAC ¶¶ 4, 8–9, 71–73.  Second, Plaintiffs attempt to establish a credible threat of
23   prosecution based on (1) a September 29, 2020 tweet from Nevada Attorney General Aaron
24   Ford (a non-party to this litigation), which stated "Trump also told 'his supporters' to 'go
25   into the polls and watch very carefully.'  But he wasn't talking about poll watching.  He
26   was talking about voter intimidation.  FYI -- voter intimidation is illegal in Nevada.
27   Believe me when I say it: You do it, and you will be prosecuted," *see id.* ¶¶ 6–7, 29, 36–39,
28   43–45, 50, 73, 78, 80–83, 91, 102, 113; and (2) a motion for sanctions pursuant to Nev. R.

Civ. P. 11 in an unrelated case brought by Plaintiff Beadles against Washoe County and others (Motion for Sanctions, *Beadles v. Rodriguez*, Case No. CV23-01341 (Nev. Dist. Ct. Sept, 11, 2023) ("Motion for Sanctions")),[1] *see id.* ¶¶ 10–11, 76–77.

## III. LEGAL STANDARDS

### A. Lack of Subject-Matter Jurisdiction

Subject matter jurisdiction is "the court's statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis omitted). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Rule 12(h)(3). "[T]he subject matter jurisdiction of the district court is not a waivable matter and may be raised at any[ ]time by one of the parties, by motion or in the responsive pleadings, or *sua sponte* by the trial or reviewing court." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194 n.2 (9th Cir. 1988).

### B. Failure to State a Claim

Rule 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It must also contain "more than labels and conclusions, and a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level" and "nudge[] [plaintiffs'] claims across the line from conceivable to plausible." *Id.*, 550 U.S. at 555, 570. Courts will "discount[] conclusory statements, which are not entitled to the

///

---

[1] A copy of the Motion for Sanctions is attached as Exhibit 1. The Court may take judicial notice of the Motion for Sanctions without converting this Motion to Dismiss into a motion for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Judicial notice is appropriate because the contents of the Motion for Sanctions "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* at 999 (citing Fed. R. Civ. Evid. 201(b)(1)–(2)). Moreover, the Court may consider the Motion for Sanctions in this Motion to Dismiss because Plaintiffs refer extensively to it in their SAC and rely on it to support their claims, and the Motion for Sanctions is therefore incorporated by reference into the SAC. *See id.* at 1002.

presumption of truth, before determining whether a claim is plausible." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

## IV.    ARGUMENT

### A.    Plaintiffs Still Do Not Have Standing to Bring Their Claims

Federal courts lack jurisdiction to consider claims where a plaintiff lacks standing. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) (citation omitted). To establish the irreducible constitutional minimum of standing, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs' SAC does not address the failings that the Court identified in its Order.

#### 1.    Plaintiffs Have Not Alleged an Injury-in-Fact

To establish an injury-in-fact in this pre-enforcement action, Plaintiffs must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). The Ninth Circuit looks to three factors to determine whether there is a credible threat: "[1] whether the plaintiffs have articulated a concrete plan to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute." *Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1210 (9th Cir. 2022).

Plaintiffs claim that they will not participate as poll or election observers based on SB 406. *See* SAC ¶¶ 4, 8–9, 71–73. They therefore are claiming as an injury that the exercise of their constitutional rights has been chilled. *See id.* ¶¶ 91, 94. Self-censorship can be an adequate injury for purposes of standing, but a plaintiff may not "challenge the constitutionality of a statute on First Amendment grounds by nakedly asserting that his or her speech was chilled by the statute. The self-censorship door to standing does not open

for every plaintiff." *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003); *see also Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm . . . ."). Instead, a "plaintiff must have an actual and well-founded fear that the law will be enforced against him or her." *Getman*, 328 F.3d at 1095. (internal quotation marks and alterations omitted). If a statute does not cover a plaintiff's intended conduct, there is no standing. *See id.*

Plaintiffs have not identified any poll observer activity that they would have engaged in but that would now subject them to criminal prosecution under SB 406. As with the FAC, Plaintiffs in their SAC "at no point allege that they intend or plan to engage in behavior for the purpose of intimidating or coercing poll workers." Order at 7. This is fatal to their claim of injury. *See Lopez v. Candaele*, 630 F.3d 775, 791 (9th Cir. 2010) (holding that a plaintiff must allege an intent to engage in expressly forbidden conduct).

