**RESP**
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd #203
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com
*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

SUSAN VANNESS, an individual,  )
ALEXANDREA SLACK, an individual  )
MARTIN WALDMAN, an individual,  )
ROBERT BEADLES, an individual  )
)  Case No: 2:23-cv-01009-JCM-VCF
Plaintiffs,  )
vs.  )  **[ORAL ARGUMENT**
)  **REQUESTED]**
)
FRANCISCO V. AGUILAR, in his official  )  **PLAINTIFFS' RESPONSE TO**
**c**apacity as Nevada Secretary of State, JOSEPH M.  )  **DEFENDANTS' MOTION TO**
LOMBARDO, in his official capacity as Governor  )  **DISMISS**
of the State of Nevada, DOES  )
I-X, inclusive: ROE  )
CORPORATIONS 11-20, inclusive.  )
)
)
Defendants.  )
_____  )

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS

COMES NOW, Plaintiffs SUSAN VANNESS ET AL, by and through the undersigned

attorneys of record, SIGAL CHATTAH, ESQ., of CHATTAH LAW GROUP, who hereby

submit the following RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS

PLAINTIFFS' SECOND AMENDED COMPLAINT.

## INTRODUCTION

Plaintiffs bring this action facially challenging the Constitutionality of SB 406 which provides in pertinent part:

"[C]hapter 293 of NRS is hereby amended by adding thereto a new section to read as follows:

> 1.    It is unlawful for any person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence *with the intent* to:
> (a) *Interfere with the performance of the duties* of any *elections official* relating to an election; or
> (b)  Retaliate against any *elections official* for performing duties relating to an election.
> 2.    The provisions of subsection 1 apply *__regardless of whether__* a person uses or threatens or *__attempts to use__* such force, intimidation, coercion, violence, restraint or undue influence *__at a polling place or a location__* other than a polling place.

[*Emphasis added*]

Plaintiffs' facial constitutional challenge of sections 1 and 2 of the Statute is on the basis that it is vague, overbroad, calls for criminal punishment despite failing to specify a victim and violates the First Amendment to Free Speech and the Fourteenth Amendment's Due Process Clause.

## STATEMENT OF FACTS

On or about May 30, 2023, after passing both chambers of the Nevada Legislature, Defendants Nevada's Secretary of State Francisco V. Aguilar and Nevada's Governor Joseph M. Lombardo signed SB 406 into law. SB 406 is described as "AN ACT relating to elections; making it unlawful for a person to use or threaten or attempt to use any force, intimidation, coercion, violence, restraint or undue influence with the intent to interfere with the performance of duties of an elections' official or retaliate against an elections' official for the performance of such duties;"

Sections 1 and 2 of SB 406 impose impossible—and unpredictable—burdens on individuals that come into contact with elections' officials during elections at voting centers and ballot processing centers.

The consequence of said sections in SB 406 is a sweeping and unwieldy regulation that leaves the identification of what an offense is so opaque, uncertain, and all-encompassing that Plaintiffs and others similarly situated cannot determine whether and when the most basic activities undertaken will subject them to drastic criminal penalties.

Furthermore, SB 406 provides no classification for immunity or exemption for "elections officials' or elections observers as defined under NRS 293.274 [*and/or supervisors*] whom are paid to ensure election oversight, management and transparency among themselves. Defendants bring this Motion to Dismiss this 42 U.S.C § 1983 Complaint in its entirety.

It is significant to note that Nevada already has laws that protect individuals from intimidation and harassment, rendering SB 406 unnecessary and duplicative and simply an obstruction of protected speech.

Specifically, NRS 200.5711 entitled *Harassment*; NRS 207.1902 entitled *Coercion* and, NRS 199.3003 entitled *Intimidating public officer, **public employee**, juror, referee, arbitrator, appraiser, assessor or similar person* all qualify as laws that seek to prohibit exactly the conduct that SB 406 calls for, without obstructing free speech, rendering SB 406 duplicative and redundant.

This Court should deny Defendants' Motion to Dismiss the Second Amended Complaint (hereinafter SAC) as delineated *infra*.

## LEGAL ARGUMENT

**A.  PLAINTIFFS' ALLEGATIONS ARE SUFFICIENTLY PLED UNDER *TWOMBLY* TO PRECLUDE DEFENDANTS FROM PREVAILING ON THEIR RESPECTIVE MOTIONS TO DISMISS**

In accordance with FRCP 8, Plaintiffs need only provide a short and plain statement that they are entitled to relief and the grounds for the Court's jurisdiction. *See Fed. R. Civ. Pro 8*. To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167

L. Ed. 2d 929 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id. at 555*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009*) (citing Twombly,* 550 U.S. *at* 555*)*. In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly,* 550 U.S. *at* 556*.* However, at the pleading stage, the plausibility requirements of *Iqbal* and *Twombly* do not require "some general and formal level of evidentiary proof." *Whitney v. Guys, Inc.,* 700 F.3d 1118, 1128 (8th Cir. 2012).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* (internal quotation marks omitted).

