UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Susan Vanness, et al., <br><br> Plaintiffs <br><br> v. <br><br> Francisco V. Aguilar, in his official capacity as Nevada Secretary of State, et al., <br><br> Defendants | Case No. 2:23-cv-01009-CDS-MDC <br><br> **Order Granting Defendants' Motion to Dismiss and Closing Case** <br><br> [ECF No. 23] |

  This is a 42 U.S.C. § 1983 action. Plaintiffs Susan Vanness, Alexandrea Slack, Martin Waldman, and Robert Beadles (together, plaintiffs) challenge the constitutionality of sections 1 and 2 of the Election Worker Protection Act (hereinafter, SB 406) for allegedly violating the First and Fourteenth Amendments of the United States Constitution and Article I of the Nevada Constitution. Defendants Joseph M. Lombardo and Francisco V. Aguilar move to dismiss the Second Amended Complaint (SAC), arguing the complaint should be dismissed because plaintiffs have not established standing, the Eleventh Amendment bars this suit, and plaintiffs have failed to state a claim for relief. ECF No. 23. For the following reasons, I grant the motion as to lack of standing and dismiss the complaint with prejudice.

I. Background

  In April 2023, the 82nd Legislative Session of Nevada adopted SB 406 to combat the recent wave of high turnover in elections officials across the state.[1] SB 406 contains provisions—those at issue here—that criminalize the use, threat, or attempted use of force, intimidation,

---

[1] *Minutes of the Senate Committee on Legislative Operations and Elections*, 82d Sess., 2–3, 12 (Nev. Apr. 11, 2023) (statements of Gabriel Di Chiara and Burgans), https://tinyurl.com/SB406Mins (last visited April 5, 2024) (stating that the Nevada Legislature enacted SB 406 to "provide additional protection for election workers" and reverse the "unbelievable turnover of election officials in elected and administrative positions over the last four years.").

coercion, violence, restraint, or undue influence with an intent to interfere with or retaliate against elections officials who are performing their elections duties. SB 406 § 1(6)(b).

In June 2023, plaintiffs, who are former poll workers, filed the instant case, complaining that SB 406 is: (1) overbroad in violation of the First Amendment of the U.S. Constitution; (2) vague in violation of substantive due process under the Fourteen Amendment of the U.S. Constitution; and (3) vague and overbroad in violation of Article 1, section 1 of the Nevada Constitution. SAC, ECF No. 22 at 19–25. Plaintiffs complain that the alleged "overbreadth" and "vagueness" of sections 1 and 2 of SB 406 will subject poll workers' innocuous, legitimate behavior to criminal liability in future elections. *See id.* at 9. For example, plaintiffs complain that a ballot inspector may "feel[] intimidated" as a result of a Rover's attempt to correct the inspector's perceived wrongful conduct, and result in criminal prosecution of that Rover under SB 406. *Id.*

On July 27, 2023, defendants filed a motion to dismiss the first amended complaint, arguing that none of plaintiffs' claims can survive because: (1) plaintiffs fail to establish standing; (2) the Eleventh Amendment bars the claims; and (3) plaintiffs have failed to state a claim upon which relief can be granted. *See generally* ECF No. 13. On the same day, plaintiffs filed a motion for injunctive relief. *See generally* ECF No. 14.

Because I found that plaintiffs failed to demonstrate standing, I denied the motion for a preliminary injunction and dismissed the complaint for lack of standing with leave to amend. Order, ECF No. 21. Plaintiffs filed a SAC (ECF No. 22), which defendants now move to dismiss (ECF No. 23). Defendants argue dismissal is warranted because plaintiffs still have not established standing, the Eleventh Amendment bars this suit, and because plaintiffs have failed to state a claim for relief under 12(b)(6). ECF No. 23. Because I find there is no standing, I do not reach the issues of whether the Eleventh Amendment bars this suit or whether plaintiffs have failed to state a claim.

## II. Legal standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. *Id.* (b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Id.* at 555.

Accordingly, Fed. R. Civ. P. 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Id.* at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"When 'standing is challenged on the basis of the pleadings,' we must 'accept as true all material allegations of the complaint' and 'construe the complaint in favor of the complaining party.'" *Cal. Rest. Ass'n v. City of Berkeley*, 65 F.4th 1045, 1049 (9th Cir. 2023) (quoting *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988)). At this stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks and citation omitted).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Fed. R. Civ. P. 15(a), a court should "freely" give leave to amend "when justice so requires," and in the

absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

### III. Discussion

#### A. Justiciability

This court's jurisdiction is limited to "Cases" and "Controversies." U.S. Const., art. III, § 2; *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017). The doctrine of standing gives meaning to these constitutional limits by "identify[ing] those disputes which are appropriately resolved through the judicial process." *Lujan*, 504 U.S. at 560. "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To establish Article III standing, a plaintiff must show: (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal quotation marks omitted).