Plaintiffs cannot escape this by pointing to the Motion for Sanctions against Beadles or Attorney General Ford's September 2020 tweet. The Motion for Sanctions is a motion made in the normal course of civil litigation, authorized pursuant to Nev. R. Civ. P. 11 when a party's claims and legal contentions are frivolous and the factual contentions lack evidentiary support, and when a complaint is presented for an improper purpose. *See* Ex. 1. There is no threat of criminal prosecution in the Motion for Sanctions, and it is irrelevant.

Attorney General Ford's tweet also does not establish any credible threat of prosecution. As an initial matter, the tweet was entirely unrelated to SB 406. There are no allegations of a threat to enforce SB 406. Further, Attorney General Ford distinguished between poll watching and voter intimidation and explained that the latter was illegal and would be prosecuted. *See* SAC ¶ 36. There was no threat that legal poll watching would be prosecuted based on voter intimidation. And there was no statement that all poll watchers automatically were in violation of voter intimidation statutes. "[G]eneral threats by officials to enforce those laws which they are charged to administer do not create the necessary injury in fact." *Lopez*, 630 F.3d at 787 (internal quotation marks and alteration

omitted); *see also Rincon Band of Mission Indians v. San Diego County*, 495 F.2d 1, 4 (9th Cir. 1974) (Sheriff's and sheriff's department's statements that all gambling was illegal and all laws would be enforced insufficient to establish justiciable case or controversy).

Even if all of that were not true, Plaintiffs' own allegations belie their assertions that the tweet constituted a credible threat of prosecution for legal observation activities. If they truly feared prosecution based on the tweet, Plaintiffs would not have intended to serve as poll observers after the tweet. But Plaintiffs state that they intended to work "as poll observers, ballot runners, counting room observers or lawful election observers" prior to the passage of SB 406, so the tweet was immaterial to their assessment of a credible threat of prosecution. *Id.* ¶ 71. Indeed, Plaintiffs Beadles and Vanness allege that they participated as an election intake specialist and a "ballot runner" respectively in 2022, after the tweet, in addition to participating as public observers. *Id.* ¶¶ 67 & n.8, 69 & n.9. Even more critically, Plaintiffs do not allege that any poll observer was criminally prosecuted after the tweet.

## 2. Plaintiffs Also Have Not Alleged Traceability

Plaintiffs also fail to establish traceability. Plaintiffs bear the burden of establishing "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (alterations, internal quotation marks, and citation omitted). The potential injury for a pre-enforcement challenge is directly tied to the threat of prosecution. *See Driehaus*, 573 U.S. at 159. However, Plaintiffs have not alleged that Defendants have any enforcement power and have therefore failed to show that any potential injury could be fairly traceable to Defendants' actions.

///

///

///

///

1

**B.    The Eleventh Amendment Bars This Lawsuit against Defendants**

2

**1.    Plaintiffs' Federal Claims Must Be Dismissed Because**

3

**Defendants Are Not Proper Parties**

4

The Eleventh Amendment bars lawsuits in federal court against states, unless they

5

consent to suit or Congress has abrogated the immunity. *Green v. Mansour*, 474 U.S. 64,

6

68 (1985). The immunity extends to state officials acting in their official capacity because

7

a suit against them is considered a suit against the state itself. *Will v. Michigan Dept. of*

8

*State Police*, 491 U.S. 58, 71 (1989). Nevada has not waived its Eleventh Amendment

9

immunity. NRS 41.031(3).

10

Under *Ex parte Young*, 209 U.S. 123 (1908), an exception to Eleventh Amendment

11

immunity exists that "allows citizens to sue state officers in their official capacities 'for

12

prospective declaratory or injunctive relief . . . for their alleged violations of federal law.'"

13

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir.

14

2013) (citation omitted).[2]  To fall under this exception, the state officer defendant "must

15

have some connection with the enforcement of the act, or else it is merely making him a

16

party as a representative of the state, and thereby attempting to make the state a party."