A lawsuit need not be meritorious to proceed past the motion-to-dismiss stage. In fact, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely. To dismiss a plaintiff's complaint because of some initial skepticism would be to mistakenly collapse discovery, summary judgment, and trial into the pleading stages of a case. *Id. at* 434.

## B.   PLAINTIFFS HAVE STANDING TO PURSUE THESE CLAIMS AND PURSUE THEM AGAINST THE CORRECT OFFICIALS

In order to invoke the jurisdiction of the federal courts, a plaintiff must establish "the irreducible constitutional minimum of standing," consisting of three elements: injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992); *see Cal. Pro-Life Council, Inc. v. Getman,* 328 F.3d 1088, 1093 (9th Cir. 2003). The injury in fact must constitute "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. *at* 560 (internal citations and quotations omitted). The plaintiff must prove injury in fact "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id. at 561*.

To survive a challenge to a plaintiff's Article III standing under Federal Rule of Civil Procedure 12(b)(1), Plaintiffs bear the burden of showing that their injury-in-fact is "concrete, particularized, and actual or imminent, " rather than "conjectural or hypothetical"; that it is "fairly traceable to the challenged action"; and that it is "redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).

"To establish standing for a free-speech claim, the Plaintiffs generally must show that 'the rule, policy or law in question has explicitly prohibited or proscribed conduct on the[ir] part.'" *Phillips v. DeWine,* 841 F.3d 405, 415 (6th Cir. 2016) *(quoting Parsons v. U.S. Dep't of Justice,* 801 F.3d 701, 711 (6th Cir. 2015)), *cert. denied sub nom. Tibbetts v. DeWine,* 138 S. Ct. 301 (2017). Plaintiffs must also show that the "threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *SBA List,* 134 S. Ct. *at* 2341 *(quoting Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 414 n.5 (2013).

Thus, in the pre-enforcement context, "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id. at 2342 (quoting Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979)).

1.  **Defendants' Proposition that Plaintiffs Must Allege they Intend on Violating SB 406 is Fatally Flawed.**

In *Attias v. Carefirst, Inc.,* 865 F.3d 620 (D.C. Cir. 2017) the court noted that "[S]ince *SBA List*, we have frequently upheld claims of standing based on allegations of a "substantial risk" of future injury. *See, e.g., In re Idaho Conservation League,* 811 F.3d 502, 509 (D.C. Cir. 2016*)* (using "significant risk" and "reasonabl[e] fears" as the standard); *Nat'l Ass'n of Broadcasters v. FCC,* 789 F.3d 165, 181 (D.C. Cir. 2015) *(using "substantial risk"); Sierra Club v. Jewell,* 764 F.3d 1, 7 (D.C. Cir. 2014) (using "substantial probability of injury"). Under our precedent, "the proper way to analyze an increased risk-of-harm claim is to consider the ultimate alleged harm," which in this case would be [identity theft], "as the concrete and particularized injury and then to determine whether the increased risk of such harm makes injury to an individual citizen sufficiently 'imminent' for standing purposes." *Food & Water Watch, 808 F.3d at 915 (quoting Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,* 489 F.3d 1279, 1298 (D.C. Cir. 2007)).

A plaintiff could bring a pre-enforcement suit when he "has alleged an intention to engage in a course of conduct ***arguably affected*** with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *See SBA List citing to Babbitt, supra, at* 298, 99 S.Ct. 2301.

Thus, when plaintiffs rely on allegations of subjective chill, they must also "point to some combination of the following factors" to show the potential of enforcement: (1) a history of past enforcement against the plaintiffs or others, *see, e.g., Russell v. Lundergan-Grimes,* 784 F.3d 1037, 1049 (6th Cir. 2015)*;* (2) enforcement warning letters sent to the plaintiffs regarding their specific conduct, *see, e.g., Kiser v. Reitz,* 765 F.3d 601, 608–09 (6th Cir. 2014); *Berry,* 688 F.3d at 297; and/or (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action,

*see Platt v. Bd. of Comm'rs on Grievances & Discipline of the Ohio Supreme Court,* 769 F.3d 447, 452 (6th Cir. 2014). *Id. at* 869. We may also take "into consideration a defendant's refusal to disavow enforcement of the challenged statute against a particular plaintiff." *Id.; see also Platt,* 769 F.3d at 452*, Kiser*, 765 F.3d at 609.

Here, all four Plaintiffs pled that that they were poll observers in the past, and post SB 406, and the vagueness thereof, in order to prevent their own prosecution under said statute, they decided to abstain from engaging in observing elections in the 2024 cycle. The fact that the statute duplicates other prosecutable crimes in the context of elections and free speech has an imminent effect on chilling said speech and actions as observers and election workers.