This case concerns the injury-in-fact requirement, which helps to ensure that the plaintiff has a "personal stake in the outcome of the controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation marks omitted). An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560 (some internal question marks omitted). An injury cannot be hypothetical or based on conjecture. *Id.* An allegation of future injury can be sufficient if the threatened injury is "certainly impending," or there is a "'substantial risk' that the harm will occur." *Clapper*, 568 U.S at 414 n.5 (emphasis deleted and internal quotation marks omitted).

### 1. *Plaintiffs fail to demonstrate standing.*

Defendants argue that plaintiffs have failed to allege an injury-in-fact and thus lack standing to bring this suit. ECF No. 23 at 6–8. Plaintiffs argue that their allegations that they will not participate as poll or election observers out of fear of prosecution under SB 406 constitutes a "chilling" of their constitutional rights and is sufficient to confer standing. *See* ECF No. 26 at 4–12. Because I find that plaintiffs fail to allege a credible threat of prosecution and thus fail to allege an injury-in-fact, I find that there is no standing.

When an individual is subject to the threat of prosecution, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat."). Rather, the Supreme Court has determined that pre-enforcement review is permissible under certain circumstances. Specifically, such review is permissible where the threatened enforcement is "sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

Plaintiffs are not required to, nor do they, allege that they *will* be prosecuted; rather, that the fear of criminal prosecution has dissuaded plaintiffs from working as poll workers in future elections and thus has chilled their constitutional rights. ECF No. 22 at 2 ("Plaintiffs herein allege that but for the passage of SB 406, each of them, had an intention to engage in poll watching/observing, election day watching/observing."). In the First Amendment context, because a chilled plaintiff's injury arises not from actual harm that has already occurred, but from the plaintiff's fear of future prosecution, the court must ascertain that such fear is sufficiently concrete and immediate to constitute a present injury to plaintiff's First Amendment rights, rather than a speculative or illusory allegation of future harm. In other words,

"[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). Put simply, a plaintiff must allege a *credible* threat of prosecution.

The Ninth Circuit looks to three factors to determine whether there is a credible threat: "[1] whether the plaintiffs have articulated a concrete plan to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute." *Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1210 (9th Cir. 2022). For the following reasons, plaintiffs fail to allege a credible threat of prosecution.

        a. *Plaintiffs do not allege that they intend to engage in the prescribed conduct.*

Factor one is inapposite here as plaintiffs do not allege an intent or plan to engage in conduct prescribed by the statute—the opposite. Indeed, plaintiffs allege that they will *avoid* even putting themselves in a position to engage in the conduct proscribed by the statue. ECF No. 22 at 2; *see Unified Data Servs., LLC*, 39 F.4th at 1210 (finding that plaintiffs have not sufficiently alleged a constitutional injury in fact because the complaint utterly lacks, let alone states "with some degree of concrete detail," an allegation that plaintiffs "intend to violate" the Rule as interpreted by the 2016 letter).

        b. *Plaintiffs do not allege that prosecuting authorities have communicated a specific warning or threat to initiate proceedings.*

Plaintiffs fail to satisfy factor two because they fail to allege a *specific* warning or threat to initiate proceedings. In the SAC, plaintiffs cite a Tweet posted by Nevada Attorney General Aaron Ford in 2020, which reads in full: "Trump also told 'his supporter' to 'go into the polls and watch very carefully.' But he wasn't talking about poll watching. He was talking about voter intimidation. FYI - - voter intimidation is illegal in Nevada. Believe me when I say it: You do it, and you will be prosecuted." ECF No. 22 at 10.[2] Plaintiffs then allege that "[i]t is absolutely

---

[2] Citing: https://x.com/AaronDFordNV/status/1311151750829678592?s=20.

conceivable that the same threat to prosecute that was made, based on the Attorney General's subjective opinion, in 2020 as to voter intimidation, will be subjectively applied as to SB 406 and intimidation of an 'election official'." *Id.* at 11. There are two problems with this. One, AG Ford's Tweet from 2020 was made two years before the passage of the law in question and does not contemplate even the subject matter of SB 406: election official intimidation. But even if plaintiffs are right that the threat will be "subjectively applied" to the specifics of SB 406, nothing about this threat is "specific" or directed toward plaintiffs. *Id.*; *see Lopez v. Candaele*, 630 F.3d 775, 787 (9th Cir. 2010) ("'[G]eneral threats by officials to enforce those laws which they are charged to administer' do not create the necessary injury in fact.") (citing *United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75 (1947)); *see also Rincon Band of Mission Indians v. San Diego Cnty.*, 495 F.2d 1, 4 (9th Cir. 1974) (Sheriff's and sheriff's department's statements that all gambling was illegal, and all laws would be enforced, insufficient to establish justiciable case or controversy). In other words, plaintiffs do not plead a specific threat by prosecuting authorities that *plaintiffs* will be prosecuted for their intended activities if they return to their positions as poll works and observers. *Cf. Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 618 (9th Cir. 1999) (finding attorney general's "precise and exact" letter to plaintiff stating that "she will cause the statute to be enforced unless the union ceases distribution of the handbill" sufficient).