17

*Ex parte Young*, 209 U.S. at 157. "That connection 'must be fairly direct; a generalized duty

18

to enforce state law or general supervisory power over the persons responsible for enforcing

19

the challenged provision will not subject an official to suit.'" *Eleveurs*, 729 F.3d at 943

20

(citation omitted). Notably, a Governor who only has a general duty to enforce a state's

21

laws is entitled to Eleventh Amendment immunity. *Id.*

22

The SAC lacks any allegation that shows that Defendants enforce SB 406. Plaintiffs

23

have therefore failed to establish an exception to the Eleventh Amendment's bar, and their

24

first two claims brought pursuant to federal law must be dismissed. *See Nat'l Audubon*

25

26

27

28

---

[2] This exception does not apply to claims for damages; "State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27, 30 (1991) (explaining that "the Eleventh Amendment bars suits in federal court 'by private parties seeking to impose a liability which must be paid from public funds in the state treasury'"). While the SAC's "Requested Relief" section does not include a request for damages, SAC at 25–26, the SAC does otherwise refer to seeking damages, *id.* at 2, ¶ 61. To the extent Plaintiffs seek damages, their claims are barred by the Eleventh Amendment.

1    *Soc'y v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002) (barring suit against Governor and state

2    Secretary of Resources under the Eleventh Amendment because there had been no showing

3    they had requisite enforcement connection).

4        **2.    Plaintiffs' State-Law Claim Is Entirely Barred by the Eleventh**

5            **Amendment**

6        Plaintiffs' third claim asserts a violation of the Nevada Constitution. SAC ¶¶ 125–

7    36. That claim must be dismissed as barred by the Eleventh Amendment. *Spoklie v.*

8    *Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005) (holding that Eleventh Amendment barred

9    claim of violation of right under Montana Constitution). *Ex parte Young* does not save the

10   state claim; it "allows prospective relief against state officers only to vindicate rights under

11   federal law." *Id.* 42 U.S.C. § 1983 similarly only applies to federal rights and cannot be

12   the basis for a claim based on a state constitution. *Iratcabal v. Nevada*, No. 3:12-cv-481,

13   2013 WL 5408864, at *4 (D. Nev. Sept. 25, 2013); *see Ybarra v. Bastian*, 647 F.2d 891, 892

14   (9th Cir. 1981).

15       **C.    Even if Plaintiffs Had Standing, and Even if the Eleventh Amendment**

16           **Did Not Bar Plaintiffs' Claims, Their Claims Fail to State a Claim**

17       **1.    Plaintiffs' First Claim Must Be Dismissed Because Plaintiffs Do**

18           **Not Identify Any Protected Speech that SB 406 Prohibits**

19       Plaintiffs' first claim is a facial overbreadth challenge to SB 406 based on the First

20   Amendment. SAC ¶¶ 90–109. To succeed on their facial overbreadth challenge, Plaintiffs

21   must "demonstrate[] that the statute 'prohibits a substantial amount of protected speech'

22   relative to its 'plainly legitimate sweep.'" *United States v. Hansen*, 599 U.S. 762, 770 (2023)

23   (citation omitted). "[A] law's unconstitutional applications must be realistic, not fanciful,

24   and their number must be substantially disproportionate to the statute's lawful sweep."

25   *Id.* Notably, "[a]ctivities that injure, threaten, or obstruct are not protected by the First

26   Amendment, whether or not such conduct communicates a message." *United States v.*

27   *Grider*, 617 F. Supp. 3d 42, 52 (D.D.C. 2022); *see Hansen*, 599 U.S. at 783 ("Speech intended

28   to bring about a particular unlawful act has no social value; therefore, it is unprotected.").

1    "Invalidation for overbreadth is strong medicine that is not to be casually employed."

2    *United States v. Williams*, 553 U.S. 285, 293 (2008) (internal quotation marks and citation

3    omitted).

4            "The first step in overbreadth analysis is to construe the challenged statute . . . ."

5    *Id.*  The challenged provisions of SB 406 prohibit individuals from taking specified actions

6    with an intent to either interfere with an elections official's performance of duties or to

7    retaliate against an elections official for performing his or her elections duties.  The plainly

8    legitimate sweep of SB 406 is therefore to prevent interruption of and interference with

9    important elections-related work.

10            SB 406's application is sharply limited.  First, SB 406 only applies when a person

11    takes action in connection with an "elections official," as defined in section 1(6)(b) of SB 406.

12    While Plaintiffs contend that the definition is vague and overbroad, *see* SAC ¶¶ 16, 21, the

13    list in section 1(6)(b) is exclusive.  *See State v. Javier C.*, 128 Nev. 536, 541, 289 P.3d 1194,

14    1197 (2012) ("Nevada follows the maxim 'expressio unius est exclusion alterius,' the

15    expression of one thing is the exclusion of another."); *Silvers v. Sony Pictures Ent., Inc.*, 402

16    F.3d 881, 885 (9th Cir. 2005) ("The doctrine of *expressio unius est exclusion alterius* 'as

17    applied to statutory interpretation creates a presumption that when a statute designates

18    certain persons, things, or manners of operation, all omissions should be understood as

19    exclusions.'").