Their "refusal to engage in [unlawful] activities is the typical substance of a declaratory judgment action and does not, by itself, preclude a finding that the plaintiff has standing." *ACLU v. NSA,* 493 F.3d 644, 656 (6th Cir. 2007). In the Sixth Circuit "a citizen should be allowed to prefer 'official adjudication to public disobedience.'" *Magaw,* 132 F.3d at 287 (6th Cir. 1997)*(quoting 13A, Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 3532.5 at 183-84 (2nd ed. 1984)).*

In *Holder v. Humanitarian Law Project,* 561 U.S. 1, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010), plaintiffs faced a "'credible threat' " of enforcement and " 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.' " *Id., at* 15.

Defendants propose that this Court require Plaintiffs plan illegal activity with specificity in order to be able to challenge the constitutionality of a law for a law that fails to articulate what intimidation, harassment or threaten with intent to interfere with elections qualifies as.

Defendants cite to *Unified Data Servs., LLC v FTC,* 39 F.4th 1200, 1210 (9th Cir. 2022) as a controlling precedent in this matter and purport to articulate a direct parallel with Plaintiffs herein. Defendants' analysis is wrong. In *FTC,* the Ninth Circuit found the following:

> Plaintiffs have not sufficiently alleged a constitutional injury in fact. Applying the first factor, the complaint utterly lacks, let alone states "with some degree of concrete detail,"

an allegation that Plaintiffs "intend to violate" the Rule as interpreted by the 2016 letter. They have not, in short, provided any information about the "when, to whom, where, or under what circumstances" they would use soundboard technology but for the challenged policies. *Id.* at 787 (quoting *Thomas* , 220 F.3d at 1139 ). "Without these kinds of details, a court is left with mere ' "some day" intentions,' which 'do not support a finding of the "actual or imminent" injury that our cases require.' " *Id.* at 787–88 (quoting *Thomas* , 220 F.3d at 1140 ). At most, the complaint alleges that Plaintiffs are part of an industry that has collectively "invested millions of dollars and spent countless hours in training and development" and that the industry is now "whipsawed between abandoning its business and laying off thousands of workers to whom they have paid good salaries for years and facing potentially ruinous enforcement actions and penalties." These allegations are "not sufficiently concrete to meet even the minimum injury in fact threshold." *Lopez* , 630 F.3d at 790.

…

The other pre-enforcement challenge factors weigh against standing, too. Plaintiffs have not pleaded any facts showing past FTC enforcement against them or ***any future warning of prosecution.***

*Id.* at 1210-1211.

Here, not only have Plaintiffs alleged in their SAC that they previously worked as poll/elections observers in the past, but they also alleged that but-for the ambiguity in SB406, and their fear of prosecution, they intended on working as poll/elections observers in the 2024 election cycle.  Plaintiffs herein, distinguished between Plaintiffs in *FTC*, have a direct and causal action to the effect of SB 406.

In *Chelsey Nelson Photography LLC v. Louisville/Jefferson Cnty. Metro Gov't,* 3:19-cv-851-BJB (W.D. Ky. Aug. 30, 2022), in granting a permanent injunction, the Court found "[W]hen non-moribund laws arguably prohibit plaintiffs' desired activities, the Supreme Court and the Sixth Circuit presume a credible threat of enforcement. *See, e.g., SBA List, 573 U.S. at* 162*; Virginia v. Am. Booksellers Ass'n, Inc.,* 484 U.S. 383, 393 (1988) (seeing "no reason to assume" a "newly enacted law will not be enforced"); *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 302 (1979); *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.,* 769 F.3d 447, 451 (6th Cir. 2014) ("[C]ourts do not closely scrutinize the plaintiff's complaint for standing" in First Amendment pre-enforcement cases.); *Planned Parenthood Ass'n*

*of Cincinnati, Inc. v. City of Cincinnati,* 822 F.2d 1390, 1396 (6th Cir. 1987) (standing where "statutory language of the Ordinance" applied to plaintiff).

### (a) Nevada's Attorney General Unilaterally Determined what he Deemed Poll Observing Classifying it as Voter Intimidation and Threatened Prosecution Thereof.