        c. *Plaintiffs do allege a history of past prosecution or other evidence suggesting prosecution is likely.*

        Finally, plaintiffs also fail to demonstrate past prosecution or enforcement under the challenged statute. While "there is little need to show a 'history of past prosecution or enforcement,' because the [law] w[as] only recently enacted[,]" *Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023), plaintiffs must demonstrate *some* basis to suggest enforcement is likely given that "'the mere existence of a proscriptive statute' is not enough[.]" *Id.* at 1100 (citing *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). The court notes that despite arguing that Ford's threat in 2020 provides a credible basis to believe election

7

official intimidation will be rigorously prosecuted, plaintiffs do not allege a single instance of past prosecution of election official intimidation, or even voter intimidation (whether under SB 406 or an analogous law) in Nevada. *See Zentmyer v. United States*, 2016 U.S. Dist. LEXIS 123445, at *14 (S.D. Cal. Sept. 12, 2016) ("[A]n absence of past prosecutions 'undercuts [plaintiffs'] argument that they face a genuine threat of prosecution.'") (quoting *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1128 (9th Cir. 1996)). Moreover, this is not a case where plaintiffs allege that, even to the extent they do go back to the polls, they intend to engage in conduct proscribed by SB 406. In other words, plaintiffs argue that their fear of prosecution arises from the potential for *misinterpretation* of their legitimate actions. ECF No. 26 at 11. This attenuates the potential threat of prosecution even more because it adds another layer of uncertainty: (1) otherwise innocuous actions must first be misinterpreted as intimidation; and (2) then enforcement authorities must decide whether to prosecute. *See Thomas*, 220 F.3d at 1141 (noting that the threat of prosecution is contingent upon the occurrence of several "unforeseeable events" including whether individuals will choose to "file a complaint or communicate the alleged discrimination to the enforcement agencies"[3] and "whether the enforcement agencies will decide to prosecute."). Put simply, plaintiffs fail to provide factual allegations suggesting that the threat of plaintiffs' prosecution under SB 406 were they not to self-censor is credible or reasonably founded in fact. Because I find that plaintiffs have failed to allege an injury in fact, I find that there is no standing and thus grant defendants' motion to dismiss the complaint.

---

[3] Plaintiffs make the argument that "[t]he credibility of threat of future enforcement is bolstered by the fact that authority to file a complaint can be made by anyone, even poll workers who can easily allege that a supervisor's intention is to interfere in the election" and that "[b]ecause the universe of potential complainants is not restricted to state officials who are constrained by explicit guidelines or ethical obligations, there is a real risk of complaints from, for example, political opponents." ECF No. 26 at 11. Without more, plaintiffs' speculation regarding unscrupulous complaints by political opponents is just that—speculation. *See Grendell v. Ohio Supreme Ct.*, 252 F.3d 828, 834 (6th Cir. 2001) ("[F]ear of prosecution cannot be 'imaginary or speculative.'") (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)). In any event, the fact that complaints may be lodged by the public (including by political rivals) does not address whether there is a realistic risk that the *prosecuting authorities* will act on these complaints.

Leave to amend should be granted unless it is clear the pleading cannot be cured by additional facts. *DeSoto*, 957 F.2d at 658. My order dismissing the first amended complaint made clear that "plaintiffs fail[ed] to give assurance that the conduct in question—the mistaken intimidation of poll workers—has a history in enforcement or is otherwise 'reasonably founded in fact'[,]" and freely gave plaintiffs leave to amend. ECF No. 21 at 9 (quoting *Planned Parenthood Ass'n of Cincinnati v. City of Cincinnati*, 822 F.2d 1390, 1395 (6th Cir. 1987)). Plaintiffs failed to produce serviceable allegations in response to that finding—the same finding on which I base dismissal in this case. I thus find that amendment here would not be fruitful. For that reason, I dismiss the complaint with prejudice.

## IV. Conclusion

IT IS HEREBY ORDERED that defendants' motion to dismiss the complaint **[ECF No. 23] is GRANTED**. The second amended complaint is dismissed with prejudice.

The Clerk of Court is kindly instructed to enter judgment accordingly and to close this case.

Dated: April 8, 2024

_____
Cristina D. Silva
United States District Judge