20            Second, SB 406 requires a defendant to have the specific intent to either interfere

21    with an elections official's performance of duties or retaliate against an elections official for

22    his or her performance of duties.  A person who tries to unduly influence an elections official

23    with an intent to cause the elections official to change the contents of his will or sell her

24    business, for instance, would not be subject to criminal liability under SB 406.

25            Third, the Supreme Court recently addressed the *mens rea* requirement for true

26    threats of violence, which do not enjoy First Amendment protection.  In *Counterman v.

27    Colorado*, 600 U.S. 66 (2023), the Court held that Colorado was required to show that a

28    defendant was reckless in making true threats, i.e., that the defendant was "aware 'that

others could regard his statements as' threatening violence and 'deliver[ed] them anyway,'" to criminally prosecute the defendant. *Id.* at 79, 82 (citation omitted). This holding provides an additional limitation on SB 406's application.

Fourth, Plaintiffs claim that other statutes cover activities proscribed by SB 406, making SB 406 "duplicative and unconstitutional." SAC ¶ 98. That has nothing to do with overbreadth. And there is nothing impermissible about having criminal statutes that overlap; criminal defendants can be found guilty of lesser-included offenses. *See, e.g.*, NRS 175.501 ("The defendant may be found guilty . . . of an offense necessarily included in the offense charged . . . ."); Fed. R. Crim. P. 31(c) (similar).

Finally, nothing in SB 406 shifts the burden of proving scienter to a defendant. *See* SAC ¶¶ 28, 55, 104, 119. Specific intent is an element of the crime that the prosecution must prove beyond a reasonable doubt. *United States v. Gilbert*, 813 F.2d 1523, 1530 (9th Cir. 1987).

Plaintiffs' inability to establish overbreadth is evident in the examples they cite in their SAC purporting to show that protected speech is criminalized. In paragraph 30, Plaintiffs posit that a "Rover" who confronts a ballot inspector over perceived wrongful action, "with the intent to have that wrongful conduct corrected" would be subject to criminal liability. In paragraph 31, Plaintiffs again posit a scenario inviting supposed liability where an individual confronts another "with an intent to correct." And in paragraph 54, Plaintiffs yet again reference taking corrective actions opening the door to liability. SB 406 requires an intent to interfere or retaliate, not to correct, and to support their overbreadth challenge, Plaintiffs must allege specific examples of protected speech filtered through these intents. *See Hansen*, 599 U.S. at 782. None of Plaintiffs' examples would meet the requirements for liability under SB 406. A calm and rational discussion with an elections official to explain a perceived wrong is perfectly permissible. What Plaintiffs may not do under SB 406 is, for example, threaten to injure an elections official in order to cause the elections official to perform his or her duties differently.

///

1           **2.**       **Plaintiffs' Second Claim Must Be Dismissed Because Plaintiffs**

2           **Do Not Identify Anything Vague in SB 406**

3           Plaintiffs' second claim asserts a facial challenge of SB 406 based on vagueness

4    under the Due Process Clause of the Fourteenth Amendment.[3]  SAC ¶¶ 110–24.  The void-

5    for-vagueness doctrine applies when a criminal law "fails to provide a person of ordinary

6    intelligence fair notice of what is prohibited, or is so standardless that it authorizes or

7    encourages seriously discriminatory enforcement."  *Williams*, 553 U.S. at 304.   "When a

8    statute clearly implicates free speech rights, it will survive a facial challenge so long as it

9    is clear what the statute proscribes in the vast majority of its intended applications."

10   *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1146 (9th Cir. 2009)

11   (internal quotation marks and citation omitted).  In assessing whether a law is vague in

12   the First Amendment context, "perfect clarity and precise guidance have never been

13   required."  *Williams*, 553 U.S. at 304 (citation omitted).  Nor does the ability to envision

14   close cases render a statute vague.  *Id.* at 305.  As with a facial overbreadth challenge,

15   facial invalidation based on vagueness "is, manifestly, strong medicine" and should be

16   employed "sparingly and only as a last resort."  *See Nat'l Endowment for the Arts v. Finley*,

17   524 U.S. 569, 580 (1998) (citations omitted).