In *Lopez v Candale,* 630 F.3d 775, 791 (9th Cir. 2010), the Court opined:

> "[W]e have considered a government's preliminary efforts to enforce a speech restriction or its past enforcement of a restriction to be strong evidence (although not dispositive, (citing to *LSO, Ltd. v. Stroh, 205 F.3d* 1146, *1155* (9th Cir. 2000))*, that pre-enforcement plaintiffs face a credible threat of adverse state action. For example, a threat of government prosecution is credible if the government has indicted or arrested the plaintiffs, (citing to *Younger v. Harris,* 401 U.S. 371 at 41-42 (1971))*, if "prosecuting authorities have communicated a specific warning or threat to initiate proceedings" under the challenged speech restriction, or if there is a "history of past prosecution or enforcement under the challenged statute." *Thomas v. Anchorage Equal Rights Comm'n,* 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

Looking no further than Nevada's former Attorney General in *Culinary Workers Union v. Del Papa,* 200 F.3d 614, 616, 618 (9th Cir. 1999) *(per curiam)*, Plaintiff had established injury in fact under a Nevada statute when the attorney general wrote a "precise and exact" letter to the union which quoted the statute in full and threatened to refer the prosecution to "local criminal authorities".

On or about September 29, 2020, Nevada's Attorney General Aaron Ford said he was ready to prosecute anyone attempting "voter intimidation" in Nevada after President Donald Trump's call during the debate to have his supporters "go into the polls and watch very carefully."



**Aaron D. Ford@AaronDFordNV**

Trump also told "his supporters" to "go into the polls and watch very carefully." But he wasn't talking about poll watching. He was talking about voter intimidation. FYI -- voter

intimidation is illegal in Nevada. Believe me when I say it: You do it, and you will be prosecuted. 8:51 PM · Sep 29, 2020."[1]

General Ford, said that he considered the president's [Trump] comments to be a "dog whistle" encouraging voter intimidation, citing the president's past comments suggesting that voters cast both mail and in-person ballots to test the system and his instruction for the right-wing extremist "Proud Boys" group to "stand back and stand by."

According to General Ford, every individual that was a Trump supporter was instructed to intimidate voters – not poll watch. Nevada's own Attorney General unilaterally **_speculated_** and **_decided_** that a statement to poll watchers to remain vigilant and ensure elections were not tampered with and transparent, was a call to intimidate voters and threatened to prosecute poll watchers.

In fact, in *Lopez v Candale,* 630 F.3d 775, 791 (9th Cir. 2010), the Court reiterated that "[t]he plaintiffs themselves need not be the direct target of government enforcement. A history of past enforcement against parties similarly situated to Plaintiffs cuts in favor of a conclusion that a threat is specific and credible". *See Adult Video Ass'n v. Barr,* 960 F.2d 781, 785 (9th Cir. 1992), *vacated sub nom. Reno v. Adult Video Ass'n,* 509 U.S. 917 (1993), reinstated in relevant part, 41 F.3d 503 (9th Cir. 1994).

Defendants assert that General Ford's tweet does not establish any credible threat because it is entirely unrelated to SB406. Defendants are wrong since General Ford's tweet specifically identifies poll watchers "go into the polls and watch very carefully.' But he wasn't talking about poll watching.". In citing to *Lopez,* Defendants allege that General Ford's tweet is a "general

---

[1] https://x.com/AaronDFordNV/status/1311151750829678592?s=20

threat". In reality, the Ford tweet, is not a general threat but a clear attempt to intimidate poll watchers from engaging in legal and protected First Amendment conduct.

Defendants also allege that because Plaintiffs worked as election workers/poll observers in the past, General Ford's tweet was irrelevant in their assessment and accordingly, their standing fails at this juncture. However, it is clear that SB 406 adds contingencies and penalties for poll workers/observers that General Ford has already unilaterally and subjectively claimed to be intimidation. A threat against poll watchers in 2020 does not expire or get waived when in 2023, legislation is passed to enhance criminal penalties against those same poll watchers for engaging in that same constitutionally protected activity.

Defendants further claim that Plaintiffs have no standing because they have indicated that any of their actions will violate SB 406. In fact, in *Dreihaus, supra,* the court specifically addressed that type of argument, noting that "Nothing in this Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." *Susan B. Anthony List v. Driehaus,* 134 S. Ct. 2334, 2345 (2014).

The credibility of threat of future enforcement is bolstered by the fact that authority to file a complaint can be made by anyone, even poll workers who can easily allege that a supervisor's intention is to interfere in the election. A protected poll observer could be obstructed for fear of violating SB 406 and prosecution for lawful activity. Because the universe of potential complainants is not restricted to state officials who are constrained by explicit guidelines or ethical obligations, there is a real risk of complaints from, for example, political opponents. *Clapper v Amnesty Int'l USA,* 568 US 398 (2013) recognized that where there is "a 'substantial risk' that a harm will occur, [this risk] may prompt plaintiffs to reasonably incur costs to mitigate or avoid. Accordingly, Plaintiffs attempt to mitigate this substantial risk of harm by obtaining redress from this Court in a pre-emptive adjudication on the constitutionality of SB 406.