18          Plaintiffs claim that SB 406 does not provide clear definitions.  *See* SAC ¶ 117.  They

19   appear to take issue with the terms "elections official," "intimidation," "undue influence,"

20   and "interfere."  *Id.* ¶¶ 16, 21, 26, 72, 134.  None of those terms are unconstitutionally

21   vague.

22          Plaintiffs allege that they do not know who qualifies as an "elections official."  *Id.* ¶¶

23   16, 21.  As previously discussed, "elections officials" are only those individuals specifically

24   identified in section 1(6)(b) of SB 406.  Elections observers are not "elections officials,"

25   regardless of Plaintiffs' attempts to equate them.  *E.g.*, *id.* ¶¶ 1, 23, 25.  Relatedly, Plaintiffs

26   also appear to claim that the lack of identification of individuals exempt from SB 406

27
28   [3] The heading for the second claim refers to the Fifth Amendment, but it has no application here. SAC at 22.  The Fifth Amendment's Due Process clause only applies to the federal government.  *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).

somehow renders the bill vague. *Id.* ¶ 21. It does not. No one is exempt. If a person takes any of the actions specified in SB 406 to interfere with or retaliate against an elections official, that person is in violation of SB 406, regardless of whether they themselves are an elections official. There is nothing vague about it; if anything, the lack of exemption makes the statute *less* vague.

Next, the Ninth Circuit has held that "intimidate" and "interfere" in criminal statutes are not void for vagueness. *Gilbert*, 813 F.2d at 1530 (concluding "intimidate" in a criminal statute did not render the unconstitutionally vague); *United States v. Gwyther*, 431 F.2d 1142, 1144 n.2 (9th Cir. 1970) ("'[I]nterfere' has such a clear, specific and well-known meaning as not to require more than the use of the word [itself] in a criminal statute."). And it has held that "legislation which proscribes the use of force or the threat of force," like SB 406, "should not be found to be void for vagueness." *Gilbert*, 813 F.2d at 1530. Even if the Ninth Circuit had not already spoken on these terms, the terms have plain and ordinary meanings, i.e., dictionary definitions, that save them from any vagueness challenge. *See Yates v. United States*, 574 U.S. 528, 535 (2015); *United States v. Shill*, 740 F.3d 1347, 1351 (9th Cir. 2014). "Intimidation" and "interfere" have straightforward dictionary definitions that are understandable by Nevadans of ordinary intelligence. *See, e.g.*, *Intimidation*, dictionary.com, https://tinyurl.com/y9d74uxb ("[T]he act or process of attempting to force or deter an action by inducing fear."); *Interference*, *Black's Law Dictionary* (11th ed. 2019) ("The act or process of obstructing normal operations or intervening or meddling in the affairs of others.").

Finally, with respect to "undue influence," courts may look to "settled legal meanings" in determining whether a term is vague. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010). Undue influence has a settled legal meaning. It is "[t]he improper use of power or trust in a way that deprives a person of free will and substitutes another's objective; the exercise of enough control over another person that a questioned act by this person would not have otherwise been performed, the person's free agency having been overmastered." *Undue Influence*, *Black's Law Dictionary* (11th ed. 2019); *see also In re*

1  *Estate of Bethurem*, 129 Nev. 869, 874, 313 P.3d 237, 241 (2013) (undue influence

2  established when "the influence . . . destroy[ed] the free agency" of another); *Peardon v.*

3  *Peardon*, 65 Nev. 717, 767, 201 P.2d 309, 333 (1948) (explaining that undue influence

4  applies "where influence is acquired and abused, or where confidence is reposed and

5  betrayed").

6       Plaintiffs also take issue with the supposed burden-shifting of the proof of scienter.

7  SAC ¶ 119.  But that has nothing to do with vagueness and, as discussed above, the burden

8  of proving all elements of a charged offense rests with the prosecution.  Plaintiffs' allegation

9  that other statutes overlap with SB 406 similarly has nothing to do with vagueness, and in

10  any event, as discussed above, is permissible.  *Id.* ¶115.  Plaintiffs further claim that

11  "SB 406's potential to criminalize innocent conduct makes it vague in defining the conduct

12  it criminalizes."  SAC ¶ 35.  This is not a proper basis for challenging a statute for

13  vagueness.  Rather, Plaintiffs appear to be confusing overbreadth and vagueness; a

14  "vagueness challenge does not turn on whether a law applies to a substantial amount of

15  protected expression." *Holder*, 561 U.S. at 20.