**(b) Defendants' Assertions that SB 406 Only Precludes _Illegal Conduct_ Will Inevitably Lead to Individuals Asserting Entrapment by Estoppel.**

The subjective nature of SB 406 and potential for obstruction of lawful speech and poll observing, will require individuals to defend acts they are assured legal today, but prosecutable tomorrow. The entrapment by estoppel defense applies when [(1)] an authorized government official tells the defendant that certain conduct is legal and [(2)] the defendant believes the official. *See United States v Rodman,* 13-10337 (9ᵗʰ Cir. 2015) citing to *United States v. Brebner*, 951 F.2d 1017, 1024 (9th Cir. 1991).

The defense is rooted in due process and fairness, and "applies when an official tells the defendant that certain conduct is legal and the defendant believes the official." *United States v. Tallmadge*, 829 F.2d 767, 773 (9th Cir. 1987) (internal quotation marks omitted); *see Cox v Louisiana*, 379 U.S. 536, 571 (1965).

Here, Defendants allege that S406 criminalizes only intentional conduct with the ***wrongful*** purpose of interfering in elections official's duties. The determination of whether the intentional conduct was wrongfully interfering in the elections official's duties is purely subjective and opaque, leaving Plaintiffs confused as to what conduct is legal and which official's subjective view on the legality of the conduct to believe.

C.   **ACTION IS NOT BARRED BY THE ELEVENTH AMENDMENT AS A *YOUNG* ACTION**

The Eleventh Amendment bars federal courts from hearing certain "suit[s]" filed by individual citizens against a state without the consent of the state. *U.S. Const. amend. XI; see generally Hans v. Louisiana,* 134 U.S. 1 (1890). But that Amendment does not bar actions when citizens seek only injunctive or prospective relief against state officials who would have to implement a state law that is allegedly inconsistent with federal law. *See generally Ex parte Young,* 209 U.S. 123 (1908).

The allegations in the SAC clearly delineate that this matter is brought under 42 U.S.C. §1983, brought under *Ex Parte Young*, requesting an injunction to enjoin the State from enforcement of Sections 1 and 2 of SB 406, suing the Defendants in their capacities as Governor and Secretary of State, respectively.

1. **Defendants Joseph M. Lombardo, as the Chief Executor of the Laws of the State of Nevada and is Correctly Named in His Capacity as Governor of the State**

Article 5 of the Nevada Constitution delineates powers and procedures of the Executive Department, the Governor's office. Sec: 7. of Article 5, entitled *Responsibility for execution of laws* provides that the "[G]overnor shall see that the laws are faithfully executed." *Id.*

Furthermore, Sec: 13 of Article 5 of the Nevada Constitution entitled *Pardons, reprieves and commutations of sentence; remission of fines and forfeitures* provides that "[T]he Governor shall have the power to suspend the collection of fines and forfeitures and grant reprieves for a period not exceeding sixty days dating from the time of conviction, for all offenses, except in cases of impeachment. Additionally, Article 5 Sec. 14.entitled *State Board of Pardons Commissioners; remission of fines and forfeitures; commutations and pardons; suspension of sentence; probation* provides that the governor, justices of the supreme court, and attorney general shall constitute the State Board of Pardons Commissioners.

As Chief executor of the laws of the State of Nevada and the Government official who has the power to issue pardons, reprieves, and commute sentences, for a law that criminalizes conduct that would otherwise be a civil matter, is the Governor of the State of Nevada; ergo, the proper party to be named in a *Young* Action.

///

///

**2. Defendant Francisco Aguilar as Chief Elections Officers is Correctly Named in His Official Capacity as Nevada Secretary of State.**

NRS 293.124 entitled *Secretary of State to serve as Chief Officer of Elections;* provides that "[T]he Secretary of State shall serve as the Chief Officer of Elections for this State. As Chief Officer, the Secretary of State is responsible for the execution and enforcement of the provisions of title 24 of NRS and all other provisions of *state and federal law relating to elections* in this State. The Secretary of State shall adopt such regulations as are necessary to carry out the provisions of this section." [*Emphasis added*] *Id.*

As Chief Elections officer, Defendant Aguilar is not only in charge of the States elections but also tasked with ensuring that all election laws, including SB 406 are enforced. The combination of these two Defendants working congruently to enforce these laws is precisely what qualifies both of them to be named in their official capacity herein.

**D.   DEFENDANTS' ATTEMPT TO SHIFT THE BURDEN OF IDENTIFYING WHAT SPEECH IS PROTECTED AND WHAT IS SUBJECT TO CRIMINAL PROSECUTION IS PRECISELY WHY SB 406 FAILS**

At the outset, Defendants assume the flawed position delineated in *United States v Hansen*. *See* [ECF 13, p. 8]. The First Amendment usually prohibits the government from enacting laws that regulate protected speech, and it "prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech. *Houston Cmty. Coll. Sys. v. Wilson,* 142 S. Ct. 1253, 1259 (2022) *(quoting Nieves v. Bartlett,* 139 S. Ct. 1715, 1722 (2019)). If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Id.*

1. **SB 406's "Sharp Limitation" Creates a Greater Burden in its Application and Prosecution Since the Legislation Lacks Any Description of the "Sharp Limitation".**

Defendants concede that SB 406 is sharply limited and applies when a person takes action in connection an "election official", deliberately precluding volunteer observers in the definition, since "they choose whether to attend elections related activities as observers". *See* ECF 13 p. 8-9, lns 9-11.