16       SB 406's intent requirements further mitigate any remote possibility of vagueness.

17  *See United States v. Jae Gab Kim*, 449 F.3d 933, 943 (9th Cir. 2006).  This is because

18  Plaintiffs can base their behavior on their own factual knowledge of the situation and avoid

19  violating the law.  *Id.*  Taken together, SB 406 is clear in what it "proscribes in the vast

20  majority of its intended applications."  *Humanitarian Law Project*, 578 F.3d at 1146

21  (internal quotation marks and citation omitted).  Plaintiffs have not pointed to a single

22  example that suggests otherwise.[4]

23       Because Plaintiffs fail to support their request for the strong medicine of facial

24  invalidation, their second claim should be dismissed.

25       **3.**     **Plaintiffs Do Not Allege a Substantive Due Process Claim**

26       While Plaintiffs refer to substantive due process in the heading of their second claim,

27  they all but ignore this supposed claim in the body of the SAC.  *See* SAC at 22.  The SAC

28

---

[4] As discussed above, the only examples Plaintiffs give would not establish liability under SB 406.

fails to offer "more than labels and conclusions, and a formulaic recitation of the elements of [the] cause of action" and must be dismissed. *Twombly*, 550 U.S. at 555. Further, any substantive due process claim is inapplicable. A constitutional claim "covered by a specific constitutional provision" must "be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Plaintiffs' purported substantive due process claim is covered by the First Amendment, so substantive due process analysis is improper.

Even construing Plaintiffs' claim as based on the First Amendment (a claim not asserted in the SAC), it fails. As Defendants have explained, "[a]ctivities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message." *Grider*, 617 F. Supp. 3d at 52. And SB 406's specific intent requirement also "serves to insulate [it] from unconstitutional application to protected speech." *Gilbert*, 813 F.2d at 1529.

Because SB 406 does not regulate protected speech, it is constitutional as long as it passes rational-basis review. *Ysura v. Pocatello Educ. Ass'n*, 555 U.S. 353, 359 (2009). It does: SB 406 was enacted to "provide additional protection for election workers" and reverse the "unbelievable turnover of election officials in elected and administrative positions over the last four years." *Senate Committee Minutes*, *supra*, at 2–3. Maintaining elections officials with knowledge and experience and providing them with protection in a politically charged environment are legitimate governmental interests that are rationally related to SB 406.

### 4. Plaintiffs' Third Claim Must Be Dismissed for the Same Reasons that the Second Claim Must Be Dismissed

Plaintiffs' third claim appears to be a vagueness challenge based on the Nevada Constitution. SAC ¶¶ 125–36. As discussed above, this claim is absolutely barred by the Eleventh Amendment. Even if were not, however, Nevada's vagueness analysis is similar to the federal vagueness analysis, and the third claim would fail for the same reasons

///

1  Plaintiffs' second claim fails. *See Ford v. State*, 127 Nev. 608, 612, 262 P.3d 1123, 1125–26

2  (2011).

3  **V.    CONCLUSION**

4         For the foregoing reasons, the Court should dismiss the SAC without leave to amend.

5         DATED this 16th day of November 2023.

6                                          AARON D. FORD
                                           Attorney General
7

8                                          By: */s/Kiel B. Ireland*
                                              JESSICA E. WHELAN (Bar No. 14781)
9                                              Senior Deputy Attorney General
                                              KIEL B. IRELAND (Bar No. 15368)
10                                             Deputy Solicitor General
                                              Office of the Attorney General
11                                            100 North Carson Street
                                              Carson City, Nevada 89701-4717
12                                            T: (775) 684-1100
                                              E: kireland@ag.nv.gov
13
                                           *Attorneys for Governor Lombardo*
14

15                                         AARON D. FORD
                                           Attorney General
16

17                                         By: */s/Laena St-Jules*
                                              LAENA ST-JULES (Bar No. 15156)
18                                             Senior Deputy Attorney General
                                              Office of the Attorney General
19                                            100 North Carson Street
                                              Carson City, Nevada 89701-4717
20                                            T: (775) 684-1100
                                              E: lstjules@ag.nv.gov
21

22                                         *Attorneys for Secretary Aguilar*

23

24

25

26

27

28

**INDEX OF EXHIBITS**

| EXHIBIT NO. | EXHIBIT DESCRIPTION | NUMBER OF PAGES |
|---|---|---|
| 1. | Motion for Sanctions, *Beadles v. Rodriguez*, Case No. CV23-01341 (Nev. Dist. Ct. Sept. 11, 2023) (exhibits omitted) | 23 |