In addressing Plaintiffs' claim regarding supervisory authority and exemption from prosecution under SB406, Defendants further articulate that "No one is exempt. If a person takes any of the actions specified in SB 406 to interfere with or retaliate against an elections' official, that person is in violation of SB 406, regardless of whether they themselves are elections officials". *See* ECF 13, pg 11 lns 23-26.

Presumably, under Defendants' logic, an election supervisor may attempt to ensure corrective measures are taken by a subordinate election official, whereby the subordinate may classify this attempt as interference and intimidation, based on his/her subjective perception (or opposing political party), and the supervisor would not be exempt from prosecution under SB 406 despite his/her obligation and official protocol, and job requirements.

The subjective nature of what "interference" is wrongful, compounded by the fact that even a supervisory election official may be deemed to "interfere" based on perception is what deems this legislation vague.

Even assuming *arguendo*, that this Court finds that these acts do not render the legislation vague, the fact that it has potential to criminalize a completely lawful action deems it overbroad in its scope and therefor void. Furthermore, SB406's failure to designate a victim of the crime or

provide immunity or an affirmative defense to paid election officials or election workers with supervisory authority demonstrates its overbreadth.

### (a) Defendants Concede that SB 406 is a Specific Intent Crime

Defendants concede that SB 406 is a specific intent crime which requires a Defendant to have the specific intent to "either interfere with an election official's performances of duties or retaliate against an election's official for his or her performance of duties". *See* [ECF 13, p 9, lns12-13].

In proving a specific intent crime, the prosecution of an individual under SB 406 would require that not only did that individual intend to bring out a specific consequence through his or her actions, but that he/she performed those actions with a ***wrongful purpose***. Ironically, when General Ford unilaterally threatened to prosecute poll watchers in 2020 for "voter intimidation", that threat was made long before any specific intent was observed or even anticipated. His call to prosecute was the ultimate interference with poll observers First Amendment rights and blatant intimidation of engaging in those rights.

Since there is no clear line of demarcation of whether the intent to interfere in the election officer's duties violates SB406, who and what will determine what a wrongful purpose is in the context of criminal conduct prohibited by SB 406.

It is clear that the purpose of volunteer observers and supervisory elections officials is to ensure that the proper oversight is being performed to in the course and scope of elections operations. The fact that SB 406 is a specific intent crime with the "intent to interfere" requirement as the *mens rea*, the purpose of oversight and ensuring election fairness and transparency is contradicted by making a constitutionally lawful and necessary act, criminal in nature.

**2. SB 406 Fails to Specify in the Context of *Williams* what is Prohibited Behavior.**

Plaintiffs are entitled to constitutional protection for certain rights or "liberty interests" related to speech under the Due Process clause of the Fourteenth Amendment. Plaintiffs' right to due process includes protection against the ills of laws whose 'prohibitions are not clearly defined.' *" Nat'l Org. for Marriage v. McKee,* 649 F.3d 34, 62 (1st Cir. 2011) *(quoting Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L.Ed.2d 222 (1972)).

Plaintiffs are entitled to a 'fair warning' of what a law prohibits to prevent 'arbitrary and discriminatory enforcement' of laws by requiring that Defendants provide explicit standards for those who apply them. Plaintiffs are entitled to engage in conduct without criminal prosecution of basic First Amendment freedoms under a statute that should avoid chilling the exercise of First Amendment rights.

Whether a Plaintiff's actions will be contemplated as intimidating with the intent to interfere with the performance of duties of any election official, may dangerously mischaracterize both lawful and unlawful conduct, deeming the law overbroad. If, a statute is overbroad, to the extent that it may criminalize protected First Amendment Speech, SB406 must be found invalid.[2] *United States v. Salerno,* 481 U. S. 739, 745 (1987).

The overbreadth doctrine allows a litigant (even an undeserving one) to vindicate the rights of the silenced, as well as society's broader interest in hearing them speak. *U.S. v Williams,* 553 U. S. 285, 292 (2008).  If the challenger demonstrates that the statute "prohibits a substantial amount of protected speech" relative to its "plainly legitimate sweep," then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court

---

[2]  Litigants mounting a facial challenge to a statute normally "must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno,* 481 U. S. 739, 745 (1987).

will hold the law facially invalid. *Ibid.; see  Virginia v Hicks,* 539 U. S. 113, 118-119  (2003) Because it destroys some good along with the bad, "[i]nvalidation for overbreadth is '"strong medicine"' that is not to be 'casually employed.'" *Williams,* 553 U. S. *at* 293.  To justify facial invalidation [on the basis of overbreadth], a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep. *New York State Club Assn., Inc. v. City of New York,* 487 U. S. 1, 14 (1988*); Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U. S. 789, 800–801 (1984).

### 3.  The Legislation is Vague and Fails to Identify a Wrongful "Intimidation" and "Interference" Objectively

In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed, cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law. *The Flipside, Hoffman Estates*, 455 U.S. 489,495-496, (1982).

A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process. To succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications. *Id*. at 497.

It is significant to note that in 2013, the Nevada Legislature repealed the definition of intimidation in NRS 388.129, rendering no criminal definition of *intimidation* as to what to define it in the context of SB 406. Accordingly, SB 406 is susceptible to policy determinations of what "intimidation" is and what intent to interfere with an election official is. It creates a subjective victim by resorting to a policy analysis grounded in social, economic, and political concerns. Because of the subjectivity surrounding the requirements of intimidation with intent to interfere, and no bright line of who a victim or protected class is, the discretionary nature of application of SB406 renders it vague.

The prohibition of vagueness in criminal statutes, is an "essential" of due process, required by both "ordinary notions of fair play and the settled rules of law." *See Dimaya v Lynch*, 803 F. 3d 1110 (9th Cir. 2015) *citing to Johnson v. United States,* 576 U. S., at ___ (slip op., at 4) *(quoting Connally v. General Constr. Co.,* 269 U. S. 385, 391 (1926)). The void-for-vagueness doctrine guarantees that ordinary people have "fair notice" of the conduct a statute proscribes. *Papachristou v. Jacksonville,* 405 U. S. 156, 162 (1972). And the doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges. *Kolender v. Lawson,* 461 U. S. 352, 357– 358 (1983).

Here the only analysis the Court needs to make is whether the statute provides an individual fair notice of what conduct will be subject to criminal penalty under SB 406, with the knowledge that SB 406 is a specific intent crime. It is clear that any corrective measure taken by either a supervisory election official, or an observer is for the purpose of interfering in the acts of the election official. The failure to identity what act is *wrongful* interference and what is

legitimate interference or provide for any exemption for supervisory officials or elections observers is problematic under a *Williams* analysis.

### (a) Defendants' Reliance on *Counterman v Colorado* is Flawed

In *Counterman v Colorado*, 600 U. S. ____ (2023), the Supreme Court vacated and remanded a conviction for stalking based on statements made by Defendant on Facebook, using a "true threat" standard.[3] In fact, in *Counterman*, Justice Kagan, delivering the opinion of the Court specified:

> "[T]rue threats of violence are outside the bounds of First Amendment protection and punishable as crimes…The question presented is whether the First Amendment still requires proof that the defendant had some subjective understanding of the threatening nature of his statements. We hold that it does, but that a mental state of recklessness is sufficient. The State must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence. The State need not prove any more demanding form of subjective intent to threaten another."

The *Counterman* Court dealt with a compound issue 1) a communication made; and 2) the subjective standard and mental state of recklessness in making it; when contemplating when a communication is stalking.

Here, SB 406 has nothing to do with stalking or First Amendment communications that may or may not be protected as a "true threat". Here, Plaintiffs as poll watchers/ elections observers and workers acts are willful, with an intent to change a course of conduct, the only question remains is whether that willful course of conduct would be *wrongful* and/or criminal under SB 406.

Defendants assert that SB 406 does not provide the overbreadth that Plaintiffs so allege, and that "A calm and rational discussion with an elections official to explain a perceived wrong is perfectly permissible. What Plaintiffs may not do under SB 406 is, for example, threaten to

---

[3]  True threats are "serious expression[s]" conveying that a speaker means to "commit an act of unlawful violence." *See Colorado citing to Virginia v. Black*, 538 U. S. 343, 359.

injure an elections official in order to cause the elections official to perform his or her duties differently." [ See ECF 23, p. 12].

### 4. Plaintiffs' Second Claim for Relief Should Not be Dismissed as it Properly Alleges SB 406 Is Vague.

Defendants cite to *U.S. v Gilbert,* 813 F.2d 1523 (9th Cir. 1987) so as to conclude that the terms "intimidate" and "interfere" in criminal statutes are not void for vagueness. Ultimately, when discussing supervisory oversight whether as an observer or elections official, the goal is to correct the action without the interference be deemed by law enforcement to be a wrongful intimidation or interference prosecutable under SB 406.

The standards for evaluating vagueness were enunciated in *Grayned v. City of Rockford,* 408 U. S. 104, 408 U. S. 109 (1972). "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications."

As it is drafted, SB 406 does not provide fair notice of what is prohibited behavior, what precisely is wrongful *interference* with an election official. Furthermore, even under *Williams,* SB 406 is ***so standardless*** that it authorizes and encourages discriminatory enforcement. *Id* at 344. Most important though is the fact that prosecution under SB 406 does not result in a civil fine but carries the weight of a felony punishable by 1 to 4 years in prison.

**E.    PLAINTIFFS ARE NOT BARRED FROM BRINGING A 1983 ACTION UNDER THE NEVADA CONSTITUTION IN SUPPORT OF THEIR THIRD CLAIM FOR RELIEF**

42 U.S.C. § 1983 is the "most important, and ubiquitous, civil rights statute. Section 1983 provides a cause of action for so-called constitutional-tort suits against every "person" who "subjects, or  causes to be subjected" someone else "to the deprivation of [federal] rights, privileges, or immunities" while acting "under color of" state law.  The Court has long held that the key word "person" does not include state governments. Instead, the Court has concluded, it includes only state and local officials and local governments.

Here, Plaintiffs claims under the Article 1 §8 of the Nevada Constitution as a §1983 action are appropriate and supported by the same vagueness and overbreadth issues that Plaintiffs facially challenge SB 406 with. Furthermore, Plaintiffs' arguments in support of substantive due process violation under the 14th Amendment, in Article 1 §8 carry the same facial challenges as noted in their Second Claim for Relief, specifically noting that a law that is vague as to prohibited conduct violates Article 1 § 8 of the Nevada Constitution.

A facial challenge of SB 406 through a §1983 action under Article 1 §8 is authorized and survives jurisdictional challenges.

**F.    DEFENDANTS MUST DEMONSTRATE THAT SB406 WAS  PASSED TO FURTHER A COMPELLING GOVERNMENT INTEREST AND MUST BE NARROWLY TAILORED TO ACHIEVE THAT INTEREST**

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." *U.S. CONST. amend. XIV, § 1*. The Supreme Court has interpreted this guarantee "to include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at

all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores,* 507 U.S. 292, 301–02 (1993).

To survive strict scrutiny, the government must show that "the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 340, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010).

When plaintiffs challenge a content-based speech restriction, the Government has the burden to prove that the proposed alternatives will not be as effective as the challenged statute. *Reno* v. *American Civil Liberties Union*, 521 U. S. 844, (1997). The purpose of the test is to ensure that speech is restricted no further than is necessary to accomplish Congress' goal. *Id.*

Here Defendants fail to provide any standard for what would qualify as legitimate oral dissent to an election official's action which may be viewed as intimidating to said election worker or a "*wrongful*" intent to interfere with elections operations. Notwithstanding same, the identical analysis can be provided for an election observers and poll workers alike.

## **CONCLUSION**

As Defendants note in their initial Motion to Dismiss, "[T]he political climate surrounding elections since 2020 has been highly charged and divisive". *See* ECF 13 p2 lns 5-6. This statement is precisely why legislation like SB 406, must withstand the highest level of scrutiny and must be narrowly tailored to ensure that no one is wrongfully prosecuted, simply on the basis of accusations of subjective intimidation and interference based on adverse political beliefs in election locations and polls across the State.

As stated supra, Nevada already has laws that protect individuals from intimidation and harassment, rendering SB 406 unnecessary, duplicative and simply an obstruction of free speech.

Therefore, the only analysis the Court needs to make is whether SB 406 provides an individual fair notice of what conduct will be subject to criminal penalty and what conduct is lawful.

The instant criminalization of lawful conduct with penalty of a Class E felony punishable by 1 to 4 years imprisonment, should be sufficient to give pause as to the application of the law and individuals potentially prosecuted under it. Notwithstanding same, the preclusive effect of SB 406 on Plaintiffs and others from participating as poll observers and elections officials as uncertainty to what conduct they are allowed to engage in stifles public participation with completely lawful and necessary election oversight.

It is clear that any corrective measure taken by either a supervisory election official, or an observer is for the purpose of interfering in the (wrongful) acts of the election official. The failure to identity what act is *wrongful* interference or provide any exemption for supervisory officials or elections observers is also problematic.  Accordingly, Plaintiffs request that Defendants' Motion to Dismiss be denied and all proceedings continue in ordinary course and in the interest of fair play and substantial justice.

DATED this  13th  day of December, 2023.

**CHATTAH LAW GROUP**

*/s/ Sigal Chattah*
SIGAL CHATTAH, ESQ.
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Tel.:(702) 360-6200
*Attorney for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 13th day of December, 2023, I personally served a true copy of the foregoing Plaintiffs' RESPONSE TO ALL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT by the Courts electronic service system to all registered parties:

*/s/ Sigal Chattah*
_____
An Agent of Chattah Law